The Honorable Marsha J. Pechman

1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10    MICHELLE J. KINNUCAN,

11             Plaintiff,

12        v.

13    NATIONAL SECURITY AGENCY, CENTRAL
      INTELLIGENCE AGENCY, DEFENSE
14    INTELLIGENCE AGENCY, AND
      DEPARTMENT OF DEFENSE,
15
              Defendants.
16

Case No. 2:20-cv-1309 MJP

PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT

NOTE ON MOTION CALENDAR:
October 8, 2021

***ORAL ARGUMENT REQUESTED***

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 1
(No. 2:20-cv-1309 MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

# <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION ........................................................................................ 6

II.    BACKGROUND ......................................................................................... 8

    A.     The Attack on the U.S.S. *Liberty* .......................................................... 8

    B.     FOIA Requests & Procedural History ................................................. 10

        1.     Ms. Kinnucan's Requests to Defendant NSA Were Largely Ignored .................................................................................. 10

        2.     Ms. Kinnucan's Requests to Defendant CIA Were Ignored .................... 11

        3.     Defendants Inadequately Respond Even After Ms. Kinnucan Was Forced to Bring Suit .................................................................... 12

III.   ARGUMENT ........................................................................................... 15

    A.     Summary Judgment Standard .............................................................. 15

    B.     The HAC Report Is an Agency Record Subject to FOIA ..................... 16

    C.     CIA Has Improperly Withheld and Redacted Significant Information ............... 20

    D.     Defendants Violated FOIA By Failing to Timely Respond or Promptly Produce Documents .................................................................... 23

IV.    CONCLUSION ........................................................................................ 26

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 2
(No. 2:20-cv-1309 MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*ACLU of N. Cal. v. U.S. Dep't of Just.*,
880 F.3d 473 (9th Cir. 2018)................................................................ 8, 21

*ACLU v. CIA*,
823 F.3d 655 (D.C. Cir. 2016) ....................................................... 8, 17, 18

*Am. Oversight, Inc. v. U.S. Dep't of Health & Hum. Servs.*,
2018 WL 4765145 (D.D.C. 2018)...................................................... 18, 19

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ................................................................................ 17

*Block v. Wash. State Bar Ass'n*,
2021 WL 2774681 (9th Cir. 2021)......................................................... 14

*Chesapeake Bay Found., Inc. v. U.S. Army Corps of Eng'rs*,
677 F. Supp. 2d 101 (D.D.C. 2009) ...................................................... 23

*Citizens for Resp. & Ethics in Wash. v. FEC*,
711 F.3d 180 (D.C. Cir. 2013) ............................................................... 24

*Defenders of Wildlife v. U.S. Border Patrol*,
623 F. Supp. 2d 83 (D.D.C. 2009) ........................................... 16, 22, 23

*Dep't of Air Force v. Rose*,
425 U.S. 352 (1976) ............................................................................ 7, 22

*Flete-Garcia v. U.S. Dep't of Just.*,
2021 WL 1146362 (D.D.C. 2021).......................................................... 16

*Gilmore v. U.S. Dep't of Energy*,
33 F. Supp. 2d 1184 (N.D. Cal. 1998) .................................................. 25

*Hamdan v. U.S. Dep't of Just.*,
797 F.3d 759 (9th Cir. 2015)........................................................... 20, 21

*Holy Spirit Ass'n for the Unification of World Christianity v. CIA*,
636 F.2d 838 (D.C. Cir. 1980) ......................................................... 18, 19

*Info. Network for Responsible Mining v. Bureau of Land Mgmt.*,
611 F. Supp. 2d 1178 (D. Colo. 2009) .................................................. 25

*Lion Raisins, Inc. v. USDA*,
354 F.3d 1072 (9th Cir. 2004)............................................................... 16

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Long v. U.S. Internal Revenue Serv.*,
  693 F.2d 907 (9th Cir. 1982)..................................................................................25

*Louis v. U.S. Dep't of Lab.*,
  419 F.3d 970 (9th Cir. 2005)..................................................................................19

*Main St. Legal Servs., Inc. v. Nat'l Sec. Council*,
  962 F. Supp. 2d 472 (E.D.N.Y. 2013), *aff'd*, 811 F.3d 542 (2d Cir. 2016) ...........18

*Nat'l Res. Def. Council v. U.S. Dep't of Def.*,
  388 F. Supp. 2d 1086 (C.D. Cal. 2005)..................................................................22

*Or. Nat. Desert Ass'n v. Gutierrez*,
  409 F. Supp. 2d 1237 (D. Or. 2006).......................................................................25

*Organic Cannabis Found., LLC v. Comm'r of Internal Revenue*,
  962 F.3d 1082 (9th Cir. 2020)..................................................................................9

*Petroleum Info. Corp. v. U.S. Dep't of Interior*,
  976 F.2d 1429 (9th Cir. 1992)................................................................................17

*Prison Legal News v. U.S. Dep't of Homeland Sec.*,
  113 F. Supp. 3d 1077 (W.D. Wash. 2015) ..........................................................9, 16

*SEC v. Chenery Corp.*,
  318 U.S. 80 (1943) ................................................................................................19

*Summers v. U.S. Dep't of Just.*,
  140 F.3d 1077 (D.C. Cir. 1998) .............................................................................16

*U.S. Dep't of Just. v. Reporters Comm. for Freedom of the Press*,
  489 U.S. 749 (1989) .........................................................................................16, 20

*U.S. Dep't of Just. v. Tax Analysts*,
  492 U.S. 136 (1989) ..............................................................................................17

*United We Stand Am., Inc. v. IRS*,
  359 F.3d 595 (D.C. Cir. 2004) ..........................................................................18, 21

*Vaughn v. Rosen*,
  484 F.2d 820 (D.C. Cir. 1973) .......................................................................*passim*

*Wiener v. F.B.I.*,
  943 F.2d 972 (9th Cir. 1991)............................................................................21, 22

*Wishart v. C.I.R.*,
  199 F.3d 1334 (9th Cir. 1999)................................................................................16

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 4
(No. 2:20-cv-1309 MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**Federal Statutes**

5 U.S.C.
  § 551(1)(A) ........................................................................................... 17
  § 552 *et seq.* (FOIA) ................................................................... *passim*
  § 552 ...................................................................................................... 13
  § 552(a)(3)(A) ........................................................................ 17, 24, 26
  § 552(a)(4)(B) .............................................................................. 8, 16
  § 552(a)(6)(A) ................................................................................. 24, 26
  § 552(a)(6)(A)(i) ....................................................................... 24, 25, 26
  § 552(a)(6)(A)(ii) ................................................................................ 26
  § 552(a)(8)(A) ................................................................................. 21, 22
  § 552(b) ........................................................................................... 21, 22
  § 552(f) .............................................................................................. 17

**Rules**

Federal Rule of Civil Procedure 56(a) ...................................................... 17

Federal Rule of Evidence
  201 ....................................................................................................... 9
  408(a) ................................................................................................. 14

**Other Authorities**

Daniel Pearson, *A Seattle Veteran Seeks Justice for the USS Liberty, but Not Without Some Controversy*, Seattle Weekly (August 2017) ................... 11

James Scott, *The Spy Ship Left Out in the Cold*, Naval History Magazine, vol. 31 (June 2017) ............................................................................... 10

John Crewdson, *New Revelations in Attack on American Spy Ship*, Chicago Tribune (Oct. 2, 2007) ........................................................................ 10

Mark A. Stroh, *Attack on the USS Liberty: A Stab at the Truth*, U.S. Army War College (April 2009) .......................................................................... 10

U.S. Navy, Office of the Judge Advocate General, Record of Proceedings, Court of Inquiry to inquire into the circumstances surrounding the armed attack on USS LIBERTY (AGTR-5) on 8 June 1967 ........................................... 10

Walter L. Jacobsen, *A Juridical Examination of the Israeli Attack on the USS Liberty*, 36 Naval Law Review 69 (Winter 1986) ................................... 10

William D. Gerhard & Henry W. Millington, *Attack on a Sigint Collector, Attack on the U.S.S. Liberty*, National Security Agency, Office of Cryptologic Archives and History (1981) ............................................................. 9, 20

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 5
(No. 2:20-cv-1309 MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# I.     INTRODUCTION

The Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq*., was enacted "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976).  This litigation concerns Plaintiff Michelle Kinnucan's FOIA requests to Defendants National Security Agency ("NSA"), its parent agency Department of Defense ("DOD"), and Central Intelligence Agency ("CIA") (collectively, "Defendants") for documents concerning Israel's 1967 attack on the U.S. Navy's most decorated ship for a single action, the U.S.S. *Liberty*.  The attack left 34 servicemembers and civilians dead and 173 others wounded, *see* FAC ¶ 5, and government comments on the circumstances surrounding the incident create doubt to this day as to whether our ally knew who they were attacking.  As the 60-year remembrance of this devastating event approaches, Ms. Kinnucan requests these records to pierce the veil behind these 54-year-old records and provide answers to the remaining victims of the strike, the families of the deceased, and taxpayers.

Despite the clear public importance of the requested records and the decades' passage of time that has mitigated any legitimate national security concerns, it took Defendants *over a year* to respond to Ms. Kinnucan's requests. And it was more than six months after this action was filed before Defendant CIA eventually produced a substantially redacted set of records.  Having reviewed Defendants' belated responses and productions, three issues remain which require summary resolution by this Court.  These issues are ripe for summary judgment because there are no disputed issues of material fact and judgment is proper as a matter of law.

***First***, NSA is withholding all volumes of a House Appropriations Committee Report, "A Report to the Committee on Appropriations – U.S. House of Representatives on the Effectiveness of the Worldwide Communications Systems and Networks of the DoD, U.S.S. *Liberty* Incident" of December 1967 (the "HAC Report"), which Ms. Kinnucan identified by name in her request.  There is no dispute that these responsive records are in NSA's possession. However, NSA's position is that the documents are not "agency records" because they originated with Congress and therefore, are not subject to the FOIA.  Contrary to its position and supporting

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

declaration, NSA produced no evidence that "Congress has manifested its own intent to retain control" over the HAC Report "when it transmitted the document to [NSA]."  *See ACLU v. CIA*, 823 F.3d 655, 664 (D.C. Cir. 2016).  Ms. Kinnucan urges this Court to find that the Committee's transfer of the HAC Report to NSA—without any contemporaneous indication from Congress otherwise—is sufficient as a matter of law to demonstrate Congress's intent to release control over the records that are now in agency possession.  Additionally, the Court should hold that neither the external markings placed on the document at creation, nor a post hoc declaration from NSA or the HAC, are sufficient to show Congress's intent to retain control ***at the time of transfer***.  As such, the HAC Report is an agency record that the NSA must review and release. *See* Section III.B, *infra.*

***Second***, Ms. Kinnucan challenges CIA's decision to improperly withhold and redact significant portions of the records it produced.  Although it produced 79 pages to Ms. Kinnucan, CIA redacted a multitude of whole paragraphs within those productions and entirely withheld more than 170 pages of responsive records.  And notwithstanding its provision of a *Vaughn* index,[1] that document does not provide reasonably detailed descriptions of the documents withheld in full or redacted in part or include the alleged facts necessary to establish whether the claimed exemption applies.  *See ACLU of N. Cal. v. U.S. Dep't of Just.*, 880 F.3d 473, 489 (9th Cir. 2018).  Because CIA has not disclosed this required information in adequate detail, Ms. Kinnucan cannot argue effectively against the claimed exemptions; most importantly, this Court also cannot assess the applicability of the same.  Accordingly, Ms. Kinnucan respectfully asks this Court to order CIA to revise its redactions, entirely withheld documents, and *Vaughn* index; or alternatively, to order an *in camera* review to determine whether CIA has reasonably segregated its records and to decide whether the exemptions are proper, § 552(a)(4)(B).  *See* Section III.C, *infra.*

---

[1] *See Vaughn v. Rosen*, 484 F.2d 820, 826-28 (D.C. Cir. 1973) (holding that an indexing system was necessary in FOIA cases to "assure that a party's right to information is not submerged beneath governmental obfuscation and mischaracterization, and [] permit the court system effectively and efficiently to evaluate the factual nature of disputed information").

***Third***, Ms. Kinnucan seeks a declaration that NSA and CIA violated the FOIA by unlawfully failing to respond to her requests and appeal in a timely manner or to produce documents promptly.  As this Court has recognized, it is an "egregious" violation of the FOIA to wait more than a year after a request is submitted—and only after litigation has commenced—to begin providing responsive records.  *See Prison Legal News v. U.S. Dep't of Homeland Sec.*, 113 F. Supp. 3d 1077, 1084 (W.D. Wash. 2015).  Defendants' seven-to-eighteen-month delay in responding to Plaintiff's requests and this case, and any corresponding failure to promptly produce documents in their possession, has indisputably violated their statutory obligations under the FOIA.  *See* Section III.D, *infra*.

Because Defendants neglected their duties under federal law, Ms. Kinnucan respectfully requests the Court enter summary judgment as to those issues, as well as a finding that Plaintiff is the prevailing party.

## II.   BACKGROUND

### A.   The Attack on the U.S.S. *Liberty*

Between January and April 1967, the Syrian-Israeli frontier in the Middle East was "the scene of a series of escalating clashes."[2]  The United States worked to support the United Nations' efforts to maintain peace in the area, in what later culminated in the Six-Day War that pitted Israel against Egypt, Syria, Lebanon, Jordan, and Iraq.  Despite their relationship as allies, on June 8, 1967, an Israeli jet fighter aircraft and naval torpedo boats struck the U.S.S. *Liberty*, a U.S. Navy technical research ship, in international waters off Egypt's Gaza Strip.  The combined

---

[2] *See* William D. Gerhard & Henry W. Millington, *Attack on a Sigint Collector, Attack on the U.S.S. Liberty*, National Security Agency, Office of Cryptologic Archives and History (1981).  Available at https://web.archive.org/web/20121030155345/http://www.nsa.gov/public_info/_files/uss_liberty/attack_sigint.pdf.  Pursuant to Federal Rule of Evidence 201, the Court may properly take judicial notice of undisputed facts—like those contained in official accounts, records, briefing, or legislative materials—that are posted on a government website.  *See Organic Cannabis Found., LLC v. Comm'r of Internal Revenue*, 962 F.3d 1082, 1096 (9th Cir. 2020) ("judicial notice may be taken of official information that is posted on a government website and that is 'not subject to reasonable dispute'") (quoting *Dudum v. Arntz*, 640 F.3d 1098, 1101 n.6 (9th Cir. 2011)).

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 8
(No. 2:20-cv-1309 MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

air and sea attack killed 34 crew members (naval officers, seamen, marines, and a civilian NSA employee), wounded 173 crew members, and severely damaged the vessel.

A Naval Court of Inquiry ("NCOI") was convened on June 10, 1967 to investigate the strike; it adjourned less than a week later.  According to the Record of the Proceedings, the NCOI found that "[a]vailable evidence combines to indicate the attack on LIBERTY on 8 June was in fact a case of mistaken identity."[3]  However, DOD's public Summary of Proceedings on June 28, 1967 noted that the NCOI "had insufficient information before it to make a judgment on the reasons for the decision by Israeli aircraft and motor torpedo boats to attack ... It was not the responsibility of the Court to rule on the culpability of the attackers, and no evidence was heard from the attacking nation."[4]

As a result of conflicting information and sources about the incident, some maintain that the strike was deliberate and have rejected the early conclusions from U.S. reports.  The ship's crew and captain—as well as several U.S. government officials, scholars, and journalists— outright reject the mistaken identity claim.  *See*, *e.g.*, James Scott, *The Spy Ship Left Out in the Cold*, Naval History Magazine, vol. 31, no. 3 (June 2017) at pp. 28-35, available at https://www.usni.org/magazines/naval-history-magazine/2017/june/spy-ship-left-out-cold; Mark A. Stroh, *Attack on the USS Liberty: A Stab at the Truth*, U.S. Army War College (April 2009), available at https://apps.dtic.mil/dtic/tr/fulltext/u2/a499280.pdf; Walter L. Jacobsen, *A Juridical Examination of the Israeli Attack on the USS Liberty*, 36 Naval Law Review 69 (Winter 1986). Understandably, public interest in the long-hidden reports in government custody has led to significant speculation over the years regarding a possible nefarious motive on behalf of the U.S.

---

[3] U.S. Navy, Office of the Judge Advocate General, Record of Proceedings, Court of Inquiry to inquire into the circumstances surrounding the armed attack on USS LIBERTY (AGTR-5) on 8 June 1967 at p.161.  The entire NCOI record for the Liberty attack is available at: https://www.jag.navy.mil/library/jagman_investigations.htm.  The page quoted is included in Part 6, available at https://www.jag.navy.mil/library/investigations/LIBERTY%20ATTACK%20PT%206.pdf.

[4] Office of Assistant Secretary of Defense (Public Affairs), *News Release No. 594-67*, June 28, 1967, U.S. Naval History and Heritage Command, Archives Branch, Immediate Office Files of the Chief of Naval Operations: 1960-1969, Box 913.

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 9
(No. 2:20-cv-1309 MJP)

Government itself.  *See* John Crewdson, *New Revelations in Attack on American Spy Ship*, Chicago Tribune (Oct. 2, 2007), available at https://www.chicagotribune.com/chi-liberty_tuesoct02-story.html.

**B.    FOIA Requests & Procedural History**

Plaintiff Michelle Kinnucan is a researcher and writer, Coast Guard and Army veteran, and honorary member of the U.S.S. *Liberty* Veterans Association.  *See* Declaration of Michelle J. Kinnucan ("Kinnucan Decl.") ¶¶ 3, 4.  In addition to her writing, Ms. Kinnucan is also an advocate; her previous work on this subject resulted in The American Legion's 2017 adoption of National Convention Resolution 40, which called on Congress to further investigate the incident.[5] *Id.* ¶ 4.  Beginning in early 2019, Plaintiff filed multiple FOIA requests with the DOD, NSA, CIA, and DIA, seeking the release of certain documents concerning the June 8, 1967 attack on the U.S.S. *Liberty*.  *See id.* ¶ 5.

**1.    Ms. Kinnucan's Requests to Defendant NSA Were Largely Ignored**

On February 18, 2019, Ms. Kinnucan filed a FOIA request with NSA seeking select excerpts from the HAC Report.  *See* Kinnucan Decl. ¶ 6; Ex. 1.  In her original request, she sought "pages 48-50 of volume I and pages 75-76 of volume II only" because this citation appeared as a footnote reference in another partially redacted but publicly available government record of the attack.  *See id.*

On March 5, 2019, NSA confirmed receipt of Ms. Kinnucan's request, assigned Ms. Kinnucan a case number ("NSA 106371"), and sought clarification as to the scope of information requested.  *See id.*  The next day, Ms. Kinnucan provided clarification and amended her request to seek both Volumes I and II of the HAC Report in their entirety.  *See id.*  NSA acknowledged the amendment on March 7, 2019, and eleven days later, informed Plaintiff that the documents had been located and were being "review[ed] prior to release."  *See id.*  Over the

---

[5] This is memorialized in U.S. House of Representatives Document 115-91, at pp. 124-25.  *See* https://www.govinfo.gov/content/pkg/CDOC-115hdoc91/pdf/CDOC-115hdoc91.pdf; *see also* Daniel Pearson, *A Seattle Veteran Seeks Justice for the USS Liberty, but Not Without Some Controversy*, Seattle Weekly (August 2017), available at https://www.seattleweekly.com/news/a-seattleite-is-fighting-for-justice-for-the-uss-liberty-but-not-without-some-controversy/.

next *eighteen* months, Ms. Kinnucan sent *fourteen* follow-up inquiries to NSA seeking the status of her request. *See id.*; Kinnucan Decl. ¶ 6. Still, NSA did not produce any documents within the statutory period and did not provide a reason for withholding the records searched or located. *Id.*

Ms. Kinnucan sent a separate second FOIA request to NSA on June 17, 2020. *See* Kinnucan Decl. ¶ 7; Ex. 2. Again, NSA acknowledged receipt and assigned a case number ("NSA 109763") on June 19, 2020, *see* Dkt. 19 ("Answer") ¶ 25, but never responded to Ms. Kinnucan's follow-up inquiry, detailed its search, produced any documents, or provided a reason for its refusal. *See* Kinnucan Decl. at ¶ 7; Ex. 2.

### 2. Ms. Kinnucan's Requests to Defendant CIA Were Ignored

On May 31, 2020, Ms. Kinnucan requested copies of various unredacted reports involving the U.S.S. *Liberty* attack from CIA through the Muckrock service.[6] *See* Kinnucan Decl. ¶ 8; Ex. 3. On June 3, 2020, CIA promptly acknowledged Ms. Kinnucan's request and assigned her a reference number to her request ("CIA F-2020-01511"). *See id.* After receiving CIA's acknowledgment of receipt through that system, Ms. Kinnucan sent a follow-up clarification and amendment to her original request on June 17, 2020. *See id.* CIA never responded to that amended request. *Id.*

Although CIA denies that it ever received Ms. Kinnucan's amendment, it does not dispute that it received Ms. Kinnucan's *original* request through the same Muckrock service. *See* Answer ¶¶ 29-30. And regardless of when it received that amendment, CIA still did not fully respond to Ms. Kinnucan's original request within the statutory period, did not identify or produce any responsive documents, and failed to provide a reason for its failure to conduct a meaningful search (if it did) or for withholding located records (if any were found). *See* Kinnucan Decl. ¶ 8.

---

[6] Muckrock is a non-profit service that assists investigators, journalists, and other users with filing, tracking, and sharing FOIA requests and the documents released by U.S. government agencies in response. *See* https://www.muckrock.com/faq/#WhatIsMuckRock; https://www.muckrock.com/about/.

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 11
(No. 2:20-cv-1309 MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

### 3.    Defendants Inadequately Respond Even After Ms. Kinnucan Was Forced to Bring Suit

In light of Defendants' refusal to respond promptly to her reasonable requests, Ms. Kinnucan brought suit on September 1, 2020, alleging violations of federal law under § 552. *See* Dkt. 1 ("Complaint").  Even after Ms. Kinnucan put Defendants on notice of her requests and their own failures under FOIA in this Court, however, the defendant agencies still waited months before responding to her requests and only partially produced documents.

**NSA 109763**:  Seven months after she filed her request—and over three months after Ms. Kinnucan filed suit—NSA finally replied to Ms. Kinnucan's second FOIA request.  On January 13, 2021 NSA asserted that it did not have any responsive records in its possession and that "[i]f [Ms. Kinnucan] decide[d] to appeal, [she] should do so in the manner outlined."  *See* Kinnucan Decl. ¶ 9; Ex. 4 at 1-2 ("The appeal **must** be sent via U.S. postal mail, fax or electronic delivery (e-mail) and addressed to … NSA FOIA/PA Appeal Authority").  As directed, Ms. Kinnucan appealed NSA's response as to the scope of its search, *see* Kinnucan Decl. ¶ 10; Ex. 5, but NSA denied her appeal on June 2, 2021 because her underlying request was part of this lawsuit, *see* Kinnucan Decl. ¶ 11; Ex. 6.  Since that letter, NSA has yet to respond to Plaintiff's substantive appeal to the scope of its search in response to NSA 109763.  Kinnucan Decl. ¶ 11.

**NSA 106371**:  NSA did not respond to Ms. Kinnucan's first FOIA request seeking the HAC Report until April 19, 2021, *see* Answer ¶ 23—more than six months after filing suit and over one year since the request was first acknowledged.  In its response, NSA refused to release the records it possesses claiming that both volumes of the HAC Report are "not agency records subject to the FOIA, as the records in question were both created by and are controlled by the U.S. House of Representatives."  *See* Kinnucan Decl. ¶ 12; Ex. 7.  To reinforce its belated denial of Ms. Kinnucan's request, NSA provided a sworn declaration on April 21, 2021.  *See* Declaration of Caesar Kalinowski IV ("Kalinowski Decl.") ¶ 3; Ex. B.[7]  In its declaration, NSA

---

[7] Although NSA's counsel did attach this declaration to an email with a subject line "ER 408," *see* Answer at 6, n.2, neither counsel's communications nor the NSA declaration—sworn to by NSA's Chief of Legislative, State, Local, and Academic Engagement Office—indicated that NSA was not intending to rely on these reasons for its refusal.  *See* Kalinowski Decl. ¶ 2 Ex. A.  Moreover, NSA's sworn statements are admissible because "they were not offered 'to prove or

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 12
(No. 2:20-cv-1309 MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

claims that Congress displayed its intent to keep the over 50-year-old records under congressional control by: (1) marking the document "Top Secret" and with a banner stamped "Not For Release Unless And Until Authorized By Committee"; and (2) relying on a purported phone call from October 2009 between the House Appropriations Committee and the Legislative Affairs Office whereby Congress refused to release the records in response to another FOIA requester. *See id.* ¶¶ 4-5. Therefore, even though the HAC Report is in NSA possession solely by virtue of its transfer from Congress's having "authorized" it at some time, NSA claims the responsive document is not an "agency record" and "NSA has no authority to release the report absent authorization by Congress." *Id.* ¶ 5.

**CIA F-2020-01511**: On May 5, 2021, almost a full year after receiving her first request, CIA sent Ms. Kinnucan a final response and released the last of responsive documents in its two productions. *See* Kinnucan Decl. ¶¶ 13-14; Exs. 8, 9. In response to her request, CIA had belatedly produced 79 pages but redacted a multitude of whole paragraphs and pages—all without segregating information that did not implicate the security or privacy exemptions claimed or explaining the nature of the redactions. *See* Kinnucan Decl. ¶ 15; Ex. 10 [C00431696 (¶¶ 7, 8, 10, & 12 entirely redacted); C00431707 (¶¶ 5, 9-16, 19 entirely redacted); C01218180 (all 29 endnotes omitted); C01283097 (large blocks of notes redacted); C03030912 (first 6 pages of information entirely redacted); C00431695 (¶ 3 entirely redacted); C06883306 (¶¶ 2, 3, 9 entirely redacted); C06883307 (¶¶ 8, 12 entirely redacted); C02412716 (¶ 2 relevant but partially redacted)]. In response, Ms. Kinnucan objected to the overbroad nature of the redactions and the failure to identify what—if any—documents were being withheld.

Counsel for Ms. Kinnucan then requested a *Vaughn* index, which Defendant sent on June 21, 2021, revealing the previously hidden existence of 173 more withheld pages. *See* Kalinowski Decl. ¶ 4; Ex. C. On its face, however, CIA's *Vaughn* index provides descriptions of

---

disprove the validity or amount of a disputed claim or to impeach,' as is required under the rule." *Block v. Wash. State Bar Ass'n*, 2021 WL 2774681, at *1 (9th Cir. 2021) (quoting Fed. R. Evid. 408(a)).

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 13
(No. 2:20-cv-1309 MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

the document contents that are merely recitations of the statutory exemption, and little more.  *See id.*  For example:

- Entries No. 2, 3, 4, 5, 7, and 9 state that those documents relate to "Internal Intelligence Memorandum re Arab-Israeli Situation Report," and provide only a few statutory definitions for the claimed exemptions.  Although these productions also include multiple paragraphs that are entirely redacted, no additional information is provided by CIA to justify its failure to segregate the non-exempt information.

- Entry No. 8 states that its documents relate to "Central Intelligence Bulletin re Updates on various countries and activities[,]" and only provide the statutory definitions for the claimed exemptions.  Although referenced in the document itself, the entry includes no mention or explanation for the omission of all 29 endnotes in the document.

- Entry No. 12 states:  "Internal Document Prepared for the Purpose of Providing a Briefing on Several Topics[,]" provides the definition for each exemption, and then concludes by asserting that it conducted a line-by-line review and determined that "[t]his [70-page] document is withheld in full because there is no meaningful, non-exempt information and release of this information could be reasonably expected to result in damage to national security."  There are 70 pages withheld entirely, with no additional information offered.

Despite numerous efforts between counsel to resolve the insufficiency of the *Vaughn* index as to these issues, CIA has refused to supplement its production or its index and has not agreed to modify its stance on the current withholding and redactions.  *See* Kalinowski Decl. ¶ 5.

As provided for in the parties' stipulation, Dkt. 15, and the Court's order adopting the proposed schedule, Dkt. 16, Ms. Kinnucan filed her first amended complaint in this matter on July 16, 2021, Dkt. 17.  This amendment reflected the agencies' post-suit responses and

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 14
(No. 2:20-cv-1309 MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1  productions, and expanded Ms. Kinnucan's claims in light of the agencies' representations and

2  failures with regard to both.

### III.   ARGUMENT

### A.   Summary Judgment Standard

5      "FOIA cases typically and appropriately are decided on motions for summary

6  judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009).

7  In light of FOIA's purpose, the agency bears the burden to justify nondisclosure in FOIA cases.

8  *See* § 552(a)(4)(B); *U.S. Dep't of Just. v. Reporters Comm. for Freedom of the Press*, 489 U.S.

9  749, 755 (1989); *Wishart v. C.I.R.*, 199 F.3d 1334 (9th Cir. 1999).  "[I]n order to prevail on

10  summary judgment, the agency must prove 'it has fully discharged [its burdens] under FOIA,

11  after the underlying facts and the inferences to be drawn from them are construed in the light

12  most favorable to the FOIA requester.'" *Prison Legal News*, 113 F. Supp. 3d at 1081 (quoting

13  *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1382 (8th Cir. 1985)); *see also Flete-Garcia v. U.S.*

14  *Dep't of Just.*, 2021 WL 1146362, at *4 (D.D.C. 2021) ("[T]he agency bears the burden of

15  sustaining its action.").

16      Where exemptions are claimed, the agency can only meet its burden by submitting

17  detailed affidavits or declarations that identify the records at issue and show why they fall under

18  the claimed exemptions.  *See Summers v. U.S. Dep't of Just.*, 140 F.3d 1077, 1080 (D.C. Cir.

19  1998); *Vaughn*, 484 F.2d at 826-28 (holding that an indexing system was necessary in FOIA

20  cases to "assure that a party's right to information is not submerged beneath governmental

21  obfuscation and mischaracterization, and permit the Court system effectively and efficiently to

22  evaluate the factual nature of disputed information.").  While courts may rule on government

23  affidavits to establish certain requirements have been met, *see Lion Raisins, Inc. v. USDA*, 354

24  F.3d 1072, 1082 (9th Cir. 2004), it also has the authority to examine the contents of disputed

25  records *in camera* to determine whether agencies should disclose them, § 552(a)(4)(B).

26      As with all cases, summary judgment should be granted by the court when "the movant

27  shows that there is no genuine dispute as to any material fact and the movant is entitled to

28

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 15
(No. 2:20-cv-1309 MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "When an agency seeks to protect material which, even on the agency's version of the facts, falls outside the proffered exemption, summary judgment in favor of the FOIA plaintiff is appropriate." *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1433 (9th Cir. 1992). Here, Defendants have repeatedly delayed the public's understanding of the attack on the U.S.S. *Liberty* and avoided their duties under FOIA in three ways, each of which is ripe for summary judgment:

- Defendant NSA wrongly refused to produce the HAC Report based on erroneous claims that the document is not an agency record;
- Defendant CIA improperly redacted and failed to segregate material without sufficient justification; and
- Defendants NSA and CIA, for seven to eighteen months, failed to respond to Plaintiff's request and violated FOIA by that failure.

**B.    The HAC Report Is an Agency Record Subject to FOIA**

NSA violated 5 U.S.C. § 552(a)(3)(A) by failing to promptly release agency records in response to Ms. Kinnucan's FOIA request seeking the HAC Report. As described above, Ms. Kinnucan requested copies of Volumes I and II of the HAC Report from NSA in March 2019. *See* Answer ¶¶ 19-22. Nearly two years later, NSA contends that despite the document's legal transfer to NSA at some unknown point in time in its 50+ year life, the HAC Report is still a Congressional document not in NSA's possession and not disclosable under FOIA. *See* §§ 551(1)(A), 552(f); *see also* Kalinowski Decl. Ex. B.

The burden is on the agency to demonstrate—not Ms. Kinnucan to disprove—that the materials sought are not agency records. *U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989). To support its proposition, the government relies on *ACLU*, which correctly explains the basic rule that "[w]hen Congress creates a document and then shares it with a federal agency, the document does not become an 'agency record' subject to disclosure under FOIA if 'Congress [has] manifested a clear intent to control the document.'" 823 F.3d at 658 (quoting *Judicial*

1    *Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 221 (D.C. Cir. 2013)).  *See also Am. Oversight,*

2    *Inc. v. U.S. Dep't of Health & Hum. Servs.*, 2018 WL 4765145, at *4 (D.D.C. 2018) ("For

3    documents to be considered congressional records and thus be exempted from the disclosure

4    requirements of FOIA, Congress must have manifested its intent that it retain control of the

5    documents.").

6          Though the Ninth Circuit's guidance is limited with respect to release of documents that

7    were obtained from Congress, the D.C. Circuit has well-developed case law on the topic.  *See*

8    *Main St. Legal Servs., Inc. v. Nat'l Sec. Council*, 962 F. Supp. 2d 472, 474 (E.D.N.Y. 2013)

9    ("Although [this] Circuit has not addressed the issue now before the Court, relevant case law

10   abounds in the D.C. Circuit, a jurisdiction with considerable experience on FOIA matters."),

11   *aff'd,* 811 F.3d 542 (2d Cir. 2016).  In general, a determination of whether such documents have

12   become agency records by virtue of transfer depends on two factors:  (1) the original external

13   markings on the document, *ACLU*, 823 F.3d at 663 (quoting *Goland v. CIA*, 607 F.2d 339, 347

14   (D.C. Cir. 1978); *Paisley v. CIA*, 712 F.2d 686, 689-90 (D.C. Cir. 1983)), **and** (2) the context and

15   circumstances of transfer, including any letters or other evidence showing Congressional intent,

16   *id.* (quoting *Holy Spirit Ass'n for the Unification of World Christianity v. CIA*, 636 F.2d 838, 842

17   (D.C. Cir. 1980); *Paisley*, 712 F.2d at 689-90, 694); *see also Holy Spirit*, 636 F.2d at 840

18   (holding documents not accompanied by any instructions from Congress regarding its intent to

19   retain control of the documents were subject to FOIA).

20         As to the second factor, there is also a timing element associated with Congress's

21   manifestation of intent.  Courts give no weight to evidence offered by Congress or defendant

22   agencies to argue against release that did not originate with the transfer—especially where the

23   "evidence" comes after the FOIA request.  *See, e.g.*, *ACLU*, 823 F.3d at 664 ("[W]e can give no

24   weight to the letter sent by now-Senate Committee Chairman . . . The letter was sent after

25   Appellants had submitted their FOIA request and after they had filed suit in the District Court.");

26   *United We Stand Am., Inc. v. IRS*, 359 F.3d 595, 602 (D.C. Cir. 2004) ("…[T]he Joint

27   Committee's post-hoc objections to disclosure cannot manifest the clear assertion of

28

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 17
(No. 2:20-cv-1309 MJP)

congressional control that our case law requires."); *Holy Spirit*, 636 F.2d at 842 (refusing to consider a letter objecting to the release of requested records as sufficient to evince congressional intent to control because it was written not only long after the requested record's creation, but also in response to a FOIA litigation).  This rule originates with the familiar rejection of post hoc agency rationalizations prohibited by *SEC v. Chenery Corp.*, 318 U.S. 80 (1943) and its progeny. In the FOIA context, review of documents for disclosure is "not an action that is within the particular expertise of any agency, and Congress has expressly instructed courts to review such [agency] actions de novo."  *See Louis v. U.S. Dep't of Lab.*, 419 F.3d 970, 978 (9th Cir. 2005) (quoting § 552a(g)(3)(A)).

Clear intent to prevent public release or further transfer—shown by contemporaneous instructions to the agency regarding Congress's intent—is not impossible to achieve.  For example, in *American Oversight*, the court held that records bearing the below are congressional records not subject to FOIA:

> This document and any related documents, notes, draft and final legislation, recommendations, reports, or other materials generated by the Members or staff of the Committee on Ways and Means are records of the Committee, remain subject to the Committee's control, and are entrusted to your agency only for use in handling this matter.  Any such documents created or compiled by an agency in connection with any response to this Committee document or any related Committee communications, including but not limited to any replies to the Committee, are also records of the Committee and remain subject to the Committee's control.  Accordingly, the aforementioned documents are not 'agency records' for purposes of the Freedom of Information Act or other law.

2018 WL 4765145, at *3.  It is undisputed that such congressional intent is lacking here.

NSA offers two arguments to prevent full disclosure of the HAC Report.  First, that the external markings show Congress's intent to avoid release under FOIA because the cover page of the HAC Report bears a "Top Secret" classification marking and says: "Not For Release Unless And Until Authorized By Committee."  But neither marking, whether on its own or considered together, can meet the government's high burden to justify complete nondisclosure.  Documents subject to and released under FOIA regularly include classification markers; nonetheless, it is the government's duty to "determine that the claimed exemptions apply throughout all of the

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 18 (No. 2:20-cv-1309 MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

documents." *Hamdan v. U.S. Dep't of Just.*, 797 F.3d 759, 780 (9th Cir. 2015) (vacating summary judgment, in part, and holding DIA must determine whether documents marked "Top Secret" contain content that can be segregated from the exempt information and turned over to plaintiff); *see also Reporters Comm.*, 489 U.S. at 768 ("FOIA permits release of a segregable portion of a record with other portions deleted…").

Further, the requirement of the document banner itself undermines NSA's argument because the HAC Report has been "[a]uthorized" "for release … by [Congress]"—to NSA as shown through its possession.  There is no contemporaneous evidence or defense claim to suggest that NSA procured the document *illicitly* or *without* authorization.  Most logically, the original banner on the HAC Report is read as an instruction to representatives and congressional staff in Congress, where such reports are routinely possessed by staff who do not have the authorization to release them to outside agencies without Committee approval.  However, the Committee's transfer of the records to NSA and its authorized receipt—at some undisclosed time in the last half century—demonstrate sufficient intent to release congressional control over the HAC Reports.

Moreover, NSA ignores the fact that portions of the HAC Report have already been relied upon and cited in its own reports, which NSA has publicly released.  *See* Gerhard & Millington, *Attack on a Sigint Collector* (relying extensively on the HAC Report and listing it as the first source in bibliography).  Given that release of the HAC Report's information by NSA (ostensibly with Committee approval), NSA cannot reasonably argue that the records in its longtime possession should avoid disclosure now.

The second argument NSA offers to prevent full disclosure is based on its refusal to release these records to others in response to past FOIA requests.  In short, NSA proffers that over a decade ago, someone submitted a FOIA request for the same report that NSA apparently denied.  *See* Kalinowski Decl. ¶ 3; Ex. B.  NSA writes: "On October 1, 2009, the Legislative Affairs Office received a phone call from a staff member of the House Appropriations Committee who informed the Agency that the report could not be released."  *Id.*  Tellingly, the

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 19
(No. 2:20-cv-1309 MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

agency official does not explain who made the call, who received the call, how the call was

documented or recorded, or where such information exists in NSA's records—or anything else

that would allow Plaintiff to verify this as inadmissible hearsay.  Regardless, these post-FOIA

request calls to ask permission from Congress, much like letters in other cases, are nothing more

than a disingenuous "post-hoc objection[] to disclosure" seeking to double down on the agency's

position.  *See United We Stand*, 359 F.3d at 602.

Accordingly, on these undisputed facts, the Court should rule that the HAC Report is an

NSA "agency record" and as such, NSA must produce it and provide a *Vaughn* index with

sufficiently detailed claims for exemptions, if any.

## C.    CIA Has Improperly Withheld and Redacted Significant Information

Defendant CIA violated § 552(a)(8)(A) and § 552(b) by failing to disclose or segregate

information that is not subject to an exemption or to meaningfully explain why partial disclosure

of non-exempt information is not possible.

FOIA requires that "any 'reasonably segregable portion of a record shall be provided to

any person requesting such record after deletion of the portions which are exempt.'"  *Hamdan*,

797 F.3d at 778-79 (quoting § 552(b)).  "It is reversible error for the district court 'to simply

approve the withholding of an entire document without entering a finding on segregability, or the

lack thereof,' with respect to that document."  *Wiener v. F.B.I.*, 943 F.2d 972, 988 (9th Cir.

1991).  Relevant here, an agency's refusal to segregate non-exempt information and failure to

provide sufficient information to support exemptions are unlawful.  *See ACLU of N. Cal.*, 880

F.3d at 489 (remanding because "an agency cannot justify withholding an entire document

simply by showing that it contains some exempt material.") (internal citations omitted).

Here, there is no dispute that Defendant CIA only produced responsive records to Ms.

Kinnucan after eleven months and a lawsuit to compel such a production.  Those documents,

however, contained over 20 paragraphs and multiple pages of redacted information.  *See*

Kinnucan Decl. Ex. 10 [C00431696 (¶¶ 7, 8, 10, & 12 entirely redacted); C00431707 (¶¶ 5, 9-16,

19 entirely redacted); C01218180 (all 29 endnotes omitted); C03030912 (first 6 pages of

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 20
(No. 2:20-cv-1309 MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    information entirely redacted); C00431695 (¶ 3 entirely redacted); C06883306 (¶¶ 2, 3, 9 entirely

2    redacted); C06883307 (¶¶ 8, 12 entirely redacted)].  Despite Plaintiff's request for segregation,

3    CIA has stood on its redactions and claimed they are appropriate.  Kalinowski Decl. ¶ 5.

4    Because CIA's refusal to segregate any non-exempt information is in violation of its explicit

5    duties under § 552(a)(8)(A) and § 552(b), the Court should order CIA to conduct a segregation

6    and un-redact all information that can be released without implicating national security concerns.

7        Based on those overbroad redactions, Plaintiff also requested that CIA justify its refusals

8    to release information and to identify any documents CIA is withholding in their entirety.  In

9    response, CIA produced a *Vaughn* index that included conclusory recitations of the claimed

10   statutory exemptions to justify CIA's heavy redactions.  Importantly, CIA also identified—for

11   the first time—that it is completely withholding 173 *additional* pages of responsive information.

12   As shown through well-established case law, CIA's *Vaughn* index is insufficient to validate its

13   withholdings because it lacks the specificity required to allow the Court to review such a

14   determination.

15       Indeed, specificity is the defining requirement of the *Vaughn* index.  *Nat'l Res. Def. Council*

16   *v. U.S. Dep't of Def.*, 388 F. Supp. 2d 1086, 1096 (C.D. Cal. 2005).  "The purpose of the [*Vaughn*]

17   index is to 'afford the FOIA requester a meaningful opportunity to contest, and the district court an

18   adequate foundation to review, the soundness of the withholding.'"  *Wiener*, 943 F.2d at 977.

19   Although FOIA allows the government to claim exemptions from disclosure for legitimate

20   government interests, "exemptions do not obscure the basic policy that **disclosure, not secrecy, is**

21   **the dominant objective of [FOIA]**" and exemptions must be construed narrowly.  *See Rose*, 425

22   U.S. at 361 (emphasis added).  An agency's claims, regardless of form, "may not 'merely recite the

23   statutory standards'"; likewise, a *Vaughn* index should describe not just each withheld document

24   (and/or the withheld portions) and list the exemption(s) cited, it must also include other relevant

25   information.  *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 89 (D.D.C. 2009) (citing

26   *Carter v. U.S. Dep't of Comm.*, 830 F.2d 388, 392-93 (D.C. Cir. 1987); *Wilderness Soc'y v. U.S.*

27   *Dep't of Interior*, 344 F. Supp. 2d 1, 19 (D.D.C. 2004)).  "[D]etails such as these are necessary 'to

28

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 21
(No. 2:20-cv-1309 MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

enable the court and the opposing party to understand the withheld information in order to address the merits of the claimed exemptions.'" *Id.* (quoting *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 150 (D.C. Cir. 2006)). *See also Chesapeake Bay Found., Inc. v. U.S. Army Corps of Eng'rs*, 677 F. Supp. 2d 101, 108 (D.D.C. 2009) (finding the agency's position demonstrated a "reflexive attitude of nondisclosure" and ordering it to supplement its claimed exemptions to survive judgment).

Cursory review of the *Vaughn* index provided in this case reveals CIA's failure to meaningfully search records to segregate information, as well as its failure to provide justifications for redactions and withholding. Foremost, there are over 170 pages being fully withheld. *See* Kinnucan Decl., Ex. 10 (C03030912, first 6 pages of information entirely redacted); Kalinowski Decl. ¶ 4; Ex. C (Entry Nos. 11, 12, and 13 "Denied in Full"). Yet CIA refuses to address why it includes no details or information regarding the specific reasons for withholding—or why it cannot segregate and redact any of the 170+ withheld pages. Each entry's boilerplate description on the *Vaughn* index instead reads: "The CIA conducted a line-by-line review of this document to determine whether meaningful, reasonably segregable, non-exempt portions of the document could be released. This document is withheld in full because there is no meaningful, non-exempt information and release of this information could be reasonably expected to result in damage to national security." *See id.* This position is wholly irreconcilable with FOIA case law because, beyond the categorical exemptions claimed and the title of the document, there is no other information provided to assess the validity of the agency's claim.

Next, even where CIA has provided either redacted documents or exemptions, those submissions still fall far short of FOIA's explicit purpose, its statutory mandates, and well-established case law. Entry No. 7 undertakes no attempt to distinguish or explain why 10 paragraphs in the 7-page document are entirely redacted. Regarding Entry No. 10, the index says nothing about why 29 endnotes—which could reveal other helpful sources of searchable information—must be redacted. And Entry Nos. 10-12 assert that 173 pages must entirely be

1  withheld based on its unsworn assertion that it did a line-by-line review.  CIA's production is

2  plainly improper and insufficient.

3      CIA has violated its FOIA duties by withholding documents without sufficient

4  justification for exemptions, providing categorical and rote recitations of the statutory standard in

5  lieu of meaningful attempts to segregate records, and for failing to explain why some documents

6  are missing from its productions and index altogether.  Simply put, neither Plaintiff nor the Court

7  can properly evaluate or determine the propriety and necessity of such broad redactions.  At the

8  very least, Ms. Kinnucan is entitled to a supplemental production and *Vaughn* index from CIA.

9  A fulsome explanation from CIA is long overdue, particularly as to why, after 54 years, there are

10  still over 170 pages completely denied from public viewing.  Until sufficient information is

11  given, neither Ms. Kinnucan nor this Court can assess whether the exemptions claimed are

12  justifiable under the law, or whether CIA's alleged attempts to segregate have met its burdens.

13  **D.    Defendants Violated FOIA By Failing to Timely Respond or Promptly**
   **Produce Documents**

14

15      Finally, Ms. Kinnucan also seeks summary judgment granting a declaration that

16  Defendants violated the FOIA by failing to produce *any* responsive records or a reason for

17  withholding in a timely or prompt manner.  Defendants have violated § 552(a)(6)(A) by failing

18  to timely respond to Plaintiff's requests, amendments, and/or appeals; and § 552(a)(3)(A) by not

19  promptly producing records in their possession.  Because no relevant factual dispute exists as to

20  the timing of those refusals or belated productions, the Court should hold that Defendants'

21  actions were insufficient as a matter of law.

22      FOIA requires an agency, within twenty business days of receiving a records request, to

23  do two things: (1) determine whether it will comply with the request, and (2) notify the requester

24  of its determination, its reasoning, and the requester's right to appeal denials.  *See*

25  § 552(a)(6)(A)(i).  Under § 552(a)(3)(A), however, federal agencies are then required to

26  promptly make their records available to the requestor.  Agencies do not necessarily need to

27  provide the records within twenty days; but they must indicate to the requester within twenty

28

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 23
(No. 2:20-cv-1309 MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    days those records it plans to produce and those it plans to withhold or redact. *Citizens for Resp.*

2    *& Ethics in Wash. v. FEC*, 711 F.3d 180, 182-83 (D.C. Cir. 2013).

3          Failure to provide a timely response to a record request constitutes a violation of the

4    FOIA, "and the courts have a duty to prevent these abuses." *Long v. U.S. Internal Revenue*

5    *Serv.*, 693 F.2d 907, 910 (9th Cir. 1982); *see also Info. Network for Responsible Mining v.*

6    *Bureau of Land Mgmt.*, 611 F. Supp. 2d 1178, 1183 (D. Colo. 2009) (holding that agency

7    violated the FOIA by failing to comply with its statutory deadline). And even if the agency does

8    not ultimately have to produce documents, its belated response *alone* violates. *See Or. Nat.*

9    *Desert Ass'n v. Gutierrez*, 409 F. Supp. 2d 1237, 1248 (D. Or. 2006); *Gilmore v. U.S. Dep't of*

10    *Energy*, 33 F. Supp. 2d 1184, 1188 (N.D. Cal. 1998) (even though records were not subject to

11    disclosure, agency's "failure to make a timely determination as to whether [the] . . . documents

12    should be disclosed constituted an improper withholding . . . in violation of the FOIA.").

13          Here, Defendants failed to follow their statutory obligations to respond promptly to

14    Plaintiff's FOIA requests, prompting Ms. Kinnucan to retain counsel and file this lawsuit—

15    expending unnecessary time and resources—before they would comply. In response to her first

16    request (NSA 106371), NSA waited more than six months after filing suit and over one year

17    since the request was first acknowledged. *See* Answer ¶ 23; Kinnucan Decl. ¶¶ 6, 12; Exs. 1, 7.

18    Thus, in addition to its unjustified withholding of responsive documents, *see supra* Section III.B,

19    NSA has also violated § 552(a)(6)(A)(i) by failing to timely respond to NSA 106371 with the

20    reason for its withholding.

21          With regard to Plaintiff's second request (NSA 109763), NSA violated § 552(a)(6)(A)(i)

22    by waiting over three months *after this suit was filed* before it finally answered and asserted that

23    it did not have any responsive records in its possession. *See* Kinnucan Decl. ¶ 9; Ex. 4 at 1-2

24    (January 13, 2021 letter mandating that any appeal must be submitted to NSA through the

25    addresses provided). Although Ms. Kinnucan timely appealed that late decision through the

26    manner mandated by NSA (and FOIA), *see id.*; Ex. 5, NSA has since refused to review the scope

27    of its search or provide a reason for such refusal beyond this litigation. Kinnucan Decl. ¶ 11.

28

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 24
(No. 2:20-cv-1309 MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

This failure to respond to Ms. Kinnucan's appeal is in violation of NSA's duties under § 552(a)(6)(A)(ii), and Plaintiff respectfully requests that the Court enter summary judgment as to that issue.

As to Defendant CIA, it has twice failed to respond in a timely manner to Ms. Kinnucan's requests. First, CIA failed to provide its initial substantive response to CIA F-2020-01511 until more than six months *after this suit was filed* and almost nine months after receiving her first request. *See* Kinnucan Decl. ¶ 13 Ex. 8. Such a delay prejudiced Ms. Kinnucan in her investigative efforts and violated § 552(a)(6)(A)(i)'s requirements to provide a substantive response in 20 days. CIA also did not begin its rolling production until that same belated time. *See* Kinnucan Decl. Ex. 10. Therefore, the Court may also rule that CIA contravened FOIA's clear requirements for an agency to "promptly" produce those responsive records that ultimately proved to be in its possession. *See* § 552(a)(3)(A).

Moreover, CIA failed to provide a substantive response to Ms. Kinnucan's amendment to CIA F-2020-01511, which CIA cannot dispute was sent through Muckrock—the same manner as the original request. *See* Kinnucan Decl. Ex. 3. As such, CIA has still failed to respond entirely to those two additional information requests. *See* Kinnucan Decl. ¶ 8. This failure to respond to the amended portion of the request violates FOIA's requirements for an initial response under § 552(a)(6)(A)(i). Moreover, to the extent that CIA possesses responsive documents to that amended request, CIA has also violated § 552(a)(3)(A)'s requirement to promptly produce those documents in response.

For the foregoing reasons, Plaintiff respectfully requests the Court grant her request for summary judgment and hold that Defendants violated the FOIA by failing to provide a substantive response in a timely manner under § 552(a)(6)(A) and by not promptly producing those responsive documents in their possession in contravention of their duties under § 552(a)(3)(A).

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 25
(No. 2:20-cv-1309 MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1

### IV.    CONCLUSION

2     For the reasons set forth above, Ms. Kinnucan respectfully requests that the Court grant

3  this motion and enter summary judgment in her favor.  Specifically, the Court is requested to

4  enter an order finding that:  (1) the HAC Report in NSA possession is an "agency record" that

5  must be produced under FOIA; (2) CIA's production is insufficient and includes unnecessary

6  redactions because it fails to segregate non-exempt information, and its *Vaughn* index is

7  insufficient to justify the corresponding redactions; and (3) NSA and CIA violated FOIA by their

8  delay in failing (a) to provide a timely, substantive response to her requests or appeal, and/or

9  (b) to promptly produce those responsive records to Ms. Kinnucan.

10     DATED this 27th day of August, 2021.

11                                                        DAVIS WRIGHT TREMAINE LLP

12                                                        By s/ *Caesar Kalinowski IV*
                                                           Caesar Kalinowski IV, WSBA #52650
13                                                          Allexia B. Arnold, WSBA #54902
                                                           920 5th Avenue, Suite 3300
                                                           Seattle, WA  98104-1610
14                                                          Telephone: (206) 622-3150
                                                           E-mail: caesarkalinowski@dwt.com
15                                                                    allexiaarnold@dwt.com

16                                                        Thomas R. Burke (*pro hac vice*)
17                                                          505 Montgomery Street, Suite 800
                                                           San Francisco, CA  94111-6533
18                                                          Telephone: (415) 276-6500
                                                           E-mail: thomasburke@dwt.com

19
20                                                        *Attorneys for Plaintiff Michelle J. Kinnucan*

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2        I hereby certify that on this day I electronically filed the foregoing with the Clerk of the

3   Court using the CM/ECF system which will send notification of such filing to all counsel of

4   record.

5        DATED this 27th day of August, 2021.

6

7                  By s/ *Caesar Kalinowski IV*
                   Caesar Kalinowski IV, WSBA #52650

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax