The Honorable Marsha J. Pechman

1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

6
7
8

9  MICHELLE J. KINNUCAN,

10         Plaintiff,

11     v.

12  NATIONAL SECURITY AGENCY,
    CENTRAL INTELLIGENCE AGENCY, AND
13  DEPARTMENT OF DEFENSE,

14         Defendants.

15

Case No. 2:20-cv-1309 MJP

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

NOTE ON MOTION CALENDAR:
October 8, 2021

***ORAL ARGUMENT REQUESTED***

16         Despite involving a purported ally's attack on a U.S. ship that left 34 Americans dead and

17  scores wounded, Defendants National Security Agency ("NSA") and Central Intelligence

18  Agency ("CIA") seek to hide 50+ year old documents about what happened to the U.S.S. *Liberty*

19  that fateful day in 1967.  Incredibly, they also insist that, 54 years later, the public has no

20  countervailing interest in knowing the complete facts.  But the Freedom of Information Act

21  ("FOIA") reflects "a general philosophy of full agency disclosure unless information is exempted

22  under clearly delineated statutory language," so that citizens like Ms. Kinnucan can "pierce the

23  veil of administrative secrecy and to open agency action to the light of public scrutiny."  *Dep't of*

24  *the Air Force v. Rose*, 425 U.S. 352, 360–61 (1976) (citation omitted).  Defendants fail to

25  acknowledge that purpose or their duties in their FOIA responses and Opposition, *see* Dkt. 27

26  ("Opp."), instead asserting that Ms. Kinnucan should be "satisfied" and relying on the same

27  insufficient claims of purported congressional intent, statutory language for exemptions, and

28  conclusory assertions of harm.

PLAINTIFF'S REPLY ISO MOTION FOR
SUMMARY JUDGMENT - 1
(No. 2:20-cv-1309 MJP)

1    As further explained below, the Court should hold these agencies accountable for

2    deliberately stalling the release of responsive documents in violation of FOIA.  In failing to meet

3    their burden, Defendants impermissibly "rely upon 'conclusory and generalized allegations of

4    exemptions'" to support the wholesale redaction of government materials.  *See Church of*

5    *Scientology of Cal. v. U.S. Dep't of the Army*, 611 F.2d 738, 742 (9th Cir. 1980) (quoting

6    *Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973)).  However, it is Defendants' statutory

7    duty to "determine that the claimed exemptions apply throughout all of the documents"—

8    segregating whatever information therein that does not relate to an exemption and providing "an

9    individualized explanation of the material being withheld."  *See Hamdan v. U.S. Dep't of Just.*,

10   797 F.3d 759, 780 (9th Cir. 2015).  Because Defendants failed to provide the necessary

11   information to meet their burdens and otherwise failed to excuse their unwillingness to provide

12   adequate responses to Plaintiff's requests, the Court should grant summary judgment as to her

13   claims and order the relevant documents released.

14       **A.    NSA Has Failed to Meet Its Burden to Prove that the HAC Reports Are Not Agency Records Subject to Disclosure**

15   Notwithstanding its provenance with a congressional committee, the undisputed evidence

16   shows that HAC Report is an agency record that should have been produced in response to Ms.

17   Kinnucan's FOIA request.  In its brief and supporting declarations, NSA continues to rely solely

18   on (1) the committee's original classification marking and (2) a 2008 post-hoc denial by

19   Congress to release the Report in response to a separate request.  However, without any

20   additional information regarding Congress's intent or circumstances at the creation of the Report

21   or the time of the transfer to NSA, as a matter of law, the agency's failure to provide the

22   necessary context highlights its admitted inability to meet its burden to prove that these

23   documents are *not* presumptively agency records.  *See U.S. Dep't of Just. v. Tax Analysts*, 492

24   U.S. 136, 142 n.3 (1989).  As NSA has not met its burden to prove that it "fully discharged" its

25   duties, the Court should rule in Plaintiff's favor on summary judgment and order NSA to release

26   the HAC Report in its entirety.  *Prison Legal News v. U.S. Dep't of Homeland Sec.*, 113 F. Supp.

27   3d 1077, 1081 (W.D. Wash. 2015) (on summary judgment, "the underlying facts and the

28

PLAINTIFF'S REPLY ISO MOTION FOR
SUMMARY JUDGMENT - 2
(No. 2:20-cv-1309 MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main  206.757.7700 fax

1    inferences to be drawn from them are construed in the light most favorable to the FOIA

2    requester") (Pechman, M.).

3        NSA's Opposition in fact concedes that the agency has no *contemporaneous* support for

4    its claim that the HAC Report is an agency record, as it has not even attempted to present

5    evidence concerning Congress's original intent, the context of the classification markings or

6    restrictions, or the circumstances and guidance at the time of the transfer to NSA. *See* Dkt. 20

7    ("Motion") at 17.[1]  For although "Congress may manifest an intent to retain control over

8    documents *either* when the documents are created *or* when the documents are transmitted to an

9    agency," *A.C.L.U. v. CIA*, 823 F.3d 655, 664 (D.C. Cir. 2016), NSA bears the burden of providing

10   evidence to support its claim.  In its Opposition, however, NSA doubles down on the sufficiency

11   of Mr. Hubbard's earlier declaration—which merely put forth his belief that the Report "was

12   proper to withhold" based on an external marking applied at some point and the Committee's

13   post-FOIA denial of release to a third party.  *See* Dkt. 28 ("Hubbard Decl.") ¶¶ 10-14.  But by

14   adopting and "agree[ing] with its contents" and declining to provide additional information about

15   the HAC Reports creation or transfer to NSA, *see* Dkt. 29 ("Kiyosaki Decl.") ¶¶ 21-22, NSA

16   conceded that it does not have answers to support its burden to provide critical context regarding

17   its possession of the Report.  *See* Motion at 18-20 (identifying lack of information regarding

18   application of markings, circumstances of transfer, or Congress's claims of retention).

19       Tellingly, the cases cited by NSA actually highlight that concession and undermine any

20   support for congressional intent to retain control of a document that was transferred to that agency

21   at some time in the last 50 years.  In *Goland v. CIA*, for example, the D.C. Circuit identified the

22   crucial question as whether "the document has *passed* from the control of Congress and become

23   property subject to the free disposition of the agency with which the document resides."  607

24

25       [1] Notwithstanding Defendants' impending surreply on the newly raised declaratory relief
26   issues, "[a] party waives or abandons an argument at the summary judgment stage by failing to
     provide more than a passing remark in support of its position."  *DZ Bank AG Deutsche Zentral-*
27   *Genossenschaftsbank v. Connect Ins. Agency, Inc.*, 2016 WL 631574, at *25 (W.D. Wash. 2016)
     (citing *Moreno Roofing Co., Inc. v. Nagle*, 99 F.3d 340, 343 (9th Cir. 1996) (passing remarks on
28   an issue in opposition to summary judgment were insufficient to avoid waiver); LCR 7(b)(2)).

PLAINTIFF'S REPLY ISO MOTION FOR
SUMMARY JUDGMENT - 3
(No. 2:20-cv-1309 MJP)

F.2d 339, 347 (D.C. Cir. 1978).  Looking well beyond just the "SECRET" marking that had been placed on the file itself, the court in *Goland* weighed the CIA's proffered evidence regarding "circumstances attending the document's generation and the conditions attached to its possession." *Id*.  Because the CIA presented contemporaneous evidence that it only retained "a copy of the Transcript for internal reference purposes only, to be used in conjunction with legislation concerning the Agency and its operations" and was "not free to dispose of the Transcript as it wills, but holds the document, as it were, as a 'trustee' for Congress," the Court held that Congress had not intended to release its control by virtue of *that* transfer.  *Id.*

Goland has since been distinguished in the D.C. and Ninth Circuits, *see Berry v. Dep't of Just.*, 733 F.2d 1343, 1348 (9th Cir. 1984) ("Although origination is relevant …, it cannot be dispositive.  To hold otherwise would be to drape an impenetrable shroud of secrecy over documents generated by nonagencies."); however, the requirement to provide information regarding "whether Congress transferred the records in such a way as to manifest its intent to retain control" remains the same.  *See Paisley v. CIA*, 712 F.2d 686, 694 (D.C. Cir. 1983) (ordering disclosure of agency records because "[t]he Government points to no *contemporaneous* and *specific* instructions from the SSCI to the agencies limiting either the use or disclosure of the documents").  Each of the cases cited by Defendant's Opposition highlights this requirement, as those defendant agencies (1) relied on much more than a single line of classification markings and (2) provided significant evidence regarding Congress's limitations on the documents' use at the time of creation and transfer.[2]  Also relevant here, those cases reaffirm that Congress's post-hoc objections are insufficient to "demonstrate[] its intent to control" the document at the time of transfer.  *See United*, 359 F.3d at 602; *see also Paisley*, 712 F.2d at 695 ("Such one-sided

---

[2] *See, e.g.*, *Un. We Stand Am., Inc. v. I.R.S.*, 359 F.3d 595, 598 (D.C. Cir. 2004) (identifying agency evidence regarding the creation of the document, retention, and contemporaneous limitations on transfer); *A.C.L.U.*, 823 F.3d at 667 (examining multiple creation and transfer letters that expressly limited agency's use of documents in detailed fashion); *Am. Oversight, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 2018 WL 4765145, at *6 (D.D.C. 2018) ("Not only do the instructions in this case appear on the documents, they are several sentences long, expressly asserting Congress's intent to retain control over the documents and explicitly restricting the production of the documents in response to a FOIA request.").

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main  206.757.7700 fax

1   correspondence initiated long after the original creation and transfer of the documents simply

2   constitutes *post hoc* rationalization by the agencies."); *Holy Spirit*, 636 F.2d at 842.

3          In this case, NSA relies mainly on the cover page of the HAC Report which bears a "TOP

4   SECRET" classification marking and notice stating "Not For Release Unless And Until

5   Authorized By Committee"—applied at some unknown time. *See* Opp. at 8-11. Standing alone,

6   this information is insufficient under the case law identified above to meet the agency's burden

7   for withholding these historical documents from the public. In particular, it is now undisputed

8   that NSA has no information regarding the (1) circumstances of how it obtained the Report or

9   (2) restrictions placed on the HAC Report's release—whether (a) by the Committee during the

10  creation or finalization of the Report, (b) to Congress or other legislative committees when it was

11  finalized, or (3) at the (still unknown) time of the transfer to NSA. As such, NSA has failed to

12  meet its burden to prove that the Report should not be released. *See Holy Spirit*, 636 F.2d at 841

13  (affirming release after finding that "[t]he Agency affidavit discussing these documents does not

14  specify the purpose of their transfer to the CIA"). The Court should therefore not grant NSA's

15  request to allow agencies to withhold any historical document based on limited markings, with

16  no context, applied at some unknown time.

17         Further unlike those cases that featured extensive restrictions on the agency's use of

18  certain information or documents, the marking here only appears to restrict use "Until

19  Authorized by Committee"—which the NSA does not dispute occurred at some point in the last

20  50 years. Indeed, NSA's (apparently) unrestricted use and release of the information therein

21  weighs *against* Congress having ever provided such limitations once the document left the

22  committee. *See* William D. Gerhard & Henry W. Millington, *Attack on a Sigint Collector,*

23  *Attack on the U.S.S. Liberty*, National Security Agency, Office of Cryptologic Archives and

24  History (1981), available at https://www.nsa.gov/portals/75/documents/news-

25  features/declassified-documents/uss-liberty/chronology-events/attack-sigint.pdf.[3]

26  _____

27         [3] In fact, despite NSA's invocation of the "highly sensitive" nature of the information and the

28  Report's "TOP SECRET" marking, *see* Kiyosaki Decl. ¶¶ 21-23, NSA crossed out that marking
    and revealed details about NSA's employees and classified actions before, during, and after the

PLAINTIFF'S REPLY ISO MOTION FOR
SUMMARY JUDGMENT - 5
(No. 2:20-cv-1309 MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main  206.757.7700 fax

Moreover, the committee *itself* discussed the contents of the Report in the public record, further repudiating NSA's claim that Congress intended the Report to be secreted away from all public release. *See* Department of Defense Appropriations for 1969: Hearings before a Subcommittee of the Committee on Appropriations, 90th Congress, 2d Session, Pt III at 357-60, 393-99 (Jan. 1969), available at

https://play.google.com/books/reader?id=wAZ4TwuJVj4C&pg=GBS.RA3-PA357&hl=en

(discussing details and offering to circulate copies of the Report and noting that the Report was made at the request of DOD and later disseminated to multiple agencies and executive offices). In fact, these uses are not only consistent with the marking on the Report itself—which only limited global release *until* authorized by the Committee—but further support Plaintiff's assertion that the Committee *did* ultimately release the Report after the initial marking was made (whether to NSA or others). *See New York Times Co. v. U.S. Dep't of Just.*, 752 F.3d 123, 141 (2d Cir. 2014) ("Whatever protection the [documents] might once have had has been lost by virtue of public statements of public officials at the highest levels and official disclosure of [associated materials]."); *A.C.L.U. of N. Cal. v. D.O.J.*, 880 F.3d 473, 491 (9th Cir. 2018) ("Materials normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record."); *Dow Jones & Co. v. U.S. Dep't of Justice*, 880 F.Supp. 145, 150–51 (S.D.N.Y.1995) ("Voluntary disclosures of all or part of a document may waive an otherwise valid FOIA exemption") (citing *Mobil Oil Corp. v. E.P.A.*, 879 F.2d 698, 700 (9th Cir. 1989)).

Because NSA cannot dispute these releases and it provides no other indication that Congress manifested a contemporaneous intent to retain control over the Report when it released it to NSA, the Court should find that NSA waived its argument, dismiss NSA's unsupported claims that these historic[4] documents must be shielded forever, and order their release.

---

attack in its own publication. *See Attack on a Sigint Collector*, at 20, 59-60, 67 (crossing out TS (i.e. TOP SECRET) marking for Report).

[4] NSA also ignores that federal law requires automatic declassification of national security information half as old as the Report, even where the classified information was transferred to

**B.     Defendants Failed to Meet Their Burden to Justify the Overbroad Redactions of Information Concerning a Deadly Attack in 1967**

Summary judgment is also appropriate because Defendants have failed to meet their burden to provide sufficient evidence or detail regarding the reactions and failure to segregate any non-exempt information.  For unlike the cases cited in Defendants' opposition, they have not "disclose[d] **as much information as possible** without thwarting the purpose of the exemption claimed."  *Citizens Comm'n on Hum. Rts. v. Food & Drug Admin.*, 45 F.3d 1325, 1328 (9th Cir. 1995) (citing *Wiener v. FBI*, 943 F.2d 972, 979 (9th Cir. 1991) (emphasis added)).  Instead, CIA's *Vaughn* index and Defendants' affidavits rely on routine recitations of statutory exemptions, conclusory assertions of potential harm, and specious claims that there is no countervailing public interest to release—all while failing to contend with the passage of time and continued public interest in the attack over the past half century.  Because Defendants are well aware of these requirements by virtue of their regular role as repeat FOIA defendants, and they have nevertheless failed to bear the burden of explaining the withholdings or demonstrating that the withheld information is "clearly exempt," *see Birch v. U.S. Postal Svc.*, 803 F.2d 1206, 1209 (D.C. Cir. 1986) (citing *Vaughn*, 484 F.2d at 823), the Court should grant Plaintiff's request for summary judgment as to these issues.

*First*, CIA's *Vaughn* index and Defendants' supporting declarations are deficient under the law because they fail to provide sufficient information to justify the wholesale redactions of hundreds of paragraphs and pages of information.  *See Fiduccia v. U.S. Dep't of Just.*, 185 F.3d 1035, 1043 (9th Cir. 1999) (noting that "[w]here documents are withheld altogether," an agency must produce "a *Vaughn* index of considerable specificity to know what the agency possesses but refuses to produce").  Consistent with the requirement to provide detailed information regarding the application of "clear" exemptions, an agency's proof "may not 'merely recite the statutory standards.'"  *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 89 (D.D.C. 2009) (citing *Carter v. U.S. Dep't of Comm.*, 830 F.2d 388, 392-93 (D.C. Cir. 1987)).  To the contrary, a *Vaughn* index must (1) identify the nature of each document and information

---

the agency, and especially with regard to documents in its possession with "permanent historic value" like those here.  *See* 32 CFR § 2001.30(a), (d), (i); E.O. 13,526, Secs. 1.5, 3.1-3.3.

PLAINTIFF'S REPLY ISO MOTION FOR
SUMMARY JUDGMENT - 7
(No. 2:20-cv-1309 MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main  206.757.7700 fax

withheld; (2) state the statutory exemption claimed; and (3) explain how disclosure of that particular information would damage the interests protected by the claimed exemption. *Citizens Comm'n*, 45 F.3d at 1326 n.1; *see also King v. U.S. Dep't of Just.*, 830 F.2d 210, 223-24 (D.C. Cir. 1987) ("A withholding agency must describe *each* document or portion thereof withheld, and for *each* withholding it must discuss the consequences of disclosing the sought-after information."). And while an agency may provide affidavits, those declarations must "contain *reasonably* detailed descriptions of the documents *and* allege facts sufficient to establish an exemption[.]" *Lane v. Dep't of Interior*, 523 F.3d 1128, 1135-36 (9th Cir. 2008) (emphasis added).[5] In other words, to satisfy their burden, Defendants were required to "provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977).

Here, just like in *Wiener*, the CIA's index and affidavit are inadequate to support the invoked exemptions because they "fail to discuss the facts or reasoning upon which [the declarant] based his conclusion, and thus affords [Ms. Kinnucan] no opportunity to contest that conclusion." *See* 943 F.2d at 983. Although the declarations do (verbosely) identify the general concerns implicated by certain national security and privacy exemptions, *see* Dkt. 30 ("Blaine Decl.") ¶¶ 36-60; Kiyosaki Decl. ¶¶ 31-42, they make no attempt to tie those concerns to these *particular* information or concerns. Aside from identifying some loose page ranges and whole documents and concluding that exemptions apply, Defendants provide no facts or contextual

[5] The requirement for that kind of "detailed, scrupulous description" is also clear from the cases cited by Defendants—where the agencies' submissions were only found to be sufficient because they "are neither amorphous nor conclusory" and include "reasonable articulations of precise consequences." *See, e.g.*, *Church of Scientology of Cal., Inc. v. Turner*, 662 F.2d 784, 786–87 (D.C. Cir. 1980); *Hamdan*, 797 F.3d at 780 (approving of declarations that "provide an individualized explanation of the material being withheld" and connected reasons for application of an exemption); *Berman v. CIA*, 501 F.3d 1136, 1141 (9th Cir. 2007) (finding sufficient detail where, among other information, the "declaration provides the facts and reasoning upon which his conclusion is based"); *Sea Shepherd Legal v. Nat'l Oceanic & Atmospheric Admin.*, 516 F.Supp.3d 1217, 1242 (W.D. Wash. 2021) ("The declaration describes the withheld documents individually and provides detailed explanations for each withholding.").

PLAINTIFF'S REPLY ISO MOTION FOR SUMMARY JUDGMENT - 8 (No. 2:20-cv-1309 MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main  206.757.7700 fax

1    information to meet their burden to provide as much information as possible—or even enough to

2    verify whether the claimed exemption exists.  When read outside the context of this lawsuit, the

3    attestations could easily apply to any request for intelligence information from recent operations.

4        This failure to provide any context also highlights the overbroad nature of the claimed

5    exemptions—and reflexive posture towards any disclosure—as Defendants do not explain how

6    or why response letters to Senators, sterilized information, talking points for briefings, old

7    situation reports, or "analytical work product," Blaine Decl. ¶¶ 20-35,[6] would include sensitive

8    current *source* information or intelligence *methods*.  *See New York Times Co. v. U.S. Dep't of*

9    *Just.*, 752 F.3d 123, 141 (2d Cir. 2014) ("it is no longer either 'logical' or 'plausible' to maintain

10   that disclosure of the [information] in the [documents] risks disclosing any aspect of 'military

11   plans, intelligence activities, sources and methods, and foreign relations'"); *A.C.L.U. v. Dep't of*

12   *Def.*, 389 F. Supp. 2d 547, 565 (S.D.N.Y. 2005) ("a '[m]emorandum from DOJ to CIA

13   interpreting the Convention Against Torture,' does not, by its terms, implicate 'intelligence

14   sources or methods'").  Accordingly, "[t]he explanations offered are precisely the sort of

15   '[c]ategorical description[s] of redacted material coupled with categorical indication of

16   anticipated consequences of disclosure' … properly rejected … as 'clearly inadequate.'"

17   *Wiener*, 943 F.2d at 978–79 (denying validity of "'boilerplate' explanations" because "[n]o effort

18   is made to tailor the explanation to the specific document withheld") (quoting *King*, 830 F.2d at

19   224).

20       Defendants' arguments also fail to contend with the passage of over half a century since

21   the attack and the documents' creation—which undoubtedly impacts the plausibility of any

22   support for *ongoing* concerns about national security, intelligence sources and methods, or

23   privacy issues of since-deceased individuals.  For example, although the declarations conclude

24   that the documents implicate "intelligence sources and methods, as well as details of specific

25   intelligence activities," "locations of covert CIA installations and locations," "code words and

26   _____

27       [6] CIA's minimal explanations regarding the nature of the information contained in Document
     Numbers 10-13—constituting hundreds of pages of "talking points" and information analysis
     that is entirely or largely withheld—are also insufficient to allow Plaintiff or the Court to

28   evaluate the application of the claimed exemptions.  *See King*, 830 F.2d at 221.

pseudonyms," and "classification and dissemination control markings," *see* Blaine Decl. ¶¶ 39-44, 48-55, they make no effort to claim how or why *those* 54-year-old methods, code words, locations, and intelligence operations would implicate national security today.  Likewise, the NSA's declaration explains that "the withheld information consists of specific details about NSA intelligence activities and capabilities" in 1967 but does not clarify why the public's "aware[ness] of NSA's capabilities" in the 1960s "would undermine NSA's entire mission" in 2021.  *See* Kiyosaki Decl. ¶ 36.  Simply put, Defendants have not met their burden to prove they redacted only that information necessary under a clearly delineated exemption.

Specifically with regard to claimed privacy exemption, Defendants similarly omit any explanation of how the intelligence reports and "talking points" constitute "personnel and medical files," or how "the disclosure of which would constitute a clearly unwarranted invasion of personal privacy" of individuals that have long since retired from CIA and NSA.  *See* 5 U.S.C. § 552(b)(6).  *Compare Sea Shepherd*, 516 F. Supp. 3d at 1240.  Instead, CIA ignores its ability to redact *only* that personal information (as well as code words, sources, methods, or safe houses), *see Dep't of Def.*, 389 F. Supp. 2d at 572, and brazenly asserts that "there is no countervailing public interest in disclosure of the information" regarding the individuals who purportedly concealed the truth about an attack that left 34 Americans dead and scores wounded, *see* Blaine Decl. ¶ 60.  But as attested by the aging survivors and senior public officials who supported their efforts to receive a full investigation in light of conflicting reports, *see* Declaration of Larry Bowen ¶¶ 4-6, Declaration of Rep. Pete McCloskey ¶¶ 6-10, information contained in the documents would not implicate current security concerns and is critical to uncovering (1) what Israel knew about the U.S.S. *Liberty*; (2) why the U.S. government's account conflicted with survivor and Israeli reporting; (3) whether political, intelligence, and military leadership misled the public regarding whether the attack was a knowing and deliberate attack on an American Navy ship; and (4) if Israel should have been investigated for war crimes after it allegedly sprayed machine gun fire on life rafts and medical personnel.[7]  As this information "would shed

---

[7] *See* Walter L. Jacobsen, *A Juridical Examination of the Israeli Attack on the USS Liberty,* 36 Naval Law Review 69, 80-82, 117-19 (Winter 1986), available at

PLAINTIFF'S REPLY ISO MOTION FOR
SUMMARY JUDGMENT - 10
(No. 2:20-cv-1309 MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main  206.757.7700 fax

light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to," *Lahr v. Nat. Transp. Safety Bd.*, 569 F.3d 964, 974 (9th Cir. 2009) (citation omitted), any possible privacy interest in half-century-old information that NSA has partially released is minimal in comparison to the interest of those survivors and their families in finding resolution and holding the government accountable for the military aid, diplomatic support, and financial assistance it provides to foreign governments such as Israel.  *See generally Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1232 (D.C. Cir. 2008).

      **Second**, Defendants wholly fail to provide any context for why **none** of the redacted information could be segregated and the non-exemption information produced.  *See* § 552(b) (mandating that "[a]ny reasonably segregable portion of a record shall be provided"); Motion at 20-23.  Although highlighted by Plaintiff and ignored by CIA, *see id.* at 20, "an agency cannot justify withholding an entire document simply by showing that it contains some exempt material."  *A.C.L.U. of N. Cal.*, 880 F.3d at 489 (internal citations omitted).  Under this Circuit's law, even after a court finds that an agency's withholdings are proper, it must "make a specific finding that no information contained in each document or substantial portion of a document withheld is segregable."  *Hamdan*, 797 F.3d at 779 (noting that an agency must "provide an individualized explanation of the material being withheld"); *Goldberg v. Dep't of State*, 818 F.2d 71, 76–77 (D.C. Cir. 1987) (Congress amended FOIA to clarify its "intent that courts act as an independent check on challenged classification decisions").  And while a court may rely on an agency's sufficiently detailed declaration, *Hamdan*, 797 F.3d at 779, conclusory claims of non-segregability are afforded no presumption of good faith.

      Here, although FOIA calls for "broad disclosure of Government records," *CIA v. Sims*, 471 U.S. 159, 166 (1985), CIA has stood firm on its refusal to produce a single line from over 170 pages and 20 paragraphs that were fully withheld.  *See* Motion at 13 (citing Kinnucan Decl., Ex. 10); 22 (citing Kalinowski Decl. ¶ 4, Ex. C).  This failure to segregate is based on the

---

https://www.usslibertyveterans.org/files/jacobsen.pdf (identifying government reporting and controversy regarding the nature of the attack, knowledge of Israel concerning the identity of the ship, and possible violations of the Geneva Convention).

PLAINTIFF'S REPLY ISO MOTION FOR
SUMMARY JUDGMENT - 11
(No. 2:20-cv-1309 MJP)

conclusory assertions that "the CIA [earlier] conducted a document-by-document and line-by-line review and released all reasonably segregable, non-exempt information" and a separate employee has thus "determined that no additional information can be released from the 15 documents[.]"  Blaine Decl. ¶ 61.  But such a generalized claim of non-segregability is insufficient under well-established law, *see King*, 830 F.2d at 221 (agency's explanations "inadequate because we are left with no contextual description for documents or substantial portions of documents withheld in their entirety"), and CIA should be required to segregate all information that does not *clearly* fall within an established and well-supported exception, *Dep't of Def.*, 389 F. Supp. 2d at 567 (agency's "statement that 'there are no meaningful, reasonably segregable, non-exempt portions' of the seventy-one documents is conclusory, for she does not describe the individual documents paragraph by paragraph and line by line").

Furthermore, unlike the agencies in *Sea Shepard* or *Hamdan* who did not "withhold the entire document" but "took the correct view that it was required to release any information that was not classified, even if it was a single sentence," *see* 797 F.3d at 780, Defendants have concluded that it may withhold over 170 pages and 20 paragraphs of information without releasing a single word within them.  In fact, this conclusion is undermined by its earlier production of numerous pages that directly implicate the same information and incident, *see* Kalinowski Decl. Ex. C (Entry Nos. 2, 3, 4, 5, 7, and 9), as well as its continued failure to explain why some documents are missing from its productions and index altogether, *id.* (Entry Nos. 7, 10).  Therefore, because there is "no feasible way for [the Court] to evaluate the conclusory determination of lack of segregability at the end of each of [the agency's] document descriptions without viewing at least a sample of the documents *in camera*," *see Dep't of Def.*, 389 F. Supp. 2d at 567, the Court should disregard any presumption of good faith and order the CIA release the documents without redactions or submit them for *in camera* review.

### C. Defendants Have Caused Plaintiff Harm by Violating Her Rights under FOIA, Continuing to Withhold Responsive Documents, and Failing to Respond

Defendants last seek to avoid their statutory duties under FOIA by claiming that this Court's judgment against their dilatory practices would be an impermissible advisory opinion

1  under Article III—effectively asking the Court to approve their tactics because they partially

2  responded after suit.  As explained by the Ninth Circuit, "Congress did not intend for … any

3  other agenc[y] to use the FOIA offensively to hinder the release of non-exempt documents."

4  *Long v. U.S. I.R.S.*, 693 F.2d 907, 910 (9th Cir. 1982).  Thus, "[u]nexplained agency delay still

5  requires the district court to determine whether the agency's conduct in failing to conform to

6  FOIA's procedural requirements demonstrates a lack of due diligence and is so delinquent or

7  recalcitrant as to warrant injunctive relief because ordinary remedies … would be inadequate[.]"

8  *Jud. Watch, Inc. v. United States Dep't of Homeland Sec.*, 895 F.3d 770, 783 (D.C. Cir. 2018).

9  And when a person has "fully complied with the administrative scheme" created by the agency

10  and it was the agency's "abuse of this scheme that forced the [plaintiff] to bring several lawsuits

11  to obtain release of the documents," those "unreasonable delays in disclosing non-exempt

12  documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent

13  these abuses" through providing judicial relief.  *Id.*  Indeed, "multiple courts … have found that

14  violation of FOIA's statutory 20-day deadline constitutes a harm," *Nightingale v. U.S.*

15  *Citizenship & Immigr. Servs.*, 333 F.R.D. 449, 461 (N.D. Cal. 2019) (collecting cases), and

16  courts are uniquely positioned to prevent that type of harm through declaratory relief and an

17  award of attorneys' fees, *see Prison Legal News*, 113 F. Supp. 3d at 1085.[8]

18       Here, the government's argument that "Defendants have already provided a response, and

19  … Plaintiff is not seeking any further relief," *see* Opp. at 20, is undermined by case law from this

20  district, FOIA's mandates, and the undisputed facts.  For unlike the cases cited in the Opposition

21  with policy and practice claims that were unpled or involved limited allegations of court-

---

[8] *See also Brown v. U.S. Customs & Border Protection*, 132 F. Supp. 3d 1170, 1172–73 (N.D. Cal. 2015) (citing *Akebia Therapeutics Inc. v. FibroGen, Inc.,* 793 F.3d 1108, 1111 (9th Cir. 2015)); *Jud. Watch*, 895 F.3d at 781 (quoting *Payne*, 837 F.2d at 494); *Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*, 2015 WL 4452136, at *7 (N.D. Cal. 2015) ("[A]n agency's failure to comply with the FOIA's time limits is, by itself, a violation of the FOIA.") (internal quotation marks and citation omitted); *Munger, Tolles & Olson LLP ex rel. Am. Mgmt. Servs. LLC v. U.S. Dep't of Army*, 58 F. Supp. 3d 1050, 1054 (C.D. Cal. 2014) (granting declaratory relief for "[a] total unjustified delay of over a year" after failing to respond to an appeal).

corrected failures,[9] Plaintiff has provided undisputed evidence of ongoing legal violations and attendant harm she has incurred by virtue of Defendants' delay—including a failure to respond to requests and appeals within 20 days, § 552(a)(6)(A)(i)-(ii), to provide written notice of unusual circumstances or request an extension, § 552(a)(6)(B), and to *promptly* produce those documents in their possession, § 552(a)(3)(A).

In particular, Defendants' Opposition has failed to meet its burden or create a genuine issue of material fact to dispute the following:

- Although NSA confirmed receipt of Ms. Kinnucan's February 18, 2019, request ("NSA 106371") on March 5, 2019, it has provided no reason why it could not follow up with the required response despite over a year's wait and the filing of a lawsuit—although it still possesses responsive records it has not released, *see* Kinnucan Decl. ¶ 6, Ex. 1;

- Although NSA confirmed receipt of Ms. Kinnucan's June 17, 2020, request ("NSA 109763") on June 19, 2020, it did not produce any documents within the statutory period, provide written notice about the reason for an extension, and did not provide a reason for withholding the records—forcing Plaintiff to incur the time and costs of filing this suit to obtain documents in NSA's admitted possession, *see* Kinnucan Decl. ¶ 7, Ex. 2;

- Although NSA belatedly filed a response to NSA 109763 on January 13, 2021, *after* this lawsuit was initiated, it has since refused to (1) process Plaintiff's administrative appeal that it demanded, (2) respond to her attorney appeals regarding the scope of its search, or (3) identify a reason for withholding responsive documents that are acknowledged elsewhere, *see* Kinnucan Decl. ¶¶ 9-11; [10]

- Although CIA confirmed receipt of Ms. Kinnucan's May 31, 2020, request ("CIA F-2020-01511") on June 3, 2020, it did not produce any documents within the statutory period, provide written notice about the reason for an extension, and did not provide a reason for withholding the records—forcing Plaintiff to incur the costs of filing this suit to obtain the records that it later partially produced, *see* Kinnucan Decl. ¶ 8, Ex. 3;

- CIA also failed to provide a substantive response to Ms. Kinnucan's July 1, 2020, amendment to CIA F-2020-01511, which CIA does not dispute was originally sent and

---

[9] *See, e.g.*, *Nat'l Parks Conserv. Ass'n v. Dep't of the Navy*, 2021 WL 1192443, at *6 n.8 (W.D. Wash. 2021) ("no remedy can be granted for any past failure to comply with FOIA's directive to estimate the amount of records being withheld" after court ordered agency to respond); *Singh v. Dep't of State*, 2020 WL 230908, at *2 (W.D. Wash. 2020) (noting that "if the delay—which lasted at least one year—is sufficiently egregious to justify relief, Plaintiffs' remedy is limited to declaratory relief that Defendants violated the statute and to Plaintiffs' ability to seek judicial review in this Court").

[10] As a result of this failure, NSA also has not meet its threshold burden to demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents. *Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir. 1985) (citation omitted).

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main  206.757.7700 fax

received through the exact same portal by MuckRock,[11] although it has since admitted that it possessed documents that were responsive to that amended request.  *See* Kinnucan Decl. Ex. 3; Blaine Decl. ¶¶ 10-13; and

- Although Defendants claim that COVID-19 also impacted their responses, they do not provide evidence to show that they provided written notice of those circumstances or an estimated time for completion or were otherwise excused from those statutory requirements, *see* Blaine Decl. ¶ 17; Kiyosaki ¶¶ 13-14.

In light of these undisputed facts—which establish ongoing, undisputed deficiencies in not fully responding to Plaintiff's original requests, amended request, and appeal and promptly producing documents still in their possession—the Court should grant Plaintiff's request for judgment based on the harm suffered by Plaintiff as a result.  *See, e.g.*, *Prison Legal News*, 113 F. Supp. 3d at 1084; *Or. Nat. Desert Ass'n v. Gutierrez*, 409 F. Supp. 2d 1237, 1248 (D. Or. 2006) (denying similar argument where "Defendants relied on their mootness argument and did not attempt to establish the exceptional circumstances with due diligence exception"); *Gilmore v. U.S. Dep't of Energy*, 33 F. Supp. 2d 1184, 1187 (N.D. Cal. 1998).

For the reasons set forth above, Ms. Kinnucan respectfully requests the Court enter summary judgment in her favor and an order finding that (1) the HAC Report is an "agency record" that must be produced under FOIA; (2) Defendants' declarations are insufficient to justify their failure to segregate non-exempt information or the corresponding redactions; (3) Defendants violated FOIA by their unexcused delay in providing notice or prompt production of documents; and (4) Plaintiff has substantially prevailed in her motion and is eligible for attorneys' fees to compensate her for the unnecessary costs forced on her by Defendants' inaction.  *See* § 552(a)(4)(E)(i).

---

[11] Despite CIA's attestation that it did not receive the amended request, it provides no explanation as to how it responded to the original request through the same manner or why it failed to respond when it learned of the amended request in September 2020.  *See* Blaine Decl. ¶ 8 (admitting that "CIA had become aware of the [amended] CIA Request" on September 1, 2020).  Furthermore, evidence from MuckRock's CEO show that the request *was* submitted through CIA's required portal on July 1, 2020—which at the minimum creates a genuine dispute as to whether the amended request was conveyed to CIA.  *See* Morisy Decl. ¶¶ 5-10, Exs. 1-2.

PLAINTIFF'S REPLY ISO MOTION FOR
SUMMARY JUDGMENT - 15
(No. 2:20-cv-1309 MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main  206.757.7700 fax

1    DATED this 15th day of October, 2021.

2                                        DAVIS WRIGHT TREMAINE LLP

3                                        By s/ Caesar Kalinowski IV
                                            Caesar Kalinowski IV, WSBA #52650
4                                            Allexia B. Arnold, WSBA #54902
                                            920 5th Avenue, Suite 3300
5                                            Seattle, WA 98104-1610
                                            Telephone: (206) 622-3150
6                                            E-mail: caesarkalinowski@dwt.com
                                                    allexiaarnold@dwt.com
7
                                            Thomas R. Burke (pro hac vice)
8                                            505 Montgomery Street, Suite 800
                                            San Francisco, CA 94111-6533
9                                            Telephone: (415) 276-6500
                                            E-mail: thomasburke@dwt.com
10
                                            Attorneys for Plaintiff Michelle J. Kinnucan
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S REPLY ISO MOTION FOR                    Davis Wright Tremaine LLP
SUMMARY JUDGMENT - 16                                      LAW OFFICES
(No. 2:20-cv-1309 MJP)                              920 Fifth Avenue, Suite 3300
                                                    Seattle, WA 98104-1610
                                            206.622.3150 main  206.757.7700 fax

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

DATED this 15th day of October, 2021.

By s/ *Caesar Kalinowski IV*
Caesar Kalinowski IV, WSBA #52650

CERTIFICATE OF SERVICE - 17

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax