1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10  MICHELLE J. KINNUCAN,                    CASE NO. C20-1309 MJP

11              Plaintiff,                    ADDITIONAL ORDER ON CROSS-
                                             MOTIONS FOR SUMMARY
12       v.                                   JUDGMENT

13  NATIONAL SECURITY AGENCY;
    CENTRAL INTELLIGENCE
14  AGENCY; DEFENSE
    INTELLIGENCE AGENCY; and
15  DEPARTMENT OF DEFENSE,

16              Defendants.

17

18       The Court previously issued an Order on the Parties' Cross-Motions for Summary

19  Judgment. (Dkt. No. 40.) The Court reserved ruling on Plaintiff's Freedom of Information Act

20  (FOIA) claims and ordered in camera review. The Court has now completed the in camera

21  review. The Court finds that Defendants have not provided an adequate Vaughn index or

22  explanation of whether they properly segregated non-exempt information. The Court ORDERS

23  Defendants to supplement the Vaughn index and supporting declarations to cure the defect

24

identified in this Order. And the Court ORDERS further briefing upon completion of these submissions. The Court will render its final decision as to the FOIA claims once the additional briefing is completed.

### BACKGROUND

Plaintiff Michelle Kinnucan is a researcher, writer, advocate, and veteran who is suing the National Security Agency (NSA), the Central Intelligence Agency (CIA), the Defense Intelligence Agency (DIA), and the Department of Defense (DOD) for violating her rights under FOIA, 5 U.S.C. § 552. Plaintiff seeks records relating to a 1967 attack by Israeli forces on a U.S. naval intelligence ship in international waters that left 34 dead and 173 wounded during the Six-Day War involving Israel, Egypt, Syria, Lebanon, and Iraq. (Amended Complaint ¶¶ 1–5 (Dkt. No. 17).) In response to Plaintiff's FOIA request, the CIA produced twelve redacted documents and identified three additional documents that it withheld in full. (See Declaration of Vanna Blaine (Dkt. No. 30).) The CIA claims that the withheld information falls within Exemption 1 and 3 under FOIA. The NSA also claims that portions of one document are properly withheld under Exemptions 1 and 3. (See Declaration of Linda M. Kiyosaki (Dkt. No. 29).)

The Court issued an Order on the Parties' Cross-Motions for Summary Judgment. (Dkt. No. 40.) In that Order, the Court disposed of Plaintiff's claim as to a House Appropriations Report and her claim for declaratory relief. (Id.) But the Court reserved ruling on whether the CIA and NSA properly withheld or redacted information from fifteen documents consistent with FOIA. The Court ordered the documents be produced in camera and after lengthy delays related to obtaining the necessary security clearance for one the Court's law clerks, the Court has now completed its review.

# ANALYSIS

## A. Legal Standards

FOIA permits an agency to exempt records from disclosure on nine enumerated grounds. 5 U.S.C. § 552(b)(1)–(9). These exemptions reflect the recognition that legitimate governmental and private interests could be harmed by the release of certain types of information. Am. Civ. Liberties Union of N. Cal. v. U.S. Dep't of Just., 880 F.3d 473, 483 (9th Cir. 2018). But the exemptions are narrowly construed and the agency has the burden of justifying withholding under any of them. Id. That is because "[g]overnment transparency is critical to maintaining a functional democratic polity, where the people have the information needed to check public corruption, hold government leaders accountable, and elect leaders who will carry out their preferred policies." Hamdan v. U.S. Dep't of Just., 797 F.3d 759, 769–70 (9th Cir. 2015)

The Court employs de novo review of agency compliance with FOIA. 5 U.S.C. § 552(a)(4)(B); Animal Legal Def. Fund v. U.S. Food & Drug Admin., 836 F.3d 987, 990 (9th Cir. 2016) (en banc). "The burden is on the agency to demonstrate, not the requester to disprove, that the materials sought are not agency records or have not been improperly withheld." See U.S. Dep't of Just. v. Tax Analysts, 492 U.S. 136, 143 n.3 (1989) (citation and quotation omitted). And ultimately the Court "has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B).

To ensure the FOIA exemptions have been properly asserted, the Court engages in a two-step review process. First the Court reviews whether the agency has given "an adequate factual basis" to support withholding under FOIA. Hamdan, 797 F.3d at 769. Second, the Court determines whether FOIA's exemptions correctly apply. Id. In making these determinations, the

Court may also review withheld records <u>in camera</u>. 5 U.S.C. § 552(a)(4)(B); <u>see</u> <u>Am. Civ.</u>

<u>Liberties</u>, 880 F.3d at 485. But because <u>in camera</u> review "does not permit effective advocacy

. . . [i]n camera review of the withheld documents by the court is not an acceptable substitute for

an adequate <u>Vaughn</u> index." <u>Wiener v. F.B.I.</u>, 943 F.2d 972, 979 (9th Cir. 1991).

A critical part of the Court's review is to determine whether the agency's "indices and

supporting declarations constitute a sufficient <u>Vaughn</u> index. . . ." <u>Hamdan</u>, 797 F.3d at 769

(quoting <u>Citizens Comm'n on Human Rights v. FDA</u>, 45 F.3d 1325, 1328 (9th Cir. 1995)). "A

<u>Vaughn</u> index is a submission that 'identif[ies] the documents withheld, the FOIA exemptions

claimed, and [contains] a particularized explanation of why each document falls within the

claimed exemption.'" <u>Transgender L. Ctr. v. Immigr. & Customs Enf't</u>, 46 F.4th 771, 781 (9th

Cir. 2022) (quoting <u>Lahr v. Nat'l Transp. Safety Bd.</u>, 569 F.3d 964, 989 (9th Cir. 2009) (internal

citation omitted)). "Where the government invokes FOIA exemptions in cases involving national

security issues, we are 'required to accord substantial weight to [the agency's] affidavits."

<u>Hamdan</u>, 797 F.3d at 769 (quoting <u>Hunt v. CIA</u>, 981 F.2d 1116, 1119 (9th Cir. 1992) (quotation

omitted)). "Those affidavits 'must describe the justifications for nondisclosure with reasonably

specific detail, demonstrate that the information withheld logically falls within the claimed

exemptions, and show that the justifications are not controverted by contrary evidence in the

record or by evidence of [agency] bad faith.'" <u>Id.</u> (quoting <u>Hunt</u>, 981 F.2d at 1119). "Specificity

is the defining requirement of the <u>Vaughn</u> index." <u>Transgender L. Ctr.</u>, 46 F.4th at 781 (quoting

<u>Wiener v. FBI</u>, 943 F.2d 972, 979 (9th Cir. 1991)). "For this reason, the agency 'may not

respond with boilerplate or conclusory statements.'" <u>Id.</u> (quoting <u>Shannahan v. IRS</u>, 672 F.3d

1142, 1148 (9th Cir. 2012)). Rather the "agency must 'disclose[ ] as much information as

possible without thwarting the [claimed] exemption's purpose." <u>Id.</u> at 782 (quoting <u>Wiener</u>, 943

F.2d at 979). "[T]he Government 'must bear in mind that the purpose of the index is not merely to inform the requester of the agency's conclusion that a particular document is exempt from disclosure . . . but to afford the requester an opportunity to intelligently advocate release of the withheld documents and to afford the court an opportunity to intelligently judge the contest.'" Id. at 782 (quoting Wiener, 943 F.2d at 979).

FOIA also requires that any "reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). "It is reversible error for the district court to simply approve the withholding of an entire document without entering a finding on segregability, or the lack thereof, with respect to that document." Hamdan, 797 F.3d at 779. "This requirement dovetails with the principle that a district court errs when it grants summary judgment where the agency 'did not provide [plaintiff] or the district court with specific enough information to determine whether the [agency] had properly segregated and disclosed factual portions of those documents that the [agency] claimed were exempt under the deliberative process privilege.'" Transgender L. Ctr., 46 F.4th at 785–86 (quoting Pac. Fisheries, Inc. v. United States, 539 F.3d 1143, 1149 (9th Cir. 2008)).

**B.    The Sufficiency of Defendants' FOIA Exemption and Segregagability Assertions**

The CIA and NSA have invoked FOIA Exemptions 1 and 3 (5 U.S.C. § 552(b)(1) and (b)(3), respectively) as the basis to redact portions of twelve documents and to withhold three other documents in full that are responsive to Plaintiff's FOIA request.[1] (See Order on Cross-

---

[1] The Court has already ruled that certain materials withheld under Section 552(b)(6)'s protections on personal information is acceptable, particularly given Plaintiff's failure to articulate any public-interest rationale for requiring the disclosure of names. (See Order on Cross-Motions at 18.) As such, the Court does not address further Defendants' invocation of Exemption 6.

Motions at 13-17.) The CIA claims certain records are exempt under Exemption 1 to protect "classified intelligence methods and sources" whose release is reasonably expected to harm national security. (See Blaine Decl. ¶¶ 20- 45 and Ex. H (Vaughn index).) It also claims that Exemption 3 applies to portions of each document that would reveal information that the CIA may not disclose by statute. (Blaine Decl. ¶¶ 46–47.) The NSA also claims that portions of document 8 must be withheld under Exemptions 1 and 3. (Kiyosaki Decl. ¶¶ 30-43.) The Court first reviews whether the CIA and NSA have satisfied their burden to prove that either or both exemptions applies and then turns to the question of segregability.

### 1.  Exemption 1

Under Exemption 1, an agency does not have to disclose information that is:

> (1)(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order.

5 U.S.C. § 552(b)(1). As the Court previously explained, "[t]he issue here is whether the information withheld remains 'in fact properly classified.'" (Order on Cross-Motions at 13 (quoting 5 U.S.C. § 552(b)(1)(B)).) The CIA has asserted that the documents and information are correctly withheld as being classified under Executive Order 13526 because disclosure could reasonably be expected to cause damage to national security. (Id. (citing Blaine Decl. ¶ 37).) For classification to be proper under EO 13526, two elements are required: (1) disclosure must reasonably be expected to result in damage to national security and (2) "the original classification authority is able to identify or describe the damage." Exec. Order 13526 § 1.2(a).

When the agency invokes Exemption 1 as to intelligence sources and methods, it "must provide the court and the FOIA requester with information sufficient to determine whether the source was truly a confidential one and why disclosure of the withheld information would lead to exposure of the source." Wiener, 943 F.2d at 980. "To justify an Exemption 1 claim, the Vaughn

1    index must provide (to the extent permitted by national security needs) sufficient information to

2    enable the requester to contest the withholding agency's conclusion that disclosure will result in

3    damage to the nation's security." Id. Conditional and boilerplate assertions are insufficient

4    because they lack adequate specificity to permit the requester a fair opportunity to challenge the

5    agency's conclusion. See id at 979. In Wiener, for example, the court held that the Vaughn

6    "index fail[ed] to tie the FBI's general concern about disclosure of confidential sources to the

7    facts of this case." Id. at 981 (concerning information that was over 20 years old). But

8    "[u]ltimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears

9    logical or plausible." Hamdan, 797 F.3d at 774 (citation and quotation omitted). And the Court

10   must "give considerable deference to agency affidavits made in apparent good faith where the

11   affidavits reasonably describe the justifications for nondisclosure and show that the content

12   withheld falls within one of FOIA's exemptions." Id. at 772.

13       Having completed in camera review of the documents, the Court has been able to assess

14   the justifications advanced by the CIA and NSA in the Vaughn index and supporting

15   declarations. But the Court is aware of the Ninth Circuit's admonishment that in camera review

16   "is not an acceptable substitute for an adequate Vaughn index." Wiener, 943 F.2d at 979. The

17   Court therefore does not rely on its in camera review to serve as a substitute for the Vaughn

18   index. The Court's decision in this Order turns on its review of the Vaughn index, the supporting

19   declarations, and the redacted copies of the records that have been produced to Plaintiff. To the

20   extent the Court references its in camera review, it does so merely to provide Defendants specific

21   instances where the Court believes the Vaughn index and supporting declarations particularly fall

22   short.

23

24

In the following subsections, the Court reviews its two-part analysis of the Exemption 1 claims. First, the Court assesses whether the supporting declarations and <u>Vaughn</u> index sufficiently identify the information withheld as concerning intelligence methods and sources, covert agency facilities, and/or the NSA's intelligence activities and capabilities. Second, the Court examines whether the CIA and NSA have given sufficient justification to conclude that revelation of the materials is reasonably expected to harm the national security.

### a.    Step 1: Sufficient Identification of Withheld Material

As to Document 1 (C01283097), the Court finds that the redacted information withheld under Exemption 1 on page three has been sufficiently identified by the CIA in the <u>Vaughn</u> index to concern intelligence sources and methods. Blaine's declaration and the <u>Vaughn</u> index identify this information as concerning intelligence sources and methods. (Blaine Decl. ¶¶ 37-38, 42; <u>Vaughn</u> Index, Entry No. 1.) This claim is narrowly asserted as to just one limited portion of the final page of the document. The assertion appears both logical and plausible, particularly when applying the deference owed to the CIA's declarant. <u>See</u> <u>Hamdan</u>, 797 F.3d at 772, 774. The Court therefore finds the CIA has adequately identified the redacted information as concerning intelligence sources and methods covered by Exemption 1.

As to Documents 2 (C06883306), Document 3 (C00431696), Document 4 (C00431695), Document 5 (C02412716), Document 6 (C06883307), Document 8 (C03030912), and Document 9 (C00431707) the Court finds that Blaine and the <u>Vaughn</u> index fail to adequately describe how the redacted information falls within Exemption 1. There are multiple paragraphs in each document identified as being subject to Exemption 1. But the <u>Vaughn</u> index provides only the following boilerplate explanation for all of the redactions in each document: "Exemption (b)(1) was asserted to protect classified intelligence methods and sources." (<u>Vaughn</u> Index, Entry Nos. 2, 3, 4, 5, 6, 8, and 9.) Blaine's declaration adds some additional information, but that

information is not document- or redaction-specific. First, like the <u>Vaughn</u> index, Blaine states that "[i]ntelligence sources, methods, and activities properly withheld under Exemption (b)(1) are contained in" each document, listing the relevant page ranges. (Blaine Decl. ¶ 42.) Blaine adds additional color about the documents, but she speaks about them as a collection, without any differentiation that might allow the reader to tie her claim to a specific document or redacted portion of the document. (Blaine Decl. ¶¶ 38-41.) For example, she states that "[m]ost of the documents at issue contain information concerning CIA intelligence sources and methods. . . ." (Blaine Decl. ¶ 39.) Neither the Court nor Plaintiff can reasonably use this statement to identify what specific portions of the documents actually contain information about CIA intelligence sources and methods. While the Court gives deference to Blaine's attestation, it remains too vague to intelligibly identify those portions of Documents 2, 3, 4, 5, 6, 8, and 9 that might concern intelligence sources and materials. The CIA's <u>Vaughn</u> index and Blaine's declaration diverge from those found adequate in <u>Hamdan</u> where the FBI identified how a specific document "reflected a particular vantage point from which the source of the intelligence might be identified" and that groups of documents reflected "intelligence activities information gathered on a specific individual or organization and that disclosure would reveal the means used to gather the intelligence and the extent of the FBI's knowledge of a specific target during a specific period in time." <u>Hamdan</u>, 797 F.3d at 774–75. Here, the CIA advances boilerplate assertions in the <u>Vaughn</u> index and only generalized statements about the contents of groups of documents rather than specific assertions as to each redacted portion of these documents. This falls short of the CIA's burden to show the contents of these documents fall within Exemption 1. <u>See</u> <u>Wiener</u>, 943 F.2d at 979 (finding similar boilerplate assertions insufficient).

1    The Court's <u>in camera</u> review also confirms that the CIA's descriptions are too vague to

2    allow the Court to identify what is or is not an intelligence method or source in the redacted

3    sections. For example, despite the information in the <u>Vaughn</u> index, the Blaine and Kiyosaki

4    Declarations the Court could find no evidence that the following redacted information concerns

5    intelligence methods or sources:

6      <u>Document 2</u>:   (1) page 2 at ¶ 3;

7      <u>Document 3</u>:   (1) page 2 at ¶ 2 (words 4, 6, 15, 18 to the end); (2) page 2 at ¶ 3; (3) page
                            3 at ¶ 10; and (4) page 3-4 at ¶ 12;

8      <u>Document 4</u>:   (1) page 2 at ¶ 3;

9      <u>Document 6</u>:   (1) page 2 at the last sentence of paragraph ¶ 5;

10     <u>Document 8</u>:   (1) page 3 at the first redaction block and the first two words of the second
                            redaction block; (2) page 5 at ¶¶ 1, 3, and 4; (3) page 5 at the first sentence
11                          of the last paragraph; (4) page 6 at ¶¶ 2, 3 and 4; (4) page 6 at the first
                            sentence and words 1-7 of second sentence in ¶ 5; (5) page 7 at ¶¶ 1, 2, 3,
12                          and 5; (6) page 7 at ¶ 4 except as to the last sentence; (7) page 8 in full; (8)
                            page 10, in full except for first sentence and header of ¶ 1; (9) page 11 in
13                          full; and (10) page 12 at ¶¶ 1-3; and

14     <u>Document 9</u>:   (1) page 4 at ¶ 9 except as to the last sentence; and (2) page 4-5 at ¶ 10.

15    The Court also finds that the NSA has inadequately identified materials subject to

16    Exemption 1 in Document 8. Kiyosaki claims that Document 8 contains "specific details about

17    NSA intelligence activities and capabilities" and "details about NSA intelligence reporting

18    derived from SIGINT and associated analysis and explanation." (Kiyosaki Decl. ¶ 36.) She

19    further explains that this information concerns "intelligence activities (including covert action),

20    intelligence sources and methods, or cryptology." (Kiyosaki Decl. ¶ 33 (citing Section 1.4(c) of

21    E.O. 13526).) But Document 8 contains fourteen pages, with redactions associated with

22    Exemption 1 on eleven pages. While Kiyosaki's explanations are perhaps more specific than

23    Blaine's, they do not allow a meaningful assessment of whether each piece of redacted

24

1   information falls within these broad categories. The declaration could have offered specific

2   insights as to each redacted section of information, but does not. That hampers the Court's ability

3   to judge this dispute. See Transgender L. Ctr., 46 F.4th at 782. And the Court's in camera review

4   confirms that Kiyosaki's declaration lacks the necessary specificity to confirm—even with

5   deference—that Exemption 1 applies to each piece of redacted information.

6       As to the three documents withheld in full—Document 11 (C031711947), Document 12

7   (C02901016), and Document 13 (C03006070)—the Court similarly finds that the CIA fails to

8   meet its burden. As with Documents 2, 3, 4, 5, 6, 8, and 9, Blaine's declaration provides

9   inadequate information to know whether or not the entirety of each document details intelligence

10  sources and methods. The Vaughn index repeats the boilerplate statement that "Exemption (b)(1)

11  was asserted to protect classified intelligence methods and sources." (Vaughn Index, Entry Nos.

12  11-13.) But without more specificity, the Court cannot assess whether all 173 withheld pages

13  plausibly identify intelligence methods and sources. Additionally, Blaine claims that Documents

14  11, 12, and 13 "each contain[s] details related to the locations of covert CIA installations and

15  locations." (Blaine Decl. ¶ 44.) But these documents total 173 pages and there is no explanation

16  from Blaine or the Vaughn index that all pages contain references to CIA installations or

17  locations. Indeed, the Vaughn index makes no reference to covert locations. Even though the

18  Court applies deference to the assertions, they are not specific enough to merit a finding that

19  Exemption 1 applies to all of the information in these three documents. The Court's in camera

20  review also confirmed that the justification advanced lacks sufficient specificity to conclude that

21  all pages of these documents reflect intelligence sources and methods or covert locations. The

22  Court finds that CIA has failed to meet its burden to show how all of the information in these

23  documents falls within Exemption 1.

24

### b.   Step 2: Reasonable Expectation of Harm to National Security

The Court also finds the CIA and NSA have failed to identify with sufficient care and detail how the revelation of the withheld and redacted information from 1967 and 1978 would reasonably be expected to result in current damage to national security. See Exec. Order 13526 § 1.2(a). The Court has examined the CIA's and NSA's declarations and Vaughn index to determine whether the justifications for nondisclosure are provided with "reasonably specific detail [to] demonstrate that the information withheld logically falls within the claimed exemptions. . . .'" Transgender L. Ctr., 46 F.4th at 781 (quotation and citation omitted). The Court acknowledges that the CIA and NSA's justification will withstand scrutiny "if it appears logical or plausible." Hamdan, 797 F.3d at 774 (citation and quotation omitted). But even applying the deference owed on matters of national security, the Court remains unconvinced that revelation of all of the withheld information is reasonably expected to harm the national security.

The CIA fails to provide a logical explanation as to why the redacted and withheld information would reasonably be expected to harm national security if revealed. First, Blaine does not attempt to make a showing of harm specific to each document or its contents. Instead, Blaine speaks in generalities about the risk of disclosure of information about intelligence methods and sources, and the location of covert facilities. (Blaine Decl. ¶¶ 39-40, 44.) That is problematic because it does not allow the Court to measure the logic or plausibility of the assertions as to each document, particularly for lengthy documents. It also falls short of the agency's burden to "make an effort to tailor the explanation for classification to the specific document withheld." Hamdan, 797 F.3d at 773.

Second, Blaine fails to make a logical or plausible explanation as to why the revelation of information from 1967 and 1978 would be reasonably likely to harm national security. Blaine contends that "[e]ven small details about CIA's intelligence activities, or sources or capabilities

in the 1960s could provide helpful information to our adversaries today" because "[i]t would allow them to build a better understanding of the sources or partners the CIA worked with (and when), and what information the CIA had the capability of gathering at the time." (Blaine Decl. ¶ 41.) Even applying substantial weight to this assertion, the Court finds missing any statement of why an adversary's understanding of the CIA's methods or sources from the 1960s would or could allow them to interfere with the CIA's current methods or sources of intelligence gathering. See Hamdan, 797 F.3d at 769 (requiring "substantial weight" to be applied to the declaration). Even applying deference, the Court cannot paper over the logical gap in the CIA's position.

Third, Blaine asserts that "many intelligence sources and methods remain viable for many years, and the harms from disclosure do not become attenuated over time." (Blaine Decl. ¶ 41.) But Blaine nowhere asserts that the withheld information concerns any currently viable sources or methods of intelligence gathering that might support her assertion. Blaine runs into a similar pitfall when describing covert agency facilities. Although she claims Documents 11, 12, and 13 contain details about covert CIA facilities and locations and that such revelations could be harmful, she nowhere states whether any of these locations or facilities described fifty-five years ago are currently in use or might be expected to be in future use. In sum, the Court is unconvinced that the CIA has met its burden as to all of the withheld and redacted documents particularly given the lengthy passage of time.

The NSA, too, falls short of meeting its burden as to Document 8. Kiyosaki fails to advance a logical or plausible explanation as to why revelation of information from 1967 would harm national security. Kiyosaki asserts that revealing Document 8's information about the NSA's "intelligence activities and capabilities" would "thereby affect the ability of NSA to

1    counter threats to the national security of the United States." (Kiyosaki Decl. ¶ 35.) Kiyosaki

2    makes no mention of why information from 1967 would make the NSA presently unable to

3    counter current or future threats. This undermines the logic of her position. Kiyosaki also reports

4    that because the information contains "details about NSA's intelligence reporting derived from

5    SIGINT and associated analysis or explanation" its disclosure would harm national security

6    "given the insights it provides." (Id.) But, again, Kiyosaki does not acknowledge the age of the

7    information or explain why its specific revelation might disrupt present NSA intelligence efforts.

8    This is insufficient. See Hamdan, 797 F.3d at 773. Kiyosaki also posits that "[i]f targets were

9    aware of NSA's capabilities against them, they would likely change their methods to evade

10   collection, which could undermine NSA's entire mission." (Kiyosaki Decl. ¶ 36.) But this kind

11   of conditional explanation falls short, as the Ninth Circuit concluded in Wiener, 943 F.2d at 979.

12   See Hamdan, 797 F.3d at 774. And Kiyosaki fails to state whether there are any present targets

13   identified in Document 8 that might possibly change their methods to evade collection if the

14   document was revealed showing activities from 1967 and before. Kiyosaki's declaration also

15   relies on a presumption of harm to national security, which is improper because the NSA bears

16   that burden. See Am. Civ. Liberties, 880 F.3d at 483. For example, Kiyosaki states the withheld

17   information consist of specific details about NSA intelligence activities and capabilities, which

18   plainly cannot be released to the public without exceptionally grave damage to national

19   security." (Kiyosaki Decl. ¶ 36.) While the danger may be "plain" to Kiyosaki, the NSA still

20   bears the burden to show that this conclusion is logical or plausible. The Court finds this circular

21   reasoning inadequate.

22                                    *        *        *

23

24

1       The Court briefly summarizes its conclusions. First, although the CIA has provided

2   sufficient explanation of why Document 1 refers to materials covered by Exemption 1, it has

3   failed to identify why the other information in Documents 2, 3, 4, 5, 6, 8, 9, 11, 12, and 13 fits

4   within Exemption 1. Similarly, the NSA has not convinced the Court that Exemption 1 applies to

5   Document 8. Second, as to all of these documents, both the CIA and NSA have not offered a

6   plausible or logical explanation for why the revelation of this information is reasonably expected

7   to harm the national security. The Court notes that the <u>Vaughn</u> index, in particular, remains

8   threadbare and full of unhelpful boilerplate that does not allow the Court to "intelligently judge"

9   the agencies' claims as to Exemption 1. <u>See</u> <u>Transgender L. Ctr.</u>, 46 F.4th at 782 (citation and

10  quotation omitted). The supporting declarations do not fill that gap, given their lack of

11  specificity, clarity, and logic.

12      **2.     Exemption 3**

13      The CIA and NSA invoke Exemption 3 to protect certain information from disclosure.

14  "There is a two-step inquiry in deciding Exemption 3 questions." <u>Hamdan</u>, 797 F.3d at 776. "We

15  ask first whether the statute identified by the agency is a statute of exemption within the meaning

16  of Exemption 3, and then whether the withheld records satisfy the criteria of the exemption

17  statute." <u>Id.</u> (citation omitted).

18      As to the first step, the CIA and NSA identify Section 102(A)(i)(1) of the National

19  Security Act, 50 U.S.C. § 3024, and Section 6 of the Central Intelligence Agency Act of 1949, as

20  amended, 50 U.S.C. § 3507, as statutory bases for this exemption. (Blaine Decl. ¶ 47; Kiyosaki

21  Decl. ¶ 41.) The National Security Act provides that the Director of National Intelligence (DNI)

22  "shall protect intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 3024.

23  The DNI is authorized to protect CIA methods. The NSA has also identified Section 6 of the

24

1    National Security Agency Act of 1959, 50 U.S.C. § 3605, as the basis for withholding. This

2    statute exempts the NSA from "the disclosure of the organization or any function of the National

3    Security Agency, or any information with respect to the activities thereof, or of the names, titles,

4    salaries, or number of the persons employed by such agency." 50 U.S.C. § 3605(a).

5         As to the second step, the National Security Act "provides the Director [of National

6    Intelligence] with 'very broad authority to protect all sources of intelligence information from

7    disclosure.'" Berman v. C.I.A., 501 F.3d 1136, 1140 (9th Cir. 2007) (quoting C.I.A. v. Sims,

8    471 U.S. 159, 168–69 (1985)). "Because of this 'sweeping power,' courts are required to give

9    'great deference' to the CIA's assertion that a particular disclosure could reveal intelligence

10   sources or methods." Id. (quoting Sims, 471 U.S. at 169, 179). "The term 'sources' is to be

11   broadly construed and encompasses not only 'secret agents,' but instead reaches all sources of

12   information the CIA relies upon, including publicly available information." Id. (quoting Sims,

13   471 U.S. at 170–71). "A foreign government can learn a great deal about the Agency's activities

14   by knowing the public sources of information that interest the Agency." Sims, 471 U.S. at 176-

15   77. Moreover, "superficially innocuous information . . . might enable an observer to discover the

16   identity of an intelligence source" by piecing it together with other information. Id. at 178. The

17   Ninth Circuit has acknowledged that "there exists 'a near-blanket FOIA exemption' for CIA

18   records" and that "Sims leaves courts 'only a short step from exempting all CIA records from

19   FOIA.'" Id. (quoting Hunt, 981 F.2d at 1120 (internal quotation marks and alteration omitted)).

20        The CIA and NSA invoke Exemption 3 as to Documents 2 through 15. First, the CIA

21   asserts that all of the same information that is exempt from disclosure under Exemption 1 in

22   Documents 1-6, 8-9, 11-13 is also exempt under Exemption 3 because it concerns intelligence

23   methods and sources. (Blaine Decl. ¶ 48.) Second, the CIA claims that Documents 2-14 contain

24

code words, pseudonyms, classification, and dissemination control markings that are exempt

from disclosure under Exemption 3. The NSA also invokes Exemption 3 as to Document 8,

asserting that it contains information about intelligence sources and methods and the NSA's

capabilities, functions, and activities.

As to Document 1, the Court agrees with the CIA that it has adequately identified

portions of the document that identify methods or source of intelligence that fits within

Exemption 3. On this point, the Court adopts its Exemption 1 analysis. But the Court remains

unconvinced that the CIA has sufficiently identified the intelligence methods and sources in

Documents 2, 3, 4, 5, 6, 8, 9, 11, 12, and 13 to satisfy Exemption 3. The Court reaches the same

conclusion as to the NSA's assertions concerning Document 8. The Court adopts its Exemption 1

analysis as to these documents and the Exemption 3 assertion. In addition, the Court notes that,

as to Exemption, 3 Kiyosaki's Declaration uses the kind of conditional language found

inadequate in the context of Exemption 1 in Wiener. See Hamdan, 797 F.3d at 774. She states

that "the referred material contains information that could potentially reveal NSA capabilities,

sources, and/or methods." (Kiyosaki Decl. ¶ 42.) This undermines her assertion that the redacted

information does actually refer to the NSA's capabilities, sources, and/or methods, and it

deprives Plaintiff of the ability to test the assertion or the Court to intelligently judge the issue.

The Court's in camera review also confirms the inadequacy of the assertion, as it provides too

little guidance to test it.

The Court also finds that the CIA has failed to provide sufficient information to allow for

identification of code words, pseudonyms, classifications, and dissemination control markings in

Documents 2 through 14. As to Documents 2-10 and 14, Blaine provides page ranges of

redactions that she claims contain this information. But these same page ranges have been

identified as containing information about intelligence sources and methods, classification, and dissemination control markings. Neither the documents themselves (as produced to Plaintiff) nor the supporting declarations or Vaughn index allow the Court to know whether a particular redaction concerns an intelligence source or method, a classification mark, a dissemination control marking, pseudonym, or a code word. Additionally, the Vaughn index asserts that all of Documents 11-13 contain code words, pseudonyms, disclosure classifications, and dissemination control markings that justify their withholding. But as the Court previously noted, these documents total 173 pages and there is no indication from Blaine or the Vaughn index that all of these documents contain solely this information. The Court's in camera review of these documents casts further doubt on this assertion. The Court finds the CIA's Vaughn index and Blaine's Declaration fail to adequately explain what specific portions of the documents truly identify code words, pseudonyms, disclosure classifications, or dissemination control markings sufficient to satisfy Exemption 3. Without greater refinement, particularly in the specific identification of the subject matter of the withholding and specific redactions, the assertion misses the mark.

In sum, the Court concludes that except as to Document 1, the CIA and NSA have failed to sufficiently support their assertion that all of the withheld materials identified fall within Exemption 3.

### 3.    Segregability

The Court further finds that the CIA and NSA have not adequately justified their assertion that they have segregated the non-exempt portions of these records.

With regard to segregability, "[a] district court must take seriously its role as a check on agency discretion, but this does not require a page-by-page review of an agency's work."

1    Hamdan, 797 F.3d at 779. "Agency affidavits that are sufficiently detailed are presumed to be

2    made in good faith and may be taken at face value." Id.

3         The CIA's segregability assertion fails because "the agency 'did not provide [plaintiff] or

4    the district court with specific enough information to determine whether the [agency] had

5    properly segregated and disclosed factual portions of those documents that the [agency] claimed

6    were exempt'" under Exemption 1 and 3. Transgender L. Ctr., 46 F.4th at 785–86 (quoting Pac.

7    Fisheries, Inc. v. United States, 539 F.3d 1143, 1149 (9th Cir. 2008)). Blaine only asserts that

8    "the CIA conducted a document-by-document and line-by-line review and released all

9    reasonably segregable, non-exempt information." (Blaine Decl. ¶ 61.) And the Vaughn index

10   only makes this assertion as to Documents 11-13. But the CIA provides no details that might

11   allow the Court and Plaintiff to understand how that line-by-line analysis was performed and

12   how the CIA made its ultimate conclusion on segregability as to all of the redacted and withheld

13   documents. There are no document-specific statements, for example, that the materials withheld

14   are "so inextricably intertwined with the non-exempt portion, that any segregable material would

15   not be meaningful." Hamdan, 797 F.3d at 780 (finding such details sufficient to justify a

16   segregability assertion). The CIA also fails to provide any specific explanation as to why no

17   portion of the 173 pages withheld in Documents 11-13 can be segregated and produced. The

18   Court's in camera review suggests that far greater specificity is necessary to justify the lack of

19   segregation of these three documents. See Hamdan, 797 F.3d at 780 (noting that the district court

20   may undertake an in camera review where "an agency declaration lacks sufficient detail").

21   Ultimately, as to all of the documents except Document 1, the Court lacks sufficient information

22   to determine whether any exempt information can be segregated from non-exempt information.

23   See id. (noting that "the DIA's declarations lack sufficient detail to allow the district court to

24

1   determine that the claimed exemptions apply throughout all of the documents," undermining any

2   segregability assertion). Defendants have failed to satisfy their burden as to segregability.

3   **C.   Remedy**

4        Except as to Document 1, the Court finds that the CIA and NSA have failed to meet their

5   burden to justify the withholding of information from Documents 2 through 15 and as to the

6   issue of segregability for those same documents. The Court must therefore determine the proper

7   remedy.

8        Ninth Circuit precedent suggests that the agencies here should be given further

9   opportunity to supplement the Vaughn index and supporting declarations to support the claimed

10   FOIA exemptions and segregability. See Wiener, 943 F.3d at 979 (noting that revision of the

11   Vaughn index on remand was appropriate given the FBI's failure to adequately support the

12   claimed exemptions); Transgender L. Ctr., 46 F.4th at 782 (remanding "to the district court to

13   direct the agencies to provide specific, non-conclusory Vaughn indices" where the originals

14   failed to suffice). Because the Court has already undertaken in camera review of the documents,

15   the Court is tempted by rule on the existing record. But as the Court in Wiener made clear, a

16   final ruling based on an "in camera review is appropriate only after 'the government has

17   submitted as detailed public affidavits and testimony as possible.'" Wiener, 943 F.2d at 979.

18   Here, the CIA "respectfully asks for this Court's leave to provide" further information to justify

19   its "FOIA Exemption assertions." (Reply at 12 n.14.) Given that the CIA believes it can provide

20   more specific information, the Court allows this further opportunity.

21        The Court therefore ORDERS Defendants to file a supplemental Vaughn index and any

22   additional supporting declarations they believe address the gaps identified in this Order.

23   Defendants should consider adding far more specificity in the Vaughn index, including

24

explanations tailored to each redacted portion of the documents presented, and greater specificity as to the documents withheld in full. Defendants should also consider providing more specific and clear explanations as to how the revelation of this dated information could be reasonably be expected to harm the national security today. Defendants must file the supplemental <u>Vaughn</u> index and supporting declarations within thirty days of entry of this Order. The Court further ORDERS Defendants to file a brief of no more than twelve pages explaining why the additional materials satisfy Defendants' burden as to Exemptions 1 and 3 and segregability. Defendants are encouraged to brief the question of whether the agencies may redact or withhold portions of documents that are not responsive to Plaintiff's FOIA requests. The brief must be filed within thirty days of entry of this Order. Plaintiff's opposition brief of no more than twelve pages shall be due fourteen days after Defendants file their brief. Defendants may then file a reply of no more than six pages due seven days after the deadline for Plaintiff's opposition. The Court will then rule on what records or portions thereof, if any, are properly withheld and what must be released.

## CONCLUSION

The Court has carefully reviewed Defendants' invocation of FOIA Exemptions 1 and 3 to withhold materials from portions of Documents 1-9, 14-15 and all of Documents 11-13. Except as to Document 1, the Court finds that Defendants have not met their burden to justify application of Exemptions 1 or 3 to withhold the information. And Defendants have not provided adequate detail to satisfy the Court that they have undertaken an adequate segregability analysis. The Court's <u>in camera</u> review confirms the inadequacies of the <u>Vaughn</u> index and supporting materials. But the Court finds that Defendants should be given one additional opportunity to address the Court's concerns. The Court will rule definitively on the FOIA claims after

1    Defendants supplement the record and the Parties complete their supplemental briefing as

2    specified in this Order.

3            The clerk is ordered to provide copies of this order to all counsel.

4            Dated November 4, 2022.

5

6                                                    Marsha J. Pechman
                                                     United States Senior District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ADDITIONAL ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 22