UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHELLE J. KINNUCAN,

Plaintiff,

v.

NATIONAL SECURITY AGENCY; CENTRAL INTELLIGENCE AGENCY; DEFENSE INTELLIGENCE AGENCY; and DEPARTMENT OF DEFENSE,

Defendants.

CASE NO. C20-1309 MJP

THIRD ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

The Court has previously issued two Orders on the Parties' Cross-Motions for Summary Judgment. (Dkt. Nos. 40, 48.) The Court issues this Order to resolve the Cross-Motions as to Plaintiff's Freedom of Information Act (FOIA) claims after having completed an in camera review of the documents at issue, as well as an in camera review of two ex parte declarations filed in support of a revised Vaughn index. (Dkt. No. 48.) Having completed this review, the Court GRANTS Defendants' Cross-Motion and DENIES Plaintiff's Cross-Motion as to her

FOIA claims. This resolves all pending claims in this action and the Court directs entry of judgment in Defendants' favor.

## BACKGROUND

Plaintiff Michelle Kinnucan is a researcher, writer, advocate, and veteran who is suing the National Security Agency (NSA), the Central Intelligence Agency (CIA), the Defense Intelligence Agency (DIA), and the Department of Defense (DOD) for violating her rights under FOIA, 5 U.S.C. § 552. Plaintiff seeks records relating to a 1967 attack by Israeli forces on a U.S. naval intelligence ship in international waters that left 34 dead and 173 wounded during the Six-Day War involving Israel, Egypt, Syria, Lebanon, and Iraq. (Amended Complaint ¶¶ 1–5 (Dkt. No. 17).) In response to Plaintiff's FOIA request, the CIA produced twelve redacted documents and identified three additional documents that it withheld in full. (See Declaration of Vanna Blaine (Dkt. No. 30).) The CIA claimed that the withheld information falls within Exemption 1 and 3 under FOIA. The NSA also claims that portions of one document are properly withheld under Exemptions 1 and 3. (See Declaration of Linda M. Kiyosaki (Dkt. No. 29).)

The Court issued an Order on the Parties' Cross-Motions for Summary Judgment. (Dkt. No. 40.) In that Order, the Court disposed of Plaintiff's claim as to a House Appropriations Report and her claim for declaratory relief. (Id.) But the Court reserved ruling on whether the CIA and NSA properly withheld or redacted information from fifteen documents consistent with FOIA. The Court ordered the documents be produced in camera, and, after lengthy delays related to obtaining the necessary security clearance for one the Court's law clerks, the Court completed its review. It then found that Defendants' Vaughn index lacked sufficient information to support the FOIA exemptions that Defendants asserted, and did not properly address the question of segregability. (Additional Order on Cross-Motions for Summary Judgment (Dkt. No. 48).) The

Court ordered Defendants to file a supplemental Vaughn index. (Id.) Defendants then filed a revised Vaughn index and further declassified portions of the records Plaintiff seeks. (Ex. A to the Supplemental Declaration of Vanna Blaine (Dkt. No. 59-1) (revised production of fourteen of the fifteen documents at issue); Ex. B. to the Supp. Blaine Decl. (Dkt. No. 59-2) (revised Vaughn index).) Notably, Defendants increased the Vaughn index from a mere four pages to one-hundred-fifty-nine pages, with individual entries for each individual redaction and document withheld in full. Out of the fifteen contested documents at issue, Defendants initially withheld three documents in full and produced redacted versions of the other twelve. With the submission of the revised Vaughn index, Defendants have now produced redacted versions of two of the documents withheld in full, leaving only one nine-page document withheld in full. (See Supp. Blaine Decl. Ex. A.)

The CIA and NSA also sought leave to submit two declarations that they claimed support the revised Vaughn index for ex parte, in camera inspection. (Motion for Leave (Dkt. No. 56.).) The declarations are intended to provide additional information that supports the CIA's and NSA's contention that they have properly withheld information and documents under FOIA's Exemption 1 and 3. (Id. at 2.) The Court granted the relief, noting that an in camera inspection would allow the Court to test the validity of Defendants' assertion regarding the adequacy of the revised Vaughn index. The Court noted, however, that "it may only rely on these ex parte declarations in resolving the underlying dispute in the exceptional case and only after the Court confirms that the publicly-filed Vaughn index and supporting declarations are as fulsome as possible." (Order on Motion for Leave at 3 (Dkt. No. 66) (quotation & citation omitted).)

The Court has since reviewed the declarations ex parte and in camera and issues this Order.

**ANALYSIS**

**A.    Legal Standards**

FOIA permits an agency to exempt records from disclosure on nine enumerated grounds. 5 U.S.C. § 552(b)(1)–(9). These exemptions reflect the recognition that legitimate governmental and private interests could be harmed by the release of certain types of information. Am. Civ. Liberties Union of N. Cal. v. U.S. Dep't of Just., 880 F.3d 473, 483 (9th Cir. 2018). But the exemptions are narrowly construed, and the agency has the burden of justifying withholding under any of them. Id. That is because "[g]overnment transparency is critical to maintaining a functional democratic polity, where the people have the information needed to check public corruption, hold government leaders accountable, and elect leaders who will carry out their preferred policies." Hamdan v. U.S. Dep't of Just., 797 F.3d 759, 769–70 (9th Cir. 2015).

The Court employs de novo review of agency compliance with FOIA. 5 U.S.C. § 552(a)(4)(B); Animal Legal Def. Fund v. U.S. Food & Drug Admin., 836 F.3d 987, 990 (9th Cir. 2016) (en banc). "The burden is on the agency to demonstrate, not the requester to disprove, that the materials sought are not agency records or have not been improperly withheld." See U.S. Dep't of Just. v. Tax Analysts, 492 U.S. 136, 143 n.3 (1989) (citation and quotation omitted). And ultimately the Court "has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B).

To ensure the FOIA exemptions have been properly asserted, the Court engages in a two-step review process. First the Court reviews whether the agency has given "an adequate factual basis" to support withholding under FOIA. Hamdan, 797 F.3d at 769. Second, the Court determines whether FOIA's exemptions correctly apply. Id. In making these determinations, the

Court may also review withheld records in camera. 5 U.S.C. § 552(a)(4)(B); see Am. Civ. Liberties, 880 F.3d at 485. But because in camera review "does not permit effective advocacy . . . [i]n camera review of the withheld documents by the court is not an acceptable substitute for an adequate Vaughn index." Wiener v. F.B.I., 943 F.2d 972, 979 (9th Cir. 1991).

A critical part of the Court's review is to determine whether the agency's "indices and supporting declarations constitute a sufficient Vaughn index. . . ." Hamdan, 797 F.3d at 769 (quoting Citizens Comm'n on Human Rights v. FDA, 45 F.3d 1325, 1328 (9th Cir. 1995)). "A Vaughn index is a submission that 'identif[ies] the documents withheld, the FOIA exemptions claimed, and [contains] a particularized explanation of why each document falls within the claimed exemption.'" Transgender L. Ctr. v. Immigr. & Customs Enf't, 46 F.4th 771, 781 (9th Cir. 2022) (quoting Lahr v. Nat'l Transp. Safety Bd., 569 F.3d 964, 989 (9th Cir. 2009) (internal citation omitted)). "Where the government invokes FOIA exemptions in cases involving national security issues, we are 'required to accord substantial weight to [the agency's] affidavits." Hamdan, 797 F.3d at 769 (quoting Hunt v. CIA, 981 F.2d 1116, 1119 (9th Cir. 1992) (quotation omitted)). "Those affidavits 'must describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemptions, and show that the justifications are not controverted by contrary evidence in the record or by evidence of [agency] bad faith.'" Id. (quoting Hunt, 981 F.2d at 1119). "Specificity is the defining requirement of the Vaughn index." Transgender L. Ctr., 46 F.4th at 781 (quoting Wiener v. FBI, 943 F.2d 972, 979 (9th Cir. 1991)). "For this reason, the agency 'may not respond with boilerplate or conclusory statements.'" Id. (quoting Shannahan v. IRS, 672 F.3d 1142, 1148 (9th Cir. 2012)). Rather the "agency must 'disclose[ ] as much information as possible without thwarting the [claimed] exemption's purpose." Id. at 782 (quoting Wiener, 943

F.2d at 979). "[T]he Government 'must bear in mind that the purpose of the index is not merely to inform the requester of the agency's conclusion that a particular document is exempt from disclosure . . . but to afford the requester an opportunity to intelligently advocate release of the withheld documents and to afford the court an opportunity to intelligently judge the contest.'" Id. at 782 (quoting Wiener, 943 F.2d at 979).

FOIA allows the Court to perform an in camera inspection of documents an agency has determined to withhold under the Act. 5 U.S.C. § 552(a)(4)(B). While FOIA does not expressly identify supporting affidavits, the Ninth Circuit has recognized that the Act allows for their review on an ex parte, in camera basis. See Lion Raisins v. U.S. Dep't of Agric., 354 F.3d 1072, 1083 (9th Cir. 2004) overruled on other grounds by Animal Legal Def., 836 F.3d 987. "[A] court may examine an agency declaration in camera and ex parte when release of the declaration would disclose the very information that the agency seeks to protect." Greyshock v. U.S. Coast Guard, 107 F.3d 16, 1997 WL 51514 at *3 (9th Cir. 1997) (unpublished) (citing Pollard v. F.B.I., 705 F.2d 1151, 1153-54 (9th Cir. 1983)). But "a district court may rely solely on ex parte affidavits 'only in the exceptional case'" and only after "the government has submitted as detailed public affidavits and testimony as possible." Lion Raisins, 354 F.3d at 1083 (quoting Doyle v. F.B.I., 722 F.2d 554, 556 (1983)).

FOIA also requires that any "reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). "It is reversible error for the district court to simply approve the withholding of an entire document without entering a finding on segregability, or the lack thereof, with respect to that document." Hamdan, 797 F.3d at 779. "This requirement dovetails with the principle that a district court errs when it grants summary judgment where the agency

'did not provide [plaintiff] or the district court with specific enough information to determine whether the [agency] had properly segregated and disclosed factual portions of those documents that the [agency] claimed were exempt under the deliberative process privilege.'" Transgender L. Ctr., 46 F.4th at 785–86 (quoting Pac. Fisheries, Inc. v. United States, 539 F.3d 1143, 1149 (9th Cir. 2008)).

**B. Defendants Have Properly Withheld Records Under FOIA**

The CIA and NSA have invoked FOIA Exemptions 1 and 3 (5 U.S.C. § 552(b)(1) and (b)(3), respectively) as the basis to redact portions of fourteen documents and to withhold one document in full that are responsive to Plaintiff's FOIA request.[1] (See Order on Cross-Motions at 13-17.) The CIA and NSA claim that certain records are exempt under Exemption 1 to protect "classified intelligence methods and sources" whose release is reasonably expected to harm national security. (See Supp. Blaine Decl. ¶¶ 4-12 and Ex. B (revised Vaughn index) (Dkt. No. 59); Supplemental Declaration of Linda M. Kiyosaki ¶¶ 11-23 (Dkt. No. 58).) The CIA claims that Exemption 3 applies to portions of each document that would reveal information that the CIA may not disclose by statute. (Supp. Blaine Decl. ¶ 13.) Similarly, the NSA maintains that Exemption 3 applies to portions of Document 8 because they detail the information about the Agency's intelligence activities, including its intelligence sources and methods, that cannot be disclosed by statute. (Supp. Kiyosaki Decl. ¶¶ 24-29.) And the CIA and NSA maintain that they have released all reasonably segregable, non-exempt information without applying any relevancy screen. (Supp. Blaine Decl. ¶ 14; Second Supplemental Declaration of Linda M. Kiyosaki ¶ 2

[1] The Court has already ruled that certain materials withheld under Section 552(b)(6)'s protections on personal information is acceptable, particularly given Plaintiff's failure to articulate any public-interest rationale for requiring the disclosure of names. (See Order on Cross-Motions at 18.)

(Dkt. No. 65).) Lastly, the CIA has confirmed that none of the documents is missing a page. (Second Supplemental Declaration of Vanna Blaine ¶¶ 1-4 (Dkt. No. 64).)

The Court first reviews Exemption 3 and then turns to Exemption 1.

**1.    Exemption 3**

The CIA and NSA invoke Exemption 3 to protect the information at issue from disclosure. "There is a two-step inquiry in deciding Exemption 3 questions." Hamdan, 797 F.3d at 776. "We ask first whether the statute identified by the agency is a statute of exemption within the meaning of Exemption 3, and then whether the withheld records satisfy the criteria of the exemption statute." Id. (citation omitted).

**2.    The Two-Step Standard**

As to the first step, the CIA and NSA identify three statutory bases for the exemption: (1) Section 6 of the National Security Agency Act of 1959, 50 U.S.C. § 3605 (NSA Act of 1959); (2) Section 102(A)(i) of the National Security Act of 1947, as amended, 50 U.S.C. § 3024 (NSA Act of 1947); and (3) Section 6 of the Central Intelligence Agency Act of 1949, as amended, 50 U.S.C. § 3507 (CIA Act of 1949). (Blaine Decl. ¶ 47 (Dkt. No. 30); Supp. Blaine Decl. ¶ 13 (Dkt. No. 59); Kiyosaki Decl. ¶¶ 40-41 (Dkt. No. 29); Supp. Kiyosaki Decl. ¶¶ 26-27 (Dkt. No. 58).) These statutes require the CIA and the NSA to protect certain kinds of information. First, the NSA Act of 1947 and the CIA Act of 1949 require the Director of National Intelligence (DNI) to "protect intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 3024(i)(1); 50 U.S.C. § 3507. Second, the NSA Act of 1959 exempts the NSA from disclosing "the organization or any function of the National Security Agency, or any information with respect to the activities thereof, or of the names, titles, salaries, or number of the persons employed by such agency." 50 U.S.C. § 3605(a). The NSA's declarant asserts that NSA's

intelligence capabilities, signals intelligence, and intelligence techniques all relate to the "activities" of the NSA and fall within 50 U.S.C. § 3605. (Kiyosaki Decl. ¶¶ 39-40 (Dkt. No. 29); Supp. Kiyosaki Decl. ¶ 29 (Dkt. No. 58).) And the CIA's declarant explains that the use of code words, pseudonyms, classification and dissemination control markings are intelligence methods often used to protect intelligence sources. (Blaine Decl. ¶¶ 50, 53 (Dkt. No. 30); Supp. Blaine Decl. ¶ 13 (Dkt. No. 59).)

As to the second step, the National Security Act of 1947 "provides the Director [of National Intelligence] with 'very broad authority to protect all sources of intelligence information from disclosure.'" Berman v. C.I.A., 501 F.3d 1136, 1140 (9th Cir. 2007) (quoting C.I.A. v. Sims, 471 U.S. 159, 168–69 (1985)). "Because of this 'sweeping power,' courts are required to give 'great deference' to the CIA's assertion that a particular disclosure could reveal intelligence sources or methods." Id. (quoting Sims, 471 U.S. at 169, 179). "The term 'sources' is to be broadly construed and encompasses not only 'secret agents,' but instead reaches all sources of information the CIA relies upon, including publicly available information." Id. (quoting Sims, 471 U.S. at 170–71). "A foreign government can learn a great deal about the Agency's activities by knowing the public sources of information that interest the Agency." Sims, 471 U.S. at 176-77. Moreover, "superficially innocuous information . . . might enable an observer to discover the identity of an intelligence source" by piecing it together with other information. Id. at 178. The Ninth Circuit has acknowledged that "there exists 'a near-blanket FOIA exemption' for CIA records" and that "Sims leaves courts 'only a short step from exempting all CIA records from FOIA.'" Id. (quoting Hunt, 981 F.2d at 1120 (internal quotation marks and alteration omitted)).

**3. Two-Step Analysis**

It is undisputed that the agencies have satisfied the first step of the analysis. The Court therefore analyzes only the second step, which focuses on whether the Vaughn index and supporting affidavits "'describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemptions, and show that the justifications are not controverted by contrary evidence in the record or by evidence of [agency] bad faith.'" Hamdan, 797 F.3d at 769 (quoting Hunt, 981 F.2d at 1119). In performing this analysis, the Court is "required to give 'great deference' to the CIA's assertion that a particular disclosure could reveal intelligence sources or methods." Berman, 501 F.3d at 1140 (quoting Sims, 471 U.S. at 168–69).

The Court finds that Defendants have satisfied their burden as to all of the withheld information. Unlike the first Vaughn index, the revised Vaughn index provides a redaction-by-redaction analysis of each document produced in part. The Vaughn index is detailed as to each redaction and it provides a basis to conclude that the information falls within the exemption. While the entries are repeated, the Court finds no reason to reject them on this basis. Given the number of redactions, the nature of the documents, and length of the index, it is unsurprising that the portions of the records are withheld on the same basis. More importantly, the index now affords Plaintiff sufficient grounds to understand the basis for the decision to withhold the information. Applying the "great deference" the Court owes to the assertions Defendants make that the withheld information concerns CIA and NSA sources and methods or information relating to the intelligence activities of the NSA, the Court finds that the Vaughn index adequately supports the application of Exemption 3 to all of the redacted information. See " Berman, 501 F.3d at 1140.

Though a closer question, the Court also finds that Defendants have properly withheld one document in full. As to this a nine page document (Document 13), the revised Vaughn index states that Exemption 3 was "asserted to protect intelligence methods and sources, and controlled access markings" and "organizational information of Agency personnel." (Revised Vaughn index at 156 (Dkt. No. 59-2 at 157).) The Court finds this representation both logical and plausible. Applying the "great deference" due, the Court finds that Defendants have properly invoked Exemption 3 to withhold Document 13. See Berman v. C.I.A., 501 F.3d at 1140

**4.    Segregability**

The Court further finds that the CIA and NSA have adequately justified their assertion that they have segregated the non-exempt portions of these records.

With regard to segregability, "[a] district court must take seriously its role as a check on agency discretion, but this does not require a page-by-page review of an agency's work." Hamdan, 797 F.3d at 779. "Agency affidavits that are sufficiently detailed are presumed to be made in good faith and may be taken at face value." Id.

The Court finds that the CIA's and NSA's segregability assertion are adequate. Although the Court earlier faulted the CIA for its boilerplate assertions, it now finds that it has adequately described how it segregated non-exempt information. The Court forms this opinion in light of the CIA's determination to re-process the records and release more information. (See Supp. Blaine Decl. ¶ 14 ("For each of the documents that the CIA has reprocessed and re-released, the CIA conducted a line-by-line review and released all reasonably segregable, non-exempt information.").) Additionally, the CIA has provided a far more robust Vaughn index that has helped assure the Court that it has performed a diligent segregation and now withheld only nine pages in full. Additionally, the NSA submitted a declaration attesting to its segregation activities,

and the Court finds the NSA's segregation efforts sufficient. (See Second Supp. Kiyosaki Decl. ¶ 2 (Dkt. No. 65).) The Court notes that this information was untimely filed with a reply brief, but accepts the substance of the declaration. The Court finds that the CIA and NSA have met their burden as to segregability.

* * *

The Court finds that the CIA and NSA have met their burden to demonstrate that all of the information they have redacted and withheld falls within Exemption 3 and that they have adequately segregated the non-exempt information. On this basis, the Court GRANTS Defendants' Cross-Motion for Summary Judgment and DENIES Plaintiff's Cross-Motion for Summary Judgment on Plaintiff's FOIA Claims. This serves as an independent basis for entry of summary judgment in Defendants' favor that it is dispositive of all of Plaintiff's FOIA claims. The Court will nevertheless analyze Defendants' invocation of Exemption 1.

**C. Exemption 1**

Independent of Exemption 3, the Court also finds that Defendants have adequately invoked Exemption 1 to withhold materials under FOIA. The Court first reviews the legal standard before analyzing whether the new materials Defendants submit satisfy the standards.

**1. Legal Standard**

Under Exemption 1, an agency does not have to disclose information that is:

> (1)(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order.

5 U.S.C. § 552(b)(1). As the Court previously explained, "[t]he issue here is whether the information withheld remains 'in fact properly classified.'" (Order on Cross-Motions at 13 (quoting 5 U.S.C. § 552(b)(1)(B)) (Dkt. No. 40).) The CIA and NSA have asserted that the

documents and information are correctly withheld as being classified under Executive Order 13526 because disclosure could reasonably be expected to cause damage to national security. (Blaine Decl. ¶ 37 (Dkt. No. 29); Supp. Blaine Decl. ¶¶ 4-12; Supp. Kiyosaki Decl. ¶¶ 11-23 (Dkt. No. 58).) For classification to be proper under E.O. 13526, two elements are required: (1) disclosure must reasonably be expected to result in damage to national security and (2) "the original classification authority is able to identify or describe the damage." Exec. Order 13526 § 1.2(a).

When an agency invokes Exemption 1 as to intelligence sources and methods, it "must provide the court and the FOIA requester with information sufficient to determine whether the source was truly a confidential one and why disclosure of the withheld information would lead to exposure of the source." Wiener, 943 F.2d at 980. "To justify an Exemption 1 claim, the Vaughn index must provide (to the extent permitted by national security needs) sufficient information to enable the requester to contest the withholding agency's conclusion that disclosure will result in damage to the nation's security." Id. Conditional and boilerplate assertions are insufficient because they lack adequate specificity to permit the requester a fair opportunity to challenge the agency's conclusion. See id. at 979. In Wiener, for example, the court held that the Vaughn "index fail[ed] to tie the FBI's general concern about disclosure of confidential sources to the facts of this case." Id. at 981 (concerning information that was over 20 years old). But "[u]ltimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." Hamdan, 797 F.3d at 774 (citation and quotation omitted). And the Court must "give considerable deference to agency affidavits made in apparent good faith where the affidavits reasonably describe the justifications for nondisclosure and show that the content withheld falls within one of FOIA's exemptions." Id. at 772.

After the Court conducted its initial in camera review of the documents, the Court concluded that the Defendants failed to explain why the redacted or withheld information qualified for classification and what the harm would be upon release. (See Additional Order on Summary Judgment (Dkt. No. 48).) The NSA and CIA revised the Vaughn index and supplemented their supporting declarations. (See Dkt. Nos. 58 and 59.) The Court has also reviewed ex parte declarations prepared by the CIA (Vanna Blaine) and NSA (Linda M. Kiyosaki) the complement their publicly-filed declarations and the Vaughn index.

**2.     Analysis**

First, the Court finds that Defendants have provided sufficient support to support their assertion that all of the withheld information falls within Exemption 1. While some redactions are lengthy, the revised Vaughn index does a satisfactory job of explaining the contents of the redactions and the reasons why the information fits within the Exemption. The Court also finds that Defendants have adequately identified a valid basis to withhold one document in the full (Document 13). The Vaughn index sufficiently explains the reasons for its full classification:

> Exemption (b)(1) was asserted to protect classified intelligence methods and sources, including, but not limited to, locations of Agency stations or bases. The information contained in this document consists of references to classified intelligence methods or sources, information obtained from a classified intelligence methods or sources, the targets of classified intelligence methods, and/or the locations of covert CIA stations or bases. The withheld information, if released, would reveal those classified topics, which could reasonably be expected to result in damage to national security.

(Vaughn Index at 156 (Dkt. No. 59-2 at 157).) Given that the document is only nine pages, this explanation is sufficiently detailed to identify how it falls within Exemption 1. The claim is both logical and reasonable.

Second, the Court finds that the public declarations alone do not adequately identify how the release of the dated information may cause harm to the national security. The CIA's declarant

has provided high-level commentary on how dated materials about intelligence sources and methods can still damage present-day national security interest. (Supp. Blaine Decl. ¶¶ 7-12 (Dkt. No. 59).) The declarant also states that if the CIA discloses its intelligence gathering methods from 1967, the adversary could then use that information to identify what the CIA would have also had access to, and this could damage national security. (See id. ¶ 10.) The NSA's declarant adds little new to her existing declarations as to the harm to national security. (See Kiyosaki Decl. ¶¶ 35-36 (Dkt. No. 29); Supp. Kiyosaki Decl. ¶¶ 11-23 (Dkt. No. 58).) Even with this additional detail, the Court finds that the CIA's and NSA's declarants fail to link specific materials that have been withheld to any specific kind of harm. The declarations do not articulate in detail how knowledge of the CIA's and NSA's intelligence operations and capabilities from 60 years ago will harm present national security interests. This is inadequate, even applying the considerable deference owed. See Hamdan, 797 F.3d at 772.

      Notwithstanding the gaps in the publicly-filed declarations, the Court finds that the additional, ex parte declarations from the CIA and NSA justify the assertion of harm to the national security. Through the declarations, both the CIA and NSA provide greater detail and explain how the dated material contained in the documents could harm present-day national security interests if released. The declarations answer the question of how the release of dated information about the CIA's and NSA's intelligence operations and capabilities could harm national security. The ex parte declarations help fill the gap as to the rationale that the publicly-filed declarations express in only high-level terms. Applying the "considerable deference" owed, the Court finds that the CIA and NSA have provided sufficient justification through both the publicly-filed and ex parte declarations and the revised Vaughn index that justify the invocation of Exemption 1. Hamdan, 797 F.3d at 772. The Court reaches this conclusion with full

knowledge that it may rely on these "ex parte affidavits 'only in the exceptional case.'" Lion Raisins, 354 F.3d at 1083 (quoting Doyle, 722 F.2d at 556). This is an exceptional case. The detailed justifications and explanations contained in the ex parte declarations are identified as classified information that cannot be filed publicly without "disclos[ing] the very information that the agency seeks to protect." Greyshock, 107 F.3d 16, 1997 WL 51514 at *3. Moreover, "the government has submitted as detailed public affidavits and testimony as possible." Lion Raisins, 354 F.3d at 1083 (quoting Doyle v. F.B.I., 722 F.2d 554, 556 (1983)). Based on this blended record, the Court finds that Defendants have properly withheld the information under FOIA Exemption 1.

**3. Segregability**

The Court further finds that the CIA and NSA have adequately justified their assertion that they have segregated the non-exempt portions of these records. The Court's same reasoning set forth in Section B(3) applies and the Court finds this requirement satisfied.

* * *

The Court finds that the CIA and NSA have properly invoked Exemption 1 as to all of the redacted and withheld information. On this independent and alternative basis, the Court GRANTS Defendants' Cross-Motion for Summary Judgment and DENIES Plaintiff's Cross-Motion for Summary Judgment as to the FOIA claims.

**D. Automatic Declassification**

Plaintiff has additionally challenged whether the documents at issue are subject to automatic declassification because they are over twenty-five years old. Defendants have sufficiently complied with the requirements to preserve the classification of the records, and the Court rejects Plaintiff's argument.

Executive Order 13256 (77 F.R. 707) provides that records over twenty-five-years old are subject to automatic declassification. E.O. 13256 § 3.3(a). But there are exceptions. See id. 3.3(b). In relevant part, the Executive Order states that:

> [a]n agency head may exempt from automatic declassification . . . specific information, the release of which should clearly and demonstrably be expected to:
> (1) reveal the identity of a confidential human source, a human intelligence source, a relationship with an intelligence or security service of a foreign government or international organization, or a nonhuman intelligence source; or impair the effectiveness of an intelligence method currently in use, available for use, or under development; [or] . . .
> (3) reveal information that would impair U.S. cryptologic systems or activities;

E.O. 13256 § 3.3(b). The Executive Order then specifies that the "agency head shall notify the [Interagency Security Classification Appeals] Panel of any specific file series of records for which a review or assessment has determined that the information within that file series almost invariably falls within one or more of the exemption categories listed in paragraph (b) of this section and that the agency proposes to exempt from automatic declassification at 25 years." E.O. 13256(c)(1). The Panel has the authority to direct the agency not to exempt materials from disclosure or to extend the classification. But the Executive Order says nothing about what happens if the agency head fails to provide notice or what "file series of records" means.

The CIA and NSA declarants provide ample evidence that they have identified all of the redacted or withheld information as fitting within the two grounds noted above for an exception to automatic declassification. Plaintiff argues that the declarations are untethered to the specific documents. But when read with the revised Vaughn index, each supplemental declaration provides a basis for the refusal to declassify. (Supp. Blaine Decl. ¶¶ 5-6 (Dkt. No. 59); Supp. Kiyosaki Decl. ¶¶ 11-23 (Dkt. No. 48).) While the NSA declarant provides a more specific and robust explanation of the declassification exemption process, both declarants provide sufficiently detailed information to satisfy the Executive Order. And both declarants have been delegated

authority from their relevant "agency head" to make this determination. The Court therefore disagrees with Plaintiff that neither entity has satisfied the Executive Order process to exempt the records from automatic declassification.

The Court notes, however, that neither declarant have affirmatively stated whether they provide notice to the "Panel" about their determinations. This may be because the records are not a "specific file series of records" or that they have not made a determination "that the information within the file series almost invariable falls within" the exceptions to declassification. Even if the notice requirement has been violated, the Court finds nothing in the Executive Order that would compel a finding that the materials must therefore be declassified. At most, the agency's failure to provide notice to the Panel has deprived the Panel from weighing in on whether to declassify or extend the classification of these records. There is no provision in the Executive Orders suggesting that the remedy for failing to provide notice to the Panel is to compel declassification. And Plaintiff has not asked the Court to require the Panel to review the records at issue for possible declassification. The Court therefore concludes that the failure to provide notice to the Panel is harmless and rejects Plaintiff's argument that the records here are subject to automatic declassification.

## CONCLUSION

The case has presented many complex legal issues on a topic of historical interest to the litigants and the public. By litigating her FOIA claims, Plaintiff has obtained a substantial production of documents concerning the attack on the U.S.S. Liberty. She forced the agencies to reprocess and increase the release of the records and produce a detailed Vaughn index cataloging those records that are properly withheld under FOIA exemptions. In this regard, Plaintiff has prevailed on much of the substance of her FOIA claims. But based on the record before it, the

Court concludes that the CIA and NSA have properly withheld the remaining information and single document under Exemptions 1 and 3. Each exemption provides an independent basis on which to grant summary judgment in Defendants' favor. Accordingly, the Court GRANTS the Defendants' Cross-Motion for Summary Judgment and DENIES Plaintiff's Cross-Motion for Summary Judgment on Plaintiff's FOIA claims. This resolves this matter and judgment shall be entered separately.

The clerk is ordered to provide copies of this order to all counsel.

Dated July 31, 2023.

Marsha J. Pechman
United States Senior District Judge