The Honorable Marsha J. Pechman

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

MICHELLE J. KINNUCAN,                          CASE NO. 2:20-cv-01309-MJP

10
                          Plaintiff,            NATIONAL SECURITY AGENCY'S
11                                              MOTION FOR SUMMARY
                                                JUDGMENT
          v.
12                                              NOTED FOR CONSIDERATION:
    NATIONAL SECURITY AGENCY, *et al.*,         OCTOBER 11, 2024
13
                          Defendants.
14

15

16

17

18

19

20

21

22

23

24

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## I.      INTRODUCTION

Plaintiff Michelle Kinnucan seeks access to a report authored by the staff of the House Appropriations Committee that examines communications failures leading up to a 1967 attack on a United States intelligence vessel and the general effectiveness of Department of Defense communications systems at that time (HAC report). She has no right to compel the committee itself to produce the report because Congress has exempted itself from the Freedom of Information Act (FOIA). So instead, she has sued an agency that Congress oversees, the National Security Agency (NSA), to try to get a copy of the congressional report from it.

But the HAC report is not NSA's record to release. A banner on the report warns in all capital letters that the report is "NOT FOR RELEASE UNLESS AND UNTIL AUTHORIZED BY COMMITTEE." Because the Appropriations Committee has reserved for itself the authority to control public disclosure of the report, the document cannot be an agency record under FOIA.

This Court previously found the banner determinative of congressional intent to control public access to the HAC report, and it should do so again following NSA's voluntary remand. The banner remains the best evidence of congressional intent to control the HAC report. NSA sought remand in light of additional information identified during the course of appeal. While the information ultimately does not change NSA's position on ownership of the HAC report, in light of an agency's duty to present as complete and public a record as possible for counsel and the deciding judge, NSA determined to present it to this Court first so it could render its decision on a more complete record.

## II.     FACTUAL BACKGROUND

Following previous rounds of motions practice, the remaining disputed issue in this litigation is whether the HAC report is a congressional record, which is not subject to FOIA. *See*

NSA'S MOTION FOR SUMMARY JUDGMENT
No. 2:20-cv-01309-MJP - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Dkt. 83.[1] Kinnucan is researcher, journalist, and honorary member of the U.S.S. *Liberty* Veterans Association. *See* Dkt. 18 ¶ 5. She has submitted multiple FOIA requests to government agencies seeking the release of documents concerning the June 1967 attack on the U.S.S. *Liberty* that wounded and killed many U.S. servicemembers. Kinnucan alleges that "[o]n June 8, 1967, the U.S.S. *Liberty* was attacked by Israeli air and naval forces while operating in support of the NSA in international waters," and that she seeks information regarding "whether a U.S. ally knowingly attacked a U.S. vessel." Dkt. 18 ¶¶ 15, 5.

## A. FOIA Request 106371

At issue here, on February 18, 2019, Kinnucan submitted a FOIA request to NSA seeking specific pages of "A Report to the Committee on Appropriations – U.S. House of Representatives on the Effectiveness of the Worldwide Communications Systems and Networks of the DoD, U.S.S. Liberty Incident." Declaration of Adam DeMillio (DeMillio Decl.) ¶ 13, Ex. B. NSA sought clarification concerning the scope of her request and assigned it FOIA request 106371. *Id.* In response, Kinnucan amended her request to seek both volumes of the HAC report, and not an NSA report discussing it:

> I am formally amending FOIA Request 106371 to request both volumes I and II of "A Report to the Committee on Appropriations – U.S. House of Representatives on the Effectiveness of the Worldwide Communications Systems and Networks of the DoD, U.S.S. Liberty Incident."
>
> According to a partially declassified 1981 NSA report entitled "Attack on a Sigint Collector, the U.S.S. Liberty" . . . the NSA's copy of this Congressional report is "located in the 'Crisis Collection' of the NSA History Collection". I am not, at this time, requesting a copy of the NSA report "Attack on a Sigint Collector, the U.S.S. Liberty."

---

[1] Given this Court's knowledge of the procedural history, NSA will limit its discussion to the remaining issue in this litigation, *i.e.*, whether the HAC report is a congressional record. Plaintiff's claims concerning other FOIA requests to NSA, DIA, and CIA have been resolved through settlement and summary judgment. *See* Dkts. 26, 68, 78. There are no FOIA requests to DoD alleged in the operative complaint.

1   *Id.*, Ex. B.

2   The 1981 report referenced in Kinnucan's request, *Attack on a Sigint Collector, the U.S.S.*

3   Liberty, was prepared by two retired NSA researchers and is publicly available. *See* William D.

4   Gerhard & Henry W. Millington, National Security Agency/Central Security Service, *Attack on a*

5   *Sigint Collector, the U.S.S.* Liberty, in *Special Series Crisis Collection vol. 1* (1981), available at

6   https://www.nsa.gov/portals/75/documents/news-features/declassified-documents/uss-

7   liberty/chronology-events/attack-sigint.pdf (last visited August 13, 2024). This work indicates that

8   the *Liberty* was an "intelligence ship" engaged in the collection of signals intelligence (SIGINT)

9   information and was positioned in the eastern Mediterranean Sea during the Six Day War. *Id.* at

10  1-5. It reports that after a congressional hearing on communications failures preceding the attack,

11  "the House Appropriations Committee on 14 August 1967 directed its Surveys and Investigations

12  staff to examine the effectiveness of the DoD worldwide communications system." *Id.* at 59.

13  Committee staff issued a two-volume report: "Volume I reviewed the communications problems

14  in the *Liberty* incident, volume II the worldwide communications systems and networks of the

15  DoD." *Id.* The NSA researchers cite the HAC report as a source for their work. *Id.* at 60.

16  The existence of the HAC report is not a secret nor classified, but Congress decided not to

17  publicly release the full report after it was issued. Indeed, the report's existence, certain

18  conclusions, and its non-disclosure were discussed at a 1968 congressional hearing. *See*

19  Department of Defense Appropriations for 1969: Hearings Before a Subcommittee of the

20  H. Comm. on Appropriations, 90th Cong. 357-58, 393-99 (Apr. 8, 1968) (hereinafter "1968

21  Hearing"). So far as NSA knows, the HAC report has never been publicly released and remains

22  under the control of Congress, who is exempt from FOIA. *See* DeMillio Decl., ¶¶ 25-27. It is not

23  clear if Kinnucan has requested a copy of the HAC report directly from Congress or the

24

NSA'S MOTION FOR SUMMARY JUDGMENT
No. 2:20-cv-01309-MJP - 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    Appropriations Committee, and if so, how they may have responded.

2        NSA has a copy of the report, which it obtained in May 1968, bearing a banner directing

3    that the report is "NOT FOR RELEASE UNLESS AND UNTIL AUTHORIZED BY

4    COMMITTEE." DeMillio Decl., ¶ 24. So, in response to Kinnucan's FOIA request, on April 19,

5    2021, NSA denied the request on the ground that volumes I and II of the HAC report belonged to

6    Congress and "are not agency records subject to the FOIA." *Id*. at ¶ 15, Ex. D. NSA further

7    indicated that, as a courtesy, in November 2020 NSA contacted the congressional committee to

8    determine whether Congress would consent to the agency processing the HAC report under FOIA,

9    but it had not received a response after several months. *Id*., Ex. D.

10        **B.  Prior Summary Judgment Cross-Motions**

11        Kinnucan challenged NSA's denial through summary judgment cross-motions practice.

12    NSA explained the basis for its determination that the HAC report is a congressional record in two

13    declarations. *See* Dkts. 28, 37. NSA described that it construed the request "[o]n its face" to "see[k]

14    records that were prepared by the staff of the Committee on Appropriations of the U.S. House of

15    Representatives," and indicated that NSA "received clear indications from Congress regarding its

16    intent to exercise control over the report in question." Dkt. 28 ¶¶ 7-8. NSA identified that the report

17    "bears a 'TOP SECRET' classification marking" and is also "stamped with a banner that states

18    'NOT FOR RELEASE UNLESS AND UNTIL AUTHORIZED BY COMMITTEE.'" *Id*. at ¶ 10.

19    NSA indicated that these markings would have been made by the committee staff "as the preparer

20    of the report" as there is no evidence that they were added by the NSA after it obtained the report.

21    Dkt. 37 ¶ 11.

22        NSA's FOIA office further indicated that it was not aware of any "contrary direction" from

23    Congress indicating an intent to relinquish control of the HAC report or consent to public release.

24

NSA'S MOTION FOR SUMMARY JUDGMENT
No. 2:20-cv-01309-MJP - 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

*Id.* at ¶ 15. Rather, the FOIA declarants described that in 2008 another FOIA requester sought release of the same report, and after NSA's "Legislative Affairs Office contacted the House Appropriations Committee to determine whether the report could be released," the "Legislative Affairs Office received a phone call from a staff member of the House Appropriations Committee who informed the Agency that the report could not be released." Dkt. 28 ¶ 12. Throughout motions practice, NSA did not receive a response from the congressional committee following its November 2020 inquiry regarding Kinnucan's FOIA request. Dkt. 38 ¶ 7.

This Court granted NSA's request for summary judgment. *See* Dkt. 40. First, it followed the D.C. Circuit's framework for analyzing whether the HAC report was a congressional or agency record and considered whether Congress "intended to maintain control over the report as a congressional record even after giving a copy to the NSA." *Id.* at 7-8. It noted that "neither the Supreme Court nor the Ninth Circuit has established a standard to address the constitutional considerations at play when an agency is in possession of a congressional record," including Congress' interest in exercising oversight of Executive Branch agencies and being able to keep "certain records secret" when it so chooses. *Id.* at 7. This Court found that the D.C. Circuit's approach was "consistent with the Ninth Circuit's guidance to take a fact-driven approach to determining whether an agency controls a particular record such that it is subject to FOIA." *Id.* at 8.

Applying that framework, this Court held that "[t]he 'not for release' marking is an unequivocal expression of Congress's intent to maintain control over the report." Dkt. 40 at 11. It concluded that Kinnucan's "dispute[] that the report remains 'Top Secret,' was "not material" because "the marking that the report cannot be released without Committee approval, the connection to Congress's oversight role, and the substance of the report—are sufficient to establish

NSA'S MOTION FOR SUMMARY JUDGMENT
No. 2:20-cv-01309-MJP - 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    the report as a congressional record." *Id.* at 10-11.

2                    **C.  Appeal, Voluntary Remand, and NSA's Re-processed Response**

3            Kinnucan appealed this Court's ruling that the HAC report was not an agency record. *See*

4    Dkt. 73. During the course of appeal, government counsel discovered additional information in

5    NSA's possession that was not presented below and that was potentially responsive to Kinnucan's

6    FOIA request or otherwise could bear on the question of congressional intent to control the HAC

7    report. *See* Dkts. 23.1, 25.1, *Kinnucan v. NSA*, 23-2500 (9th Cir.). Given the information imbalance

8    inherent in FOIA litigation and considering an agency's duty to create a complete public record,

9    whether or not the additional information changed NSA's ultimate position on the HAC report,

10   NSA notified the Ninth Circuit and sought voluntary remand in order to allow this Court to render

11   its decision on a more complete record. *Id.*

12           Following remand, NSA reprocessed its response to FOIA request 106371 and issued a

13   new decision on June 28, 2024. DeMillio Decl., ¶¶ 19-35, Ex. A. In its new decision letter NSA

14   continued to determine that "the documents [Kinnucan] requested, Volumes I and II of the House

15   Appropriations (HAC) report, are not agency records subject to FOIA, as the records in question

16   were both created by and controlled by the U.S. House of Representatives." The letter explained

17   that NSA continues to rely on the fact that the records are "clearly marked 'NOT FOR RELEASE

18   UNLESS AND UNTIL AUTHORIZED BY COMMITTEE.'" *Id.*, Ex. A. NSA ultimately

19   determined that the additional NSA records it reviewed were not responsive to Kinnucan's request

20   for the specific HAC report. *Id.* But some of the additional information it considered could bear

21   on the question of congressional intent to control the HAC report or whether it was an agency

22   record, so NSA made a discretionary release to provide such information to Kinnucan. *Id.*

23           Through its reprocessed response, NSA released an internal routing slip and memorandum.

24

1    DeMillio Decl., ¶¶ 28-30, Ex. A. These documents are internal NSA records, and they reference

2    NSA's possession and review of the HAC report:

3        The attached is a purloined copy of the House Appropriations Committee report of
         the effectiveness of DoD communications triggered by the LIBERTY incident.

4
         Volume I is of interest, albeit historical, and limits itself to communications in
5        support of the LIBERTY operation. Clipped items may be of interest to you.

6        Volume II is a treatise of DoD communications in general and contains a good
         summary (pp. i-xix). We recommend you read only this portion at your leisure.

7    Id., Ex. A.

8
         NSA also identified that its copy of the HAC report contains some handwritten notes.

9    DeMillio Decl., ¶¶ 31-33, Ex. A. NSA determined that the notes, which it understands were made

10   by someone at NSA, are not responsive. Id.[2] But NSA identified and described those notes that it

11   concluded may bear of the question of whether the HAC report is a congressional record. NSA

12   indicated that "[i]n handwritten print across the cover pages of both Volume I and Volume II a

13   note says 'Not releasable' 'Information appeared in the press on 8 [July] '68." Id. at ¶ 32, Ex. A.

14       NSA also confirmed that both volumes of the HAC report are marked "Top Secret," and

15   indicated that "[a] memorandum page in both volumes further contains a statement that 'This

16   report is classified TOP SECRET because it contains information, so classified by the Department

17   of Defense relating to matters involving national security of the United States." DeMillio Decl.,

18   ¶¶ 34-35, Ex. A. NSA has treated and continues to treat the HAC report as classified TOP

19   SECRET, including limiting its distribution and other specialized protections. Id. at ¶ 34. NSA

20   clarifies, however, that it does not rely on the TOP SECRET classification stamp as an indication

21   of congressional intent as to ownership, but rather classification. Id. at ¶¶ 34-35. Whether or not

22

23   _____

24   [2] Should this Court request to review the notes or the HAC report, NSA will coordinate with the Department of Justice
     (DOJ) Classified Information Security Officer (CISO) CISCO to facilitate a secure in camera review.

1   the HAC report contains information classified by the Executive Branch is a distinct question from

2   whether it is a congressional record. One does not determine the other.[3]

3         Finally, NSA indicated that as part of its reprocessing, NSA "conducted additional searches

4   for the purpose of determining whether any additional records could be located that would shed

5   light on the question of whether the HAC report is a congressional record or an agency record and

6   no additional records were found." DeMillio Decl., ¶¶ 21, 27, Ex. A.

7         In July 2024, NSA's Legislative Affairs Office also reached out again to the Appropriations

8   Committee to request the committee's position on releasing the HAC report. DeMillio Decl. ¶ 26.

9   A committee staff member indicated via email that "I think the subject matter of the report would

10  continue to fall under the [HAC defense subcommittee] jurisdiction. To my knowledge there is no

11  change in the Committee's policy regarding this matter, but let me know if you need anything

12  additional to that effect." *Id*.

13        Following review of the NSA's reprocessed response, the parties had the opportunity to

14  confer and then filed a joint status report identifying the remaining disputed issue, whether or not

15  the HAC report is a congressional record, and proposed a cross-motion briefing schedule for

16  resolution of this issue.

17            **III.   ARGUMENT**

18        **A.  Summary Judgment in a FOIA Case**

19        "Summary judgment is the procedural vehicle by which nearly all FOIA cases are

20  resolved." *Sea Shepherd Legal v. NOAA*, No. C19-0463JLR, 2021 WL 351362, at *3 (W.D. Wash.

21  Feb. 2, 2021) (quotation omitted). Summary judgment is appropriate when there is no genuine

22  issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id*.;

23  _____

24  [3] Should this Court determine that the HAC report is not a congressional record, NSA would process it under FOIA including, inter alia, having an NSA original classification authority review it for consideration of FOIA Exemption 1.

NSA'S MOTION FOR SUMMARY JUDGMENT
No. 2:20-cv-01309-MJP - 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

*see also* Fed. R. Civ. P. 56. An issue is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if the fact may affect the outcome of the case. *See id.* at 248. A district court reviews questions under FOIA, based on the administrative record, using a *de novo* standard of review.  5 U.S.C. § 552(a)(4)(B).

FOIA authorizes federal courts "to order the production of any agency records improperly withheld from the complainant."  5 U.S.C. § 552(a)(4)(B). Under this provision, the availability of judicial relief "is dependent upon a showing that an agency has (1) 'improperly'; (2) 'withheld'; (3) 'agency records.'" *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980). "The burden is on the agency to demonstrate, not the requester to disprove," that one of these criteria is not satisfied. *Department of Justice v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989).

The central question here is whether the HAC report is a congressional record or an NSA record. FOIA does not define "agency records," but it does define "agency" and that definition specifically excludes Congress.  5 U.S.C. § 551(1)(A); *see id.* § 552(f)(1). "Because Congress is not an agency, congressional documents are not subject to FOIA's disclosure requirement." *United We Stand Am., Inc. v. IRS*, 359 F.3d 595, 597 (D.C. Cir. 2004); *see also Cox v. DOJ*, No. 22-1202, 2024 WL 3642871, at *1 (2d Cir. Aug. 5, 2024) ("Records belonging to entities not covered by FOIA, such as the United States Congress, are not 'agency records' and therefore are not subject to FOIA disclosure requirements").

The Ninth Circuit "reject[s] a categorical rule," that any record physically located at an agency is an agency record. *Rojas v. FAA*, 941 F.3d 392, 407 (9th Cir. 2019). Rather, the Ninth Circuit holds that whether an agency is in "control" of a document such that it has become an "agency record" subject to FOIA requires a "complex analysis," in which a court may consider a

NSA'S MOTION FOR SUMMARY JUDGMENT
No. 2:20-cv-01309-MJP - 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

"range of evidence." *Id*. at 407, 409. In cases like this, involving documents created by a governmental entity that is exempt from FOIA and that possesses the authority to restrict public access to its records, courts have rebuffed attempts by FOIA requesters to make an "end run" around FOIA and Congress' choice to exempt a governmental entity, "by filing a FOIA request with an entity that *is* covered under that statute." *Jud. Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 225 (D.C. Cir. 2013).

### B. This Court Applied the Right Test to Determine Whether the HAC Report is a Congressional Record: *Did Congress Manifest a Clear Intent to Control the HAC Report?*

In its earlier analysis, this Court appropriately found "persuasive and adopt[ed]" the D.C. Circuit's framework set forth in *ACLU v. CIA*, 823 F.3d 655 (D.C. Cir. 2016) for determining whether the HAC report is a congressional record, and it should apply this framework again. *See* Dkt. 40 at 7-8. The D.C. Circuit holds that, "when an agency possesses a document that it has obtained from Congress, the answer to the question whether the document is an agency record subject to disclosure under FOIA turns on whether Congress manifested a clear intent to control the document." *ACLU*, 823 F.3d at 662-63 (quotation omitted).

As this Court indicated, the D.C. Circuit's framework builds on the Supreme Court's general prerequisites that an "agency record" must be something that the agency (1) creates or obtains and (2) controls at the time of the FOIA request. *Tax Analysts*, 492 U.S. at 144-45. The D.C. Circuit's framework analyzes considerations of control unique to Congress which is "consistent with the Ninth Circuit's guidance to take a fact-driven approach to determining whether an agency controls a particular record such that is subject to FOIA." Dkt. 40 at 7-8 (citing *Rojas*, 941 F.3d at 409).

Looking to whether Congress indicated a clear intent to control the document accounts for "the constitutional considerations at play when an agency is in possession of a congressional

NSA'S MOTION FOR SUMMARY JUDGMENT
No. 2:20-cv-01309-MJP - 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

record," including "Congress's oversight role and authority to keep certain records secret." *See* Dkt. 40 at 7. "Congress has undoubted authority to keep its records secret, authority rooted in the Constitution, longstanding practice, and current congressional rules." *Goland v. CIA*, 607 F.2d 339, 346 (D.C. Cir. 1978) (footnotes omitted). It has exercised that authority by exempting itself from FOIA altogether. *See* 5 U.S.C. § 551(1)(A); *see id.* § 552(f)(1). Yet Congress simultaneously "exercises over-sight authority over the various federal agencies, and thus has an undoubted interest in exchanging documents with those agencies to facilitate their proper functioning in accordance with Congress' originating intent," including documents it wishes to keep secret from the public. *United We Stand Am.*, 359 F.3d at 599 (quotation omitted). Interpreting FOIA to compel disclosure of any congressionally created document located at an agency, despite a clear indication of Congress' intent to restrict public access, "would force Congress either to surrender its constitutional prerogative of maintaining secrecy, or to suffer an impairment of its oversight role." *Id.* (quotation omitted).

It is no surprise then, that the Second Circuit recently reached the same result as this Court. In *Cox*, another case involving a FOIA requester's demand to an agency for a congressional report, the Second Circuit applied the D.C. Circuit's framework and explained that the "key inquiry" for "whether an agency's response is subject to FOIA turns on whether Congress manifested a clear intent to control the document." *Cox*, 2024 WL 3642871, at *8 (quotation omitted).

Notably, Kinnucan also asked this Court to apply the D.C. Circuit's framework in the first instance. Her motion for summary judgment asserts "*ACLU* . . . correctly explains the basic rule that '[w]hen Congress creates a document and then shares it with a federal agency, the document does not become an 'agency record' subject to disclosure under FOIA if 'Congress [has] manifested a clear intent to control the document.'" Dkt. 20 at 16 (quoting *ACLU*, 823 F.3d at

NSA'S MOTION FOR SUMMARY JUDGMENT
No. 2:20-cv-01309-MJP - 11

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

658). For all of these reasons, this Court should continue to apply the D.C. Circuit's framework to determine whether the HAC report is a congressional record.

### C.  The Committee Manifested Clear Intent to Control the HAC Report

This Court's earlier conclusion that Congress intended to retain control over the HAC report, as evidenced by "the marking that the report cannot be released without Committee approval, the connection to Congress's oversight role, and the substance of the report," is sound, and is not changed by the additional record information. *See* Dkt. 40 at 8-11. The banner declaring "NOT FOR RELEASE UNLESS AND UNTIL AUTHORIZED BY COMMITTEE" remains key. It makes "plain" Congress' intent to maintain control of the HAC report and supports the "inescapable conclusion . . . that the report was never under agency control." Dkt. 40 at 12, 8.

The HAC Report sought by Kinnucan was prepared by congressional committee staff and is the product of congressional oversight of sensitive national security issues. *See* Gerhard & Millington, *Attack on a Sigint Collector*, at 59-60; 1968 Hearing at 357-58. The Appropriations Committee held a "special hearing," in 1967 "concerning communications at the time of the U.S.S. *Liberty* incident, and made specific inquiries of the Department of Defense." 1968 Hearing at 357. It then "had the committee's surveys and investigations staff conduct a study of the effectiveness of the worldwide communications systems." *Id.* To NSA's knowledge, Congress has never publicly released the resulting HAC report. *See* DeMillio Decl., ¶¶ 25-27; *see also* 1968 Hearing at 396 (comments of Rep. Lipscomb, Member H. Comm. on Appropriations) ("I understand that you are a little in the dark as to what our report contains").

On the copy of the report held by NSA, the Appropriations Committee clearly and unambiguously expressed its intent to control dissemination. It is marked with a banner that states, in capital letters, "NOT FOR RELEASE UNLESS AND UNTIL AUTHORIZED BY COMMITTEE." DeMillio Decl., ¶ 24. By including this legend, the committee "affixed [an]

NSA'S MOTION FOR SUMMARY JUDGMENT
No. 2:20-cv-01309-MJP - 12

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

external indici[um] of control or confidentiality on the fac[e] of the documen[t]." *Paisley v. CIA*, 712 F.2d 686, 694 (D.C. Cir. 1983). The "command is unequivocal, and it contains no temporal limitations." *ACLU*, 823 F.3d at 665. Thus, the committee "made it clear that it alone would decide if and when to publicly release" the full HAC report. *Id.* at 658.

The additional information disclosed in NSA's reprocessed response adds context and information concerning NSA's possession and treatment of the HAC report, and NSA clarifies its understanding of the "TOP SECRET" designation, but these additions do nothing to vitiate the committee's expressed intent to retain control over dissemination of the HAC report. *See* DeMillio Decl., ¶¶ 28-35. The internal routing slip and memorandum do not reflect that NSA controls or is free to release the HAC report. *Id.* ¶ 30, Ex. A. The handwritten notes do not appear to be a communication directly from the Appropriations Committee. *Id.* ¶¶ 31-33. To the extent the notes add anything, they may be understood as reflecting NSA's understanding that the HAC report was "not releasable," and that NSA was not free to unilaterally disseminate it.

As NSA's recent declaration explains, the "TOP SECRET" stamp reflects a classification marking "because [the report] contains information, so classified by the Department of Defense relating to matters involving national security of the United States." DeMillio Decl., ¶ 34, Ex. A. But this does not undermine the committee's clear instruction reserving for itself the authority to control public release. *See ACLU*, 823 F.3d at 659, 667-68 (holding that a Senate report was a congressional document even though it was based on "highly sensitive and classified information"). To the extent that the additional information concerning the classification marking bears on the current inquiry, it underscores the undisputed fact that the HAC report was a product of congressional oversight. Moreover, as this Court previously explained, "whether the report remains 'Top Secret' is not material," to the determination of whether the HAC report is a

NSA'S MOTION FOR SUMMARY JUDGMENT
No. 2:20-cv-01309-MJP - 13

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   congressional record. Dkt. 40 at 11.

2   Additionally, NSA notes that in July 2024, NSA reached out to the Appropriations

3   Committee and received an indication that the committee has not changed its position on retaining

4   control of the HAC report. *See* DeMillio Decl., ¶ 26. NSA again asked for the committee's position

5   on release of the HAC report and the committee again declined to authorize release. *Id*. Such a

6   recent communication may not be sufficient, standing on its own, to demonstrate clear

7   congressional intent to retain control. *See* Dkt. 40 at 11 (declining to consider post-hoc objections

8   citing *ACLU*, 823 F.3d at 664). But it confirms what NSA has consistently understood regarding

9   congressional intent indicated by the plain, unequivocal banner warning "NOT FOR RELEASE

10  UNLESS AND UNTIL AUTHORIZED BY COMMITTEE."

11  Looking at the record evidence along with considerations unique to Congress, the facts of

12  this case are in line with decisions from the D.C. and Second Circuits holding that an agency did

13  not "control" records created by a governmental entity exempt from FOIA. For example, in *ACLU*,

14  the D.C. Circuit held that a report created by the Senate Select Committee on Intelligence "as a

15  part of its oversight of the intelligence community," was not an agency record where the committee

16  asserted in a June 2009 letter that decisions regarding the "disposition and control" of the report

17  "lies exclusively with the Committee." *ACLU*, 823 F.3d at 658-60. The Second Circuit reached

18  the same result in *Cox*, a case involving separate FOIA requests for the same Senate report. *Cox*,

19  2024 WL 3642871, at *5, *9-10. The Second Circuit likewise found that the June 2009 letter

20  manifested Congress' "clear intent to control" both "draft and final versions of the report." *Id*. at

21  *9-10. The *Cox* court further explained that Congress could express its intent at the time of

22  creation, or at transmittal, but it was not required to do both. *Id*. at *10-13 ("There is no requirement

23  that the Committee's subsequent [transmittal] letters reference the June 2, 2009, letter for the

24

NSA'S MOTION FOR SUMMARY JUDGMENT
No. 2:20-cv-01309-MJP - 14

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    Committee to maintain control over the report."). Compared to the facts here, the Senate letter's
2    directive is akin to the Appropriations Committee's banner warning against release unless
3    "AUTHORIZED BY COMMITTEE."

4        Similarly, in *United We Stand America*, the D.C. Circuit relied on a "confidentiality
5    directive" in a letter stating that "[t]his document may not be disclosed without the prior approval
6    of the Joint Committee [on Taxation]" to hold that both the committee's letter *and* "portions of the
7    IRS response that would reveal the Joint Committee request" were congressional documents, and
8    not agency records subject to FOIA. *United We Stand America*, 359 F.3d at 600-01, 605. And in
9    *Goland*, the D.C. Circuit held that "[t]he facts that the Committee met in executive session"—
10   which it did for matters "involving national security and in other instances when it was determined
11   that public disclosure might be detrimental to the public interest"—"and that the Transcript was
12   denominated 'Secret' plainly evidence a Congressional intent to maintain Congressional control
13   over the document's confidentiality." *Goland*, 607 F.2d at 347, n.44. Here too, the subject matter
14   of the HAC report concerns national security and the agency in possession of the document "is not
15   free to dispose of [the report] as it wills." *Id.* at 347. And the banner here is more explicit than a
16   "Secret" stamp as an indicator of Congress' intent that "the decision to make [the document] public
17   should be made by the originating body, not by the recipient agency." *Id.*

18       "[W]here Congress has intentionally excluded a governmental entity from the Act," and
19   that entity indicates its intent to control public disclosure of its records, these courts "have been
20   unwilling to conclude that documents or information of that entity can be obtained indirectly," by
21   filing a FOIA request with an agency that is subject to FOIA. *Jud. Watch, Inc.*, 726 F.3d at 225;
22   *see also Doyle v. DHS*, 959 F.3d 72, 78 (2d Cir. 2020) ("[I]t is hard for us to believe Congress
23   intended that FOIA requesters be able to obtain from the gatekeepers of the White House what
24

NSA'S MOTION FOR SUMMARY JUDGMENT
No. 2:20-cv-01309-MJP - 15

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   they are unable to obtain from its occupants.") (quotation omitted). This Court too, should hold

2   that Kinnucan may not demand from NSA what she cannot obtain from Congress.

3                          **IV.    CONCLUSION**

4        For the foregoing reasons, this Court should grant NSA's motion for summary judgment

5   and dismiss this action.

6        Dated this 14th day of August, 2024.

7                                   Respectfully submitted,

8                                   TESSA M. GORMAN
                                    United States Attorney
9
                                    *s/ Katie D. Fairchild*
10                                  KATIE D. FAIRCHILD, WSBA #47712
                                    Assistant United States Attorney
11                                  United States Attorney's Office
                                    700 Stewart Street, Suite 5220
12                                  Seattle, Washington 98101-1271
                                    Phone: 206-553-4358
13                                  Fax: 206-553-4067
                                    Email: katie.fairchild@usdoj.gov
14
                                    I certify that this memorandum contains 5,023
15                                  words, in compliance with the Local Rules.

16

17

18

19

20

21

22

23

24

NSA'S MOTION FOR SUMMARY JUDGMENT
No. 2:20-cv-01309-MJP - 16

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970