# Exhibit B

**Carr, Christopher L**

| | |
|---|---|
| **From:** | foia_case_officer |
| **Sent:** | Thursday, March 7, 2019 2:30 PM |
| **To:** | '69086-18022469@requests.muckrock.com' |
| **Subject:** | RE: [Non-DoD Source] RE: Freedom of Information Act Request #106371 |

Ms. Kinnucan,

Thanks for your timely response. You will be hearing from us soon regarding the status of your request.

Thank you,

FOIA Customer Representative


From: 69086-18022469@requests.muckrock.com <69086-18022469@requests.muckrock.com>
Sent: Wednesday, March 6, 2019 9:54 PM
To: foia_case_officer <foia_case_officer@nsa.gov>
Subject: [Non-DoD Source] RE: Freedom of Information Act Request #106371


National Security Agency
FOIA Office
#6248
9800 Savage Road
Fort Meade, MD 20755-6248

March 6, 2019

This is a follow up to request number 106371:

Greetings,

I am formally amending FOIA Request 106371 to request both volumes I and II of "A Report to the Committee on Appropriations - U.S. House of Representatives on the Effectiveness of the Worldwide Communications Systems and Networks of the DoD, U.S.S. Liberty Incident".

According to a partially declassified 1981 NSA report entitled "Attack on a Sigint Collector, the U.S.S. Liberty" (see note 3 on page 60 of the attachment) the NSA's copy of this Congressional report is "located in the 'Crisis Collection' of the NSA History Collection". I am not, at this time, requesting a copy of the NSA report "Attack on a Sigint Collector, the U.S.S. Liberty".

Sincerely,

Michelle Kinnucan

1

Filed via MuckRock.com
E-mail (Preferred): 69086-18022469@requests.muckrock.com
Upload documents directly: https://www.muckrock.com/accounts/agency_login/national-security-agency-17/us-house-appropriations-comm-report-on-uss-liberty-incident-69086/?email=foia_case_officer%40nsa.gov&uuid-login=0d636de2-f9a5-47e5-afcc-e7856cd59c4e#agency-reply
Is this email coming to the wrong contact? Something else wrong? Use the above link to let us know.

For mailed responses, please address (see note):
MuckRock News
DEPT MR 69086
411A Highland Ave
Somerville, MA 02144-2516

PLEASE NOTE: This request is not filed by a MuckRock staff member, but is being sent through MuckRock by the above in order to better track, share, and manage public records requests. Also note that improperly addressed (i.e., with the requester's name rather than "MuckRock News" and the department number) requests might be returned as undeliverable.

---

On March 5, 2019:
Good Afternoon,

We are in receipt of your Freedom of Information Act (FOIA) request of 18 February 2019 for, "Pages 48-50 of Volume I and pages 75-76 of Volume II only." Your request has been assigned case number 106371.

We are uncertain of the records you seek. Department of Defense (DoD) Regulation 5400.7-R states that the requester must provide a description of the desired record so that the Government is able to locate the records with a reasonable amount of effort. More detail is required for us to determine the appropriate files to search to find the material you request. Please confirm that you are requesting:

- Pages 48-50 of "Attack on a SIGINT Collector, the U.S.S. Liberty"
- Pages 75-76 of Volume II of the "Special Series Crisis Collection"

Additionally, are you requesting a copy of the "A Report to the Committee on Appropriations - U.S. House of Representatives on the Effectiveness of the Worldwide Communications Systems and Networks of the DoD, U.S.S. Liberty Incident?"

In accordance with DoD regulation, processing of your request is being held in abeyance pending a response from you, within 30 days of the date of this email, clarifying your request. If we do not hear from you within that time, we will assume that you are no longer interested in pursuing this request, and we will administratively close your case with no further processing.

Correspondence related to your request should include the case number assigned to your request, which is included in the first paragraph of this email. Your correspondence should be addressed to the National Security Agency, ATTN: FOIA Office (P132), 9800 Savage Road STE 6932, Ft. George G. Meade, MD 20755-6932, or via email at foia_case_officer@nsa.gov and fax at 301-688-6527.

Thank you,

FOIA Customer Representative

---

On Feb. 17, 2019:

To Whom It May Concern:

Pursuant to the Freedom of Information Act, I hereby request the following records:

The pages indicated below of "A Report to the Committee on Appropriations - U.S. House of Representatives on the Effectiveness of the Worldwide Communications Systems and Networks of the DoD, U.S.S. Liberty Incident". This document was prepared by the House Appropriations Committee Surveys and Investigations Staff "[f]ollowing a hearing focusing on the JCS messages which failed to reach the Liberty" at the direction of "the House Appropriations Committee on 14 August 1967 ..."

At this time I am specifically requesting pages 48-50 of volume I and pages 75-76 of volume II only. This Congressional report is referenced on pages 59-60 of a partially declassified 1981 NSA report entitled "Attack on a Sigint Collector, the U.S.S. Liberty" (see attachment). The NSA report gives no date for the House report but says "Source documents are located in the 'Crisis Collection' of the NSA History Collection".

The requested documents will be made available to the general public, and this request is not being made for commercial purposes.

In the event that there are fees, I would be grateful if you would inform me of the total charges in advance of fulfilling my request. I would prefer the request filled electronically, by e-mail attachment if available or CD-ROM if not.

Thank you in advance for your anticipated cooperation in this matter. I look forward to receiving your response to this request within 20 business days, as the statute requires.

Sincerely,

Michelle Kinnucan

Filed via MuckRock.com
E-mail (Preferred): 69086-18022469@requests.muckrock.com
Upload documents directly: https://www.muckrock.com/accounts/agency_login/national-security-agency-17/us-house-appropriations-comm-report-on-uss-liberty-incident-69086/?email=foia_case_officer%40nsa.gov&uuid-login=0d636de2-f9a5-47e5-afcc-e7856cd59c4e#agency-reply
Is this email coming to the wrong contact? Something else wrong? Use the above link to let us know.

For mailed responses, please address (see note):
MuckRock News
DEPT MR 69086
411A Highland Ave
Somerville, MA 02144-2516

PLEASE NOTE: This request is not filed by a MuckRock staff member, but is being sent through MuckRock by the above in order to better track, share, and manage public records requests. Also note that improperly addressed (i.e., with the requester's name rather than "MuckRock News" and the department number) requests might be returned as undeliverable.

SPECIAL SERIES
CRISIS COLLECTION
Volume 1

~~TOP SECRET~~

# UNITED STATES CRYPTOLOGIC HISTORY

## Attack on a Sigint Collector, the U.S.S. *Liberty* ~~(S-CCO)~~

~~NOT RELEASABLE TO FOREIGN NATIONALS~~
~~THIS DOCUMENT CONTAINS CODEWORD MATERIAL~~

Classified by NSA/CSSM 123-2
Review in April 2011

Declassified and approved for release by NSA on 11-08-2006 pursuant to E.O. 12958, as amended. MDR 51712.

NATIONAL SECURITY AGENCY
CENTRAL SECURITY SERVICE

~~TOP SECRET~~

Case 2:20-cv-01309-MJP   Document 86-2   Filed 08/14/24   Page 6 of 9

Contents of this publication should not be reproduced, or further disseminated outside the U.S. Intelligence Community without the permission of the Director, NSA/CSS. Inquiries about reproduction and dissemination should be directed to the Office of Cryptologic Archives and History, T54.

TOP SECRET UMBRA

# UNITED STATES CRYPTOLOGIC HISTORY

*Special Series*
*Crisis Collection*
Volume 1

# Attack on a Sigint Collector, the U.S.S. *Liberty* (S-CCO)

William D. Gerhard
Henry W. Millington

NATIONAL SECURITY AGENCY/CENTRAL SECURITY SERVICE
1981

NOT RELEASABLE TO FOREIGN NATIONALS

TOP SECRET UMBRA

means employed in issuing operational directives of the JCS to the U.S.S. *Liberty* and the specific orders to the *Liberty* between 1 June and 8 June 1967, and to identify and develop information on conflicting directives, delays in message traffic, and nonreceipt of orders. The team was to report its findings, along with recommendations, to the JCS.

(C-CCO)   The JCS team visited NSA, other Washington-area principals, and concerned military staffs and commands in Europe and the Mediterranean. On 10 June, as the team began its fact-finding mission, General Carter called General Russ and offered the total cooperation of NSA and followed through on this offer by making as much information available to him as required, although General Russ had already decided not to concentrate on sensitive (that is, special intelligence) matters.

(U)   As the work of the fact-finding team was drawing to a close, General Russ provided on 18 June a preliminary report to the Chairman of the Joint Chiefs of Staff, General Earle Wheeler, USA. He apprised the Chairman of the four messages from higher headquarters on 7/8 June to subordinate commands designed to change the *Liberty*'s CPA, receipt of which by *Liberty* "would undoubtedly have resulted in the ship's being a greater distance from the scene of action...." Despite the *Liberty*'s having been either an action or an information addressee on each of these messages, General Russ's team found no evidence that the ship received any one of them. Nor did his team find, for that matter, any evidence of conflicting directives governing the *Liberty*'s operation. General Russ also made note of the irregular procedure JCS itself had adopted in bypassing Commander-in-Chief, Europe when it passed verbal instructions to Commander-in-Chief, U.S. Navy Europe, and he recounted the reasons for delays at NAVEUR and Sixth Fleet in translating the JCS directive into action.

(U)   By 20 June the JCS Fact Finding Team had completed its work, had prepared its report, and had made its recommendations to the JCS. Of the 17 recommendations made, 9 concerned the missions, functions, operational responsibilities, and operational control/technical tasking and guidance matters; the other 8 related to communications, traffic management, methods, facilities, and availability of trained personnel. In reviewing and commenting on the report's recommendations for the JCS, the J3 and J6/JCS reserved follow-on action for the first category of recommendations to the Joint Staff but assigned responsibilities to various other agencies for study and implementation actions in the second category of recommendations. NSA drew assignments on three recommendations dealing with emphasis on dedicated command-and-control circuitry rather than on common-user circuitry, with measures to improve fleet control communications via communications satellite technology, and with the amalgamation of NATO and U.S. military communications.

(C-CCO)   Other than the three recommendations on which it participated as an action agency, NSA was concerned about some of the other findings in the report. One recommendation was, for example, that "procedures governing the control of surveillance platforms be made more definitive with respect to technical research ships to insure that "artificial barriers between operational elements of staffs and NSA/Naval Security Group" owing to security considerations be eliminated "in order to improve the value and timely utilization of the Sigint products at all major command echelons." Insofar as NSA was concerned, this recommendation was off the mark since Sigint product already went directly to all commands and not through NSA/Naval Security Group staffs. NSA commented formally on this point in a letter to Major General G.B. Pickett, Vice Director for Operations (J-3); in its commentary on the Russ report for the JCS, the J-3 discounted this recommendation.

(U)   When copies of the JCS Fact Finding Team's report reached NSA at the end of June, General Carter instructed the chief of his telecommunications organization, Colonel Leslie J. Bolstridge, USAF, to review the report in minute detail with a view to "correcting our procedures wherever we can profit from this debacle of military communications." Since the Russ report primarily dealt with command-and-control communications, the Russ recommendations had only marginal pertinence to NSA's own communications.[2]

### Congressional Review (U)

(U)   ==Following a hearing focusing on the JCS messages which failed to reach the *Liberty*, the House Appropriations Committee on 14 August 1967 directed its Surveys and Investigations staff to examine the effectiveness of the DoD worldwide communications system.== The staff studied the delays and nondelivery of messages originated on 7 and 8 June directing the withdrawal of the *Liberty* as a springboard to its broader review of DoD's worldwide communications. The staff produced a two-volume report for the chairman of the congressional committee. Volume I reviewed the communications problems in the *Liberty* incident, volume II the worldwide communications systems and networks of the DoD.

(U) In its work, the Surveys and Investigations staff interviewed JCS, NSA, Naval Communications Command, Department of Army Communications Center, and JCS Message Center personnel in the Washington area and most of the military commands and communications centers in the Pacific and European regions which had been involved with *Liberty*'s communications in one way or another.

(U) Essentially the staff covered the same ground that General Russ's team plowed earlier. They worked their way through all the communications errors made during the attempts to withdraw the *Liberty* on 7/8 June. The staff was somewhat more critical than the JCS Fact Finding Team of the failure to deliver to the *Liberty* the information copies of the JCS and CINCEUR messages directing withdrawal (JCS 080110Z June 67 and CINCEUR 080625Z June 67). Specifically, they wanted to know if a typical commander would take action on an information copy of this kind from a higher command before receiving the implementing message of his immediate superior. They tested the matter with unnamed U.S. Navy officials who had commanded both large and small naval vessels and learned, according to the report, that there would have been no question that if the *Liberty* had received the information copies, "the Captain of the *Liberty* would have moved within minutes without waiting for an implementing order."

(U) In its volume II, the congressional staff took full note of the breakdown of the precedence system in communications and drew upon DoD-provided information for the Middle East crisis. Of some 452 high-precedence, (Flash and Immediate) crisis-related DoD messages, only 22 percent of the Flash and 30 percent of the Immediate messages actually met established precedence criteria.

(U) Part of the delay in transmitting the Immediate-precedence Sixth Fleet withdrawal message to the *Liberty*, it will be recalled, was owing to the urgency of equal or higher precedence (that is, Flash) messages. During the crisis, originators assigned Immediate precedence to messages on subjects such as these: enlisted men reassignments, hospital-patient reports unrelated to the crisis, friendly ship locations and movements, setting up of press conferences, changes in reporting formats, U.S. military sales policies, and reorganization of Army Reserve units. In contrast, actual instructions called for assignment of Immediate precedence to "situations which gravely affect the security of national/allied forces or populace, and which require immediate delivery to the addressees" — for example, amplifying reports of initial enemy contact, reports of unusual major movements of military forces of foreign powers during peacetime or during strained relations, attack orders, and urgent intelligence messages.

(U) While the congressional staff directed most of its attention to DoD command communications, it also took note of Criticomm which, they found functioned throughout the crisis relatively free of problems. The staff was aware of steps NSA took to keep Criticomm free of the overburdening traffic common in crisis situations, particularly an 8 June action in which NSA directed the curtailment of electrical forwarding of all routine reports so that crisis-related traffic could flow expeditiously.[3]

### Notes

Source documents are in the "Crisis Collection" of the NSA History Collection.

[1] (U)(C) — LTG Marshall S. Carter, Memorandum for the Record, 8 June 1967; Dr. Louis W. Tordella, Memorandum, "Directorate's Temporary Mid-East Information Group," 8 June 1967; Walter G. Deeley, Memorandum for the D/DIR, "U.S.S. Liberty," 14 June 1967; NSA Staff, "Report to the Director, NSA," 12 June 1967; and DIRNSA letter to MG J. R. Russ, (JCS Fact Finding Team), 12 June 1967.

[2] (U) The Russ Report; NSA Director, handwritten notes, 8 and 10 June 1967; JCS/J-3, "Note by the Secretaries to the JCS on U.S.S. *Liberty* Incident," JCS no. 2308/378, 24 June 1967; Joint Command and Control Requirements Group, Memorandum for the Joint Chiefs of Staff, "Fact Finding Team," 18 June 1967; Walter G. Deeley, letter to Vice Director for Operations (J-3), 29 June 1967.

[3] (U) House Appropriations Committee Surveys and Investigations Staff, *A Report to the Committee on Appropriations - U.S. House of Representatives on the Effectiveness of the Worldwide Communications Systems and Networks of the DoD, U.S.S. Liberty Incident*, vol. I pp. 48-50. vol. II, pp. 75-76.