The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICHELLE J. KINNUCAN,<br><br>  Plaintiff,<br><br>  v.<br><br>NATIONAL SECURITY AGENCY, *et al.*,<br><br>  Defendants. | Case No. 2:20-cv-1309 MJP<br><br>PLAINTIFF'S COMBINED OPPOSITION AND CROSS-MOTION FOR SUMMARY JUDGMENT<br><br>NOTE ON MOTION CALENDAR:<br>October 11, 2024<br><br>***Oral Argument Requested*** |

PLAINTIFF'S COMBINED OPPOSITION AND
CROSS-MOTION FOR SUMMARY JUDGMENT
(No. 2:20-cv-1309 MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**TABLE OF CONTENTS**

Page

I.     INTRODUCTION ............................................................................................................ 1

II.    BACKGROUND ............................................................................................................. 2

    A.  Congress Prepares a Report Concerning the Attack on the U.S.S. *Liberty* and Sends the Report to the National Security Agency for the Agency's Use. ........................................................................................................................ 2

    B.  Procedural History. ........................................................................................... 3

III.   ARGUMENT .................................................................................................................. 4

    A.  The Court Should Apply Supreme Court Precedent to Find That the HAC Report Is an Agency Record. ............................................................................ 5

    B.  Even Under the D.C. Circuit's Test, the HAC Report Is an Agency Record. ............................................................................................................ 10

IV.    CONCLUSION ............................................................................................................ 13

PLAINTIFF'S COMBINED OPPOSITION AND
CROSS-MOTION FOR SUMMARY JUDGMENT - i
(No. 2:20-cv-1309 MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

ACLU v. CIA,
    823 F.3d 655 (D.C. Cir. 2016) .......................................................................................*passim*

Animal Legal Def. Fund v. FDA,
    836 F.3d 987 (9th Cir. 2016) ....................................................................................................5

Cameranesi v. Dep't of Def.,
    856 F.3d 626 (9th Cir. 2017) .................................................................................................. 10

Cox v. Dep't of Justice,
    111 F.4th 198 (2d Cir. 2024) .................................................................................................. 11

Dep't of Air Force v. Rose,
    425 U.S. 352 (1976) ..................................................................................................................4

Dep't of Interior v. Klamath Water Users Protective Ass'n,
    532 U.S. 1 (2001) ......................................................................................................................4

Dep't of Justice v. Tax Analysts,
    492 U.S. 136 (1989) .........................................................................................................*passim*

Dep't of State v. Ray,
    502 U.S. 164 (1991) ..................................................................................................................4

Forsham v. Harris,
    445 U.S. 169 (1980) ..................................................................................................................5

Goland v. CIA,
    607 F.2d 339 (D.C. Cir. 1978) ........................................................................................*passim*

Huddleston v. FBI,
    2023 WL 8235243 (E.D. Tex. 2023) .................................................................................. 6, 9

Hum. Rts. Def. Ctr. v. Dep't of Just.,
    2024 WL 2302501 (W.D. Wash. 2024) ................................................................................ 10

Jud. Watch, Inc. v. Secret Serv.,
    726 F.3d 208 (D.C. Cir. 2013) ......................................................................................... 10, 11

Kinnucan v. NSA,
    2021 WL 6125809 (W.D. Wash. 2021) ...........................................................................*passim*

PLAINTIFF'S COMBINED OPPOSITION AND
CROSS-MOTION FOR SUMMARY JUDGMENT - ii
(No. 2:20-cv-1309 MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Kissinger v. Reporters' Committee for Freedom of the Press,
    445 U.S. 136 (1980) ............................................................................................... 7

Miller v. Dep't of State,
    779 F.2d 1378 (8th Cir. 1985) ................................................................................ 5

Organic Cannabis Found., LLC v. Comm'r of Internal Revenue,
    962 F.3d 1082 (9th Cir. 2020) ................................................................................ 9

Paisley v. CIA,
    712 F.2d 686 (D.C. Cir. 1983) .............................................................................. 11

Prison Legal News v. Dep't of Homeland Sec.,
    113 F. Supp. 3d 1077 (W.D. Wash. 2015) .............................................................. 5

Rojas v. FAA,
    941 F.3d 392 (9th Cir. 2019) ......................................................................... *passim*

Transgender L. Ctr. v. Immigr. & Customs Enf't,
    46 F.4th 771 (9th Cir. 2022) ................................................................................... 6

**Federal Statutes**

5 U.S.C. § 552(a)(4)(B) ................................................................................................. 5

**Rules**

Fed. R. Civ. P. 56(a) ..................................................................................................... 4

**Other Authorities**

Hearings Before a Subcommittee of the H. Comm. on Appropriations,
    90th Cong. 357–58 (Apr. 8, 1968) ........................................................................ 12

William D. Gerhard & Henry W. Millington, Attack on a Sigint Collector, the U.S.S. *Liberty*,
    NSA, Office of Cryptologic Archives and History (1981) ........................... 2, 3, 9, 11

PLAINTIFF'S COMBINED OPPOSITION AND
CROSS-MOTION FOR SUMMARY JUDGMENT - iii
(No. 2:20-cv-1309 MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

## I. INTRODUCTION

Through this Freedom of Information Act ("FOIA") suit, Plaintiff Michelle Kinnucan—an investigative writer, veteran, and advocate—seeks disclosure of an unreleased report in Defendant National Security Agency's ("NSA") possession and control, which analyzed Israel's 1967 attack on a U.S. naval ship that left 34 Americans dead and 173 wounded. This document, which was originally created by the House Appropriations Committee (the "HAC Report"),[1] is of great public interest because it was one of the few federal reviews of the unprovoked attack that has never been disclosed. Despite the fact that NSA has admitted it obtained and used the HAC Report for its own official purposes—while also providing no evidence that Congress limited its use, intended to retain control after the transfer, or ever sought its return—NSA refused to disclose the HAC Report on the grounds that it is not an "agency record" subject to FOIA.

Adopting the D.C. Circuit's test, this Court initially ruled in NSA's favor as to the HAC Report in Kinnucan v. National Security Agency, 2021 WL 6125809 (W.D. Wash. 2021) ("Kinnucan I"). However, during appellate briefing on the issue, NSA claimed it uncovered new evidence regarding the transfer of the HAC Report and sought a voluntary remand. The Ninth Circuit subsequently vacated the earlier opinion, and NSA has now revealed additional background information establishing that NSA itself requested and received the Report before disseminating and using it further. This new evidence confirms that the HAC Report was transferred for the agency's use as part of its official duties, and under the Ninth Circuit's relevant test from Rojas v. FAA, 941 F.3d 392 (9th Cir. 2019), NSA has not met its burden to show that NSA did not control the Report or that its possession was for some employee's personal reasons. As such, the undisputed facts establish that the Report is an "agency record" that NSA should have produced under FOIA, and Ms. Kinnucan respectfully requests the Court enter summary judgment in her favor and order the Report's disclosure.

---

[1] House Appropriations Committee Surveys and Investigations Staff, *A Report to the Committee on Appropriations - U.S. House of Representatives on the Effectiveness of the Worldwide Communications Systems and Networks of the DoD, U.S.S. Liberty Incident*.

PLAINTIFF'S COMBINED OPPOSITION AND
CROSS-MOTION FOR SUMMARY JUDGMENT - 1
(No. 2:20-cv-1309 MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## II. BACKGROUND

### A. Congress Prepares a Report Concerning the Attack on the U.S.S. *Liberty* and Sends the Report to the National Security Agency for the Agency's Use.

This matter involves Ms. Kinnucan's requests under FOIA for "records relating to a 1967 attack by Israeli forces on a U.S. naval intelligence ship in international waters that left 34 dead and 173 wounded." Kinnucan I, 2021 WL 6125809, at *1 (citing Dkt. No. 17 ¶¶ 1–5). Following that deadly attack on the U.S.S. *Liberty*, staff for the House Appropriations Committee prepared the two-volume HAC Report, which concerned "communications errors that may have contributed to the U.S.S. *Liberty* failing to withdraw from its location ahead of the attack." Id.; see also William D. Gerhard & Henry W. Millington, Attack on a Sigint Collector, the U.S.S. *Liberty*, NSA, Office of Cryptologic Archives and History (1981) ("Attack"), at 59–60.[2] On the cover of each volume of the HAC Report, which were designated as "Top Secret," is a banner stating "NOT FOR RELEASE UNLESS AND UNTIL AUTHORIZED BY COMMITTEE." (Dkt. No. 86 ("DeMillio Decl.") ¶¶ 24, 34.)[3]

On May 6, 1968, NSA's Eugene "Gene" Yeates[4] requested and received a copy of the HAC Report from Congress. (See id., Ex. A at 7.) On the "Routing and Transmittal Slip," the box for "Note and Return" was unchecked, and the remarks section does not include any reference to returning the documents. (See id.) On May 13, 1968, the HAC Report was then routed from LCDR Edward Koczak to NSA Director Marshall S. Carter.[5] (Id. at 8.) Director Carter, who "found [the Report] intensely interesting," then apparently sent it on to an unknown

---

[2] *Available at* https://www.nsa.gov/portals/75/documents/news-features/declassified-documents/uss-liberty/chronology-events/attack-sigint.pdf.

[3] NSA has never produced a copy of the banner in context—which itself is not classified—so the size, location, and prominence is unknown and unestablished.

[4] Mr. Yeates served over two decades at NSA from 1961 through 1985, including as NSA's Chief for the Office of Legislative Affairs. *See* https://thelebanontimes.com/a-lifetime-of-dedicated-service-honor-meet-eugene-yeates-2/; https://www.linkedin.com/in/eugene-yeates-3a470a41/.

[5] Following the attack, Director Carter had established an NSA working group, which included LCDR Koczak, "to gather information on the event." (See Attack, at 58.)

PLAINTIFF'S COMBINED OPPOSITION AND
CROSS-MOTION FOR SUMMARY JUDGMENT - 2
(No. 2:20-cv-1309 MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

recipient with the "recommend[ation]" that it also be read by Rear Admiral Lester Schulz and Colonel Leslie Bolstridge.[6]  (Id.)  In 1981, NSA published a classified report, Attack on a Sigint Collector, the U.S.S. Liberty, which detailed the attack and the creation of the HAC Report and its contents.  (See Attack, at 59–60; see also id. at 20 n.22, 23 n.39.)  NSA subsequently declassified and released Attack to the public in 2006, (id. at 1), wherein it crossed out the "Top Secret" designation for the HAC Report in the bibliography, (id. at 67.)

### B.   Procedural History

In February 2019, Ms. Kinnucan submitted a FOIA request to NSA for a copy of the HAC Report.  (Dkt. No. 21 ¶ 6; DeMillio Decl. ¶ 13.)  Over the next *eighteen* months, Ms. Kinnucan sent *fourteen* follow-up inquiries to NSA seeking the status of her request, which went unanswered.  (Dkt. No. 21 ¶ 6.)  Still, NSA did not produce any documents within the statutory period and did not provide a reason for withholding the records searched or located.  (Id.)  Ms. Kinnucan filed this suit on September 1, 2020, (Dkt. No. 1), and NSA finally responded and denied her request on April 19, 2021 on the basis that the HAC Report was not an "agency record[] subject to FOIA," (DeMillio Decl. ¶ 15.)

The parties then filed cross-motions for summary judgment, disputing—among other issues[7]—whether the HAC Report is an agency record subject to FOIA.  (See Dkt. Nos. 20 at 16–20 & 27 at 7–11.)  On December 28, 2021, this Court denied Ms. Kinnucan's motion and granted NSA's motion.  (Dkt. No. 40.)  Noting that it is a "close question," the Court adopted a version of the D.C. Circuit's test set forth in ACLU v. CIA, 823 F.3d 655 (D.C. Cir. 2016) and found that the HAC Report is not an agency record based on the "not for release" banner. Kinnucan I, 2021 WL 6125809, at *3–6.  Ms. Kinnucan then appealed that ruling and submitted

---

[6] Adm. Schulz was then serving as the Assistant Director of NSA for the National Cryptologic Staff.  (See https://www.oocities.org/pentagon/quarters/7858/bios/schulzlr.html.) Col. Bolstridge was then serving as the Chief of NSA's telecommunications organization.  (See Attack, at 59.)

[7] Prior briefing focused largely on whether the CIA had met its burden to support claimed exemptions.  (See Dkt. Nos. 20 at 20–23 & 27 at 11–18.)  Finding it had not, the Court ordered those documents submitted for in camera review, Kinnucan I, 2021 WL 6125809, at *7, which led to CIA's production of hundreds of unredacted pages of documents.

PLAINTIFF'S COMBINED OPPOSITION AND
CROSS-MOTION FOR SUMMARY JUDGMENT - 3
(No. 2:20-cv-1309 MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1  an opening brief, which NSA mooted by requesting a "voluntary remand" so that it could
2  reprocess Ms. Kinnucan's request after "government counsel discovered additional information
3  in NSA's possession" regarding the HAC Report's transfer.  (DeMillio Decl. ¶ 18.)
4        Despite this "re-processing," NSA still denied Ms. Kinnucan's request on the exact same
5  basis.  (Id. ¶¶ 22–24.)  On August 14, 2024—over five years after Ms. Kinnucan first sent her
6  request—NSA filed its renewed summary judgment motion, relying solely on the "not for
7  release" banner as support to meet its burden to show congressional intent.  (See Dkt. No. 85
8  ("NSA Mot.") at 12–14; see also DeMillio Decl. ¶ 34 ("NSA clarifies that NSA does not rely on
9  the Top Secret marking as an indicator of congressional intent").)  Notably, although NSA
10 apparently contacted some unknown staffer at the House Appropriations Committee in July
11 2024, even that congressional body did not definitely affirm that the Report still fell under its
12 jurisdiction.  (DeMillio Decl. ¶ 26.)  Nor did it undertake any official review of the Report's
13 present releasability or affirm that the Committee's earlier post hoc assertions of control still
14 stood.  (Id.)
15       Ms. Kinnucan opposes NSA's motion, and as detailed below, respectfully requests that
16 the Court grant her summary judgment based on the Supreme Court's clear test and because the
17 NSA's newly revealed evidence supports her continued contention that NSA controls the HAC
18 Report.

19 **III.   ARGUMENT**

20       "Summary judgment is appropriate if the moving party 'shows there is no genuine
21 dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"
22 Kinnucan I, 2021 WL 6125809, at *3 (quoting Fed. R. Civ. P. 56(a)).  Under FOIA, "the strong
23 presumption in favor of disclosure places the burden on the agency to justify the withholding of
24 any requested documents."  Dep't of State v. Ray, 502 U.S. 164, 173 (1991); Dep't of Interior v.
25 Klamath Water Users Protective Ass'n, 532 U.S. 1, 7–8 (2001) ("'[D]isclosure, not secrecy, is
26 [FOIA's] dominant objective ….'") (quoting Dep't of Air Force v. Rose, 425 U.S. 352, 361
27 (1976)).  In other words, "[t]he burden is on the agency to demonstrate, not the requester to
28

PLAINTIFF'S COMBINED OPPOSITION AND
CROSS-MOTION FOR SUMMARY JUDGMENT - 4
(No. 2:20-cv-1309 MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

disprove, that the materials sought are not 'agency records.'" Dep't of Justice v. Tax Analysts, 492 U.S. 136, 142 n.3 (1989). Moreover, an agency's decision on the topic is granted no deference, as "[j]udicial review of agency decisions on requests for information under FOIA is de novo." Kinnucan I, 2021 WL 6125809, at *3 (citing 5 U.S.C. § 552(a)(4)(B); Animal Legal Def. Fund v. FDA, 836 F.3d 987, 990 (9th Cir. 2016) (en banc)). Therefore, "in order to prevail on summary judgment, the agency must prove 'it has fully discharged [its burdens] under FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester.'" Prison Legal News v. Dep't of Homeland Sec., 113 F. Supp. 3d 1077, 1081 (W.D. Wash. 2015) (Pechman, J.) (quoting Miller v. Dep't of State, 779 F.2d 1378, 1382 (8th Cir. 1985)).

Here, NSA fails to meet its burden to establish as a matter of law that NSA did not obtain and control the HAC Report for its official use, and as such, the Court should deny NSA's request and find that the Report is an "agency record" that must be produced under FOIA.

### A. The Court Should Apply Supreme Court Precedent to Find That the HAC Report Is an Agency Record.

Although Congress "did not provide any definition of 'agency records'" in FOIA, Forsham v. Harris, 445 U.S. 169, 178 (1980), "[t]he Supreme Court has provided a two-prong test: a document is an agency record if (1) the agency 'either created or obtained the requested materials,' and (2) the agency is 'in control of the requested materials at the time the FOIA request is made.'" Rojas, 941 F.3d at 407 (quoting Tax Analysts, 492 U.S. at 144–45). In affirming this test, the Ninth Circuit rejected adoption of the D.C. Circuit's "four-factor test," instead holding "that a court may consider a range of evidence to determine whether specified records are in the agency's possession in connection with agency-related business, or instead involve personal matters not related to the agency's 'transaction of public business.'" Id. at 409 (quoting Tax Analysts, 492 U.S. at 145). Such evidence under the second Tax Analyst prong can be gleaned from "the agency's use of documents (including its system for preserving, retrieving, or disposing of the documents, and *any* reliance on the documents by agency employees)," even if that use was actually by agency employees "engaging in misconduct." Id. (remanding for

PLAINTIFF'S COMBINED OPPOSITION AND
CROSS-MOTION FOR SUMMARY JUDGMENT - 5
(No. 2:20-cv-1309 MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1  application of the factors under Rojas because "[o]ur independent review suggests that some of
2  the withheld documents were not *purely* personal") (emphasis added).

3  Based on Rojas—which the parties admittedly did not brief in the original motions[8]—Ms.
4  Kinnucan respectfully asserts this Court should not adopt the D.C. Circuit's test, which focuses
5  on congressional intent. For notwithstanding NSA's focus on that test and issue, the Supreme
6  Court has made clear that "the definition of 'agency records' ***may not*** turn 'on the intent of the
7  creator' because 'such a mens rea requirement is nowhere to be found in the Act.'" Rojas, 941
8  F.3d at 408 (quoting Tax Analysts, 492 U.S. at 147) (emphasis added). Instead, the Court should
9  simply apply the test elucidated in Tax Analysts, as mandated by the Ninth Circuit in Rojas, to
10 determine whether the HAC Report was (1) obtained and (2) controlled by NSA as part of its
11 official conduct, as opposed to purely personal reasons. Because the original evidence supplied
12 by NSA shows that both prongs of the Tax Analysts test are satisfied, and NSA's newly
13 disclosed evidence confirms as much, the Court should rule that NSA has not met its burden to
14 justify the HAC Report's withholding.[9]

15 *First*, although a congressional committee originally created the HAC Report, it is
16 undisputed that NSA lawfully obtained the HAC Report from Congress in 1968. (DeMillio
17 Decl. ¶ 24.) Indeed, there is no evidence that NSA obtained the Report accidentally, that its
18 possession was inadvertent, or that the transfer was not part of NSA's official duties. As this

---

[8] Plaintiff's counsel apologizes for this omission and that previous briefing recommended adoption of the D.C. Circuit's erroneous standard, which conflicts with Supreme Court and Ninth Circuit case law. See Huddleston v. FBI, 2023 WL 8235243, at *9 (E.D. Tex. 2023) (adopting Rojas and rejecting D.C. Circuit test after noting that its first factor "is in direct tension with the Supreme Court's decision in Tax Analyst").

[9] In its opening brief, NSA repeatedly tries to shift that burden, or minimize the presumption of access and disclosure. (See, e.g., NSA's Mot. at 1 ("[Kinnucan] has no right to compel the committee itself to produce the report"); id. at 16 ("Kinnucan may not demand from NSA what she cannot obtain from Congress.").) The Court should reject these attempts, which contradict the strong presumption of disclosure and the agency's heavy burden to justify why it need not produce documents. See Transgender L. Ctr. v. Immigr. & Customs Enf't, 46 F.4th 771, 779 (9th Cir. 2022) ("Demonstrating adequacy [of a search in FOIA] 'beyond material doubt' is, to be sure, a heavy burden, but such a burden appropriately reflects the purpose and policy of FOIA, including transparency, public access, and an informed citizenry.") (citation & internal quotation marks omitted) (collecting cases).

PLAINTIFF'S COMBINED OPPOSITION AND
CROSS-MOTION FOR SUMMARY JUDGMENT - 6
(No. 2:20-cv-1309 MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Court previously found, the first prong is indisputably met.  Kinnucan I, 2021 WL 6125809, at *3 ("The first element is met here because it is undisputed that NSA has a copy of the report.") (citation omitted).

***Second***, NSA cannot meet its burden to show that it was not in control of the HAC Report at the time Ms. Kinnucan made her FOIA requests.  As the Ninth Circuit explained in Rojas, the Supreme Court has "defined 'control' to mean 'that the materials have come into the agency's possession in the legitimate conduct of its official duties,' or 'in connection with the transaction of public business.'"  941 F.3d at 408 (quoting Tax Analysts, 492 U.S. at 145).  On the other hand, documents that are "purely personal" or "unrelated to agency business are not agency records."  Id. at 409 (citing Kissinger v. Reporters' Committee for Freedom of the Press, 445 U.S. 136, 155–56 (1980)).  In Kissinger, for example, the Court held that documents brought to the State Department in Henry Kissinger's personal papers were not in "control" of that agency because there was no indication that they "entered the State Department's files" or were "used by the Department for any purpose."  Id. at 157.

Here, NSA provided no evidence to meet its burden—as a matter of undisputed fact and law—to show that its possession of the HAC Report was not part of the legitimate conduct of its official duties or in connection with the transaction of public business.  Rojas, 941 F.3d at 408. In fact, NSA's only evidence supporting its burden to show a lack of control are:  (1) the Report's banner stating "NOT FOR RELEASE UNLESS AND UNTIL AUTHORIZED BY COMMITTEE," and (2) the newly disclosed internal routing slip and memorandum for the Report.[10]  (NSA Mot. at 12–13.)  Each of these pieces of evidence, whether by inference or explicit reference, establishes that NSA obtained and controlled the HAC Report as part of its official duties.

---

[10] The Court previously found that the "Top Secret" designation was "not material" to the question of Congress's intent to maintain control, as were the agency's attempts to rely on the committee's "post-hoc objections to disclosure."  Kinnucan I, 2021 WL 6125809, at *5–6.  The Court should again reject NSA's attempts to rely on Congress's later equivocating claims that the documents are not releasable.  (See NSA Mot. at 14.)

PLAINTIFF'S COMBINED OPPOSITION AND
CROSS-MOTION FOR SUMMARY JUDGMENT - 7
(No. 2:20-cv-1309 MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1 As Ms. Kinnucan previously argued, the very fact that the Report is possessed by NSA reveals that the Report was lawfully transferred to NSA by Congress for the agency's use. Respectfully, the Court misapprehended Ms. Kinnucan's argument when it said that she contended "NSA's mere possession indicates Congress 'released' the report." Kinnucan I, 2021 WL 6125809, at *5. For sure, NSA's possession of the HAC Report does not, by itself, establish that the Report is an agency record. Goland v. CIA, 607 F.2d 339, 346–47 (D.C. Cir. 1978) ("An agency's possession of a document, standing alone, no more dictates that it is an 'agency record' than the congressional origins of a document, standing alone, dictate that it is not."). Rather, the fact that NSA obtained the Report—which could not have been "release[d]" by the Committee "unless and until authorized"—implicitly reveals that NSA did receive such authorization. In other words, the "not for release" marking, when combined with NSA's lawful possession and use of that document, weighs entirely against any presumption that Congress did not in fact "release" the document to NSA. Congress must have authorized the Report for release to NSA, and NSA has not met its burden to supply evidence to the contrary.

Indeed, NSA's newly produced evidence—the routing slip and memorandum—now confirms Ms. Kinnucan's contention that the HAC Report was obtained in furtherance of NSA's official duties. Not only did NSA's employee request the document, it was also transmitted without any notes indicating that it must be returned, and then disseminated again multiple times to the NSA Director and others. (DeMillio Decl. ¶ 24 & Ex. A at 7–8.) None of those additional disseminations reflect any restrictions *by* Congress, and they were all for the apparent purpose of NSA's consideration and use. Tax Analysts, 492 U.S. at 147 ("Agencies generally are not at liberty to alter the content of the materials that they receive from outside parties."). Indeed, nothing about these transfers show that they are "purely personal" or wholly unconnected to NSA's duties.

Moreover, NSA's own actions belie its claim that Congress never intended NSA to use the HAC Report for its duties. NSA has never returned the HAC Report in the 55+ years since it first received those documents, nor provided evidence that Congress later demanded its return.

PLAINTIFF'S COMBINED OPPOSITION AND
CROSS-MOTION FOR SUMMARY JUDGMENT - 8
(No. 2:20-cv-1309 MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    To the contrary, the HAC Report was (and likely still is) stored "in the 'Crisis Collection' of the

2    NSA History Collection," see Attack, at 60, which appears accessible to anyone at NSA and

3    "consists of manuscripts, memoranda, studies, and interviews related directly or indirectly to the

4    cryptologic history of the United States."[11]  Ms. Kinnucan has also presented evidence that, since

5    its acquisition of the HAC Report, NSA has used the Report as part of its official duties.

6        In creating and distributing Attack, NSA relied on, quoted, and cited portions of the HAC

7    Report as part of its duties.  (See Attack, at 20 n.22, 23 n.39, 59–60.)  And when NSA de-

8    classified and publicly disseminated Attack in 2006, it apparently concedes that it did not seek

9    Congress's approval or make any attempt to restrict access to information contained in Attack

10   about the HAC Report.  Instead, consistent with the original 1968 release by Congress at NSA's

11   request and NSA's subsequent distribution, NSA believed it could use the HAC Report for its

12   own purposes.  As such, the HAC Report is not just physically held at NSA; it was used in

13   connection with the transaction of agency business, without any apparent restrictions on

14   classification or NSA's use.  E.g., Huddleston, 2023 WL 8235243, at *10 (finding documents to

15   be agency records because "although the FBI may not have absolute control of items, it

16   possesses the ability to use the items … for purposes related to the FBI's transaction of public

17   business").

18       In response, NSA relies on ACLU and other out-of-circuit cases to support its claim that

19   "Congress intended to retain control over the HAC report."  (NSA Mot. at 12.)  But under the

20   standards elucidated by Rojas, which NSA does not address, the original creator's intent is nearly

21   meaningless.  Rojas, 941 F.3d at 409 ("'the intent of the creator of a document' is not relevant to

22   a determination of whether the document is an agency record") (quoting Tax Analysts, 492 U.S.

23

---

[11] See https://www.nsa.gov/portals/75/documents/about/cryptologic-heritage/historical-figures-publications/publications/wwii/pearl_harbor_revisited.pdf, at 85.  The Court may take judicial notice of undisputed facts—like those contained in official accounts, records, briefing, or legislative materials—that are posted on a government website.  See Organic Cannabis Found., LLC v. Comm'r of Internal Revenue, 962 F.3d 1082, 1096 (9th Cir. 2020) ("judicial notice may be taken of official information that is posted on a government website and that is 'not subject to reasonable dispute'") (citation omitted).

PLAINTIFF'S COMBINED OPPOSITION AND
CROSS-MOTION FOR SUMMARY JUDGMENT - 9
(No. 2:20-cv-1309 MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

at 147).  To the extent that other circuits in ACLU or Goland consider directive letters or restrictions on further dissemination by the creator of a document—which is in contradiction to the Supreme Court's guidance and the binding test set forth in Rojas—that information is only relevant as to whether the documents were in the agencies' possession for their official use.[12]  But such indications are not even present here, as the terse "not for release" banner's admonition is undermined by Congress's apparent release upon NSA's request and NSA's unequivocal use as part of its official duties.

Accordingly, because NSA has not shown that its obtained and retained control of the Report for anything other than official purposes, it has failed to meet its burden to prove that the HAC Report is not an agency record under Tax Analyst and Rojas.  The Court should therefore grant Ms. Kinnucan's request for summary judgment and order the HAC Report's production.

**B.     Even Under the D.C. Circuit's Test, the HAC Report Is an Agency Record.**

Even if this Court again decides to apply the D.C. Circuit's test, which "was originally developed before the Supreme Court's decision in Tax Analysts," Rojas, 941 F.3d at 409, the record still shows that HAC Report is an agency record subject to disclosure.  Under the D.C. Circuit's expanded test, determining whether a congressional record transferred to an agency has become an "agency record" depends on: "[1] the intent of the document's creator to retain or relinquish control over the records; [2] the ability of the agency to use and dispose of the record as it sees fit; [3] the extent to which agency personnel have read or relied upon the document; and [4] the degree to which the document was integrated into the agency's record system or files."  ACLU, 823 F.3d at 662 (quoting Jud. Watch, Inc. v. Secret Serv., 726 F.3d 208, 218 (D.C. Cir. 2013)).  Because the D.C. Circuit focuses on congressional intent, "the first two

---

[12] The Supreme Court's admonition regarding the immateriality of congressional intent is also logical in light of "FOIA's purpose … to inform citizens about 'what their government is up to.'"  See Hum. Rts. Def. Ctr. v. Dep't of Just., 2024 WL 2302501, at *3 (W.D. Wash. 2024) (quoting Cameranesi v. Dep't of Def., 856 F.3d 626, 640 (9th Cir. 2017)).  For if Congress (or even an agency's employee) need only place a few-word disclaimer on a document before it transferred that document to an agency for the agency's official use, it would prevent the public from accessing an enormous amount of information and insulate all records not created by an agency from disclosure.

PLAINTIFF'S COMBINED OPPOSITION AND
CROSS-MOTION FOR SUMMARY JUDGMENT - 10
(No. 2:20-cv-1309 MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1  factors of the standard test [are] effectively dispositive." Id. (quoting Jud. Watch, 726 F.3d at
2  221). For similar reasons as those discussed above, NSA has failed to meet its burden under
3  these two factors as well.

4  ***First***, the circumstances of the HAC Report's creation and transfer far from establish that
5  it was intended to be a congressional record only. As an initial matter, NSA has not met its
6  burden whatsoever to produce any documents regarding the creation of the HAC Report. Unlike
7  the agencies in Goland or ACLU,[13] they have supplied no information regarding the process by
8  which the Report was created or any information from the Report itself to show that the
9  Committee intended this to be for Congress's eyes only. As such, the Court should find that this
10 first factor weighs in favor of Ms. Kinnucan; otherwise, NSA would be entirely relieved of its
11 burden to establish that the HAC Report is not an agency record. Paisley v. CIA, 712 F.2d 686,
12 694 (D.C. Cir. 1983) (affirming agency record designation because "[t]he Government points to
13 no *contemporaneous* and *specific* instructions from the [Congress] to the agencies limiting either
14 the use or disclosure of the documents"), opinion vacated in part on other grounds, 724 F.2d 201
15 (D.C. Cir. 1984). But even looking to other evidence supplied by Ms. Kinnucan, it is clear that
16 NSA cannot meet its burden.

17 Indeed, the only evidence adduced regarding the creation of the HAC Report came
18 originally from Ms. Kinnucan's citation to Attack. And in Attack, NSA revealed that "the
19 Surveys and Investigations staff [of the House Appropriations Committee] interviewed [the Joint
20 Chiefs of Staff ("JCS")], NSA, Naval Communications Command, Department of Army
21 Communications Center, and JCS Message Center personnel in the Washington area and most of
22 the military commands and communications centers in the Pacific and European regions which
23 had been involved with *Liberty*'s communications in one way or another." Attack, at 60.
24 Therefore, unlike other cases where it was clear that the records at issue were strictly created or

---

[13] NSA's reliance on Cox v. Dep't of Justice, 111 F.4th 198 (2d Cir. 2024), is likewise unavailing, as the agency supplied specific information showing that Congress had marked the documents "property of the Committee" and "not CIA records" with explicit instructions on limitations for their use. Id. at 210–11.

PLAINTIFF'S COMBINED OPPOSITION AND
CROSS-MOTION FOR SUMMARY JUDGMENT - 11
(No. 2:20-cv-1309 MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1   limited to a small group of people sworn to secrecy, the creation of the HAC Report involved a
2   full staff that surveyed defense department records and spoke with a multitude of defense
3   department members on a topic intended to fix the agency's "pathetic" operations.  See
4   Kinnucan I, 2021 WL 6125809, at *5 (quoting Department of Defense Appropriations for 1969:
5   Hearings Before a Subcommittee of the H. Comm. on Appropriations, 90th Cong. 357–58 (Apr.
6   8, 1968)).

7   Respectfully, nor do Goland, "the connection to Congress's oversight role," or "the
8   substance of the report" support the proposition that that the HAC Report is a congressional
9   record.  Kinnucan I, 2021 WL 6125809, at *5.  In Goland, the D.C. Circuit found that a copy of a
10  congressional hearing transcript about the CIA's organic statutes, possessed by the CIA, was
11  actually a congressional record because: (1) the House committee met in executive session;
12  (2) the stenographer was sworn to secrecy; (3) the transcript discussed "basic elements of
13  intelligence methodology" and "the CIA's structure and disposition of functions"; (4) the
14  transcript was marked "Secret" when received by the CIA; and (5) the CIA retained a copy of the
15  transcript "for internal reference purposes only," evidencing that the CIA held the document as a
16  "'trustee' for Congress."  607 F.2d at 347.

17  Here, *only one* of these five considerations is present—the "Top Secret" marking on the
18  Report, which the Court found was "not material" to the question of Congress's intent to
19  maintain control.  Kinnucan I, 2021 WL 6125809, at *5.  Moreover, the House Appropriations
20  Committee is always acting in an "oversight" role when it deals with agency spending and
21  issues, but its documents transferred to those agencies are not categorically exempt from
22  disclosure.  And the substance of the Report was "*defense* communications systems and *naval*
23  intelligence practices," both of which are related to agencies and *their* operations.  Id. (emphasis
24  added).  Most critically, there is no evidence that NSA holds a copy of the HAC Report as a
25  "trustee" for Congress.  Goland, 607 F.2d at 347 ("The fact that the CIA retains the Transcript
26  solely for internal reference purposes indicates that the document is in no meaningful sense the
27  property of the CIA … but holds the document … as a 'trustee' for Congress.").  For this
28

PLAINTIFF'S COMBINED OPPOSITION AND
CROSS-MOTION FOR SUMMARY JUDGMENT - 12
(No. 2:20-cv-1309 MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1 conclusion, the Goland court relied on an affidavit from a CIA employee stating that the CIA
2 retained the transcript "for internal reference purposes only." Id. at 347.  Here, NSA provides no
3 similar testimony regarding the creation of the document or any indication by Congress that the
4 HAC Report was given to NSA to hold in trust or for use in limited ways.

5       *Second*, the "not for release" banner does not evince an intent to never release the Report
6 elsewhere—just that copies could not be released to Congress, agencies, or others until initially
7 authorized by the committee itself.[14]  Furthermore, that includes no limitation on "the ability of
8 the agency to use and dispose of the record as it sees fit."  ACLU, 823 F.3d at 662 (citation &
9 internal quotation marks omitted).  For as explained above, the HAC Report was in fact
10 authorized to be released and transferred based on NSA's request.  The subsequent transfer of the
11 Report among NSA individuals, use of the document by NSA, and retention in NSA's "History
12 Collection" all weigh against Congress continuing to exert control over the Report.  See id.
13 (referencing "the extent to which agency personnel have read or relied upon the document" and
14 "the degree to which the document was integrated into the agency's record system or files")
15 (citation & internal quotation marks omitted).  For although the HAC Report was originally
16 stamped with "not for release" and "Top Secret" markings (it has yet to be revealed by whom),
17 NSA did not return the document after it first obtained it.  Nor did it limit the dissemination and
18 use to the original requestor (Yeates), or only for "internal" purposes or those related to briefing
19 Congress.  Instead, NSA apparently felt it had the authority to de-classify and release certain
20 portions to the public, and it retains possession of the document to this day.

21 **IV.  CONCLUSION**

22       In short, NSA has provided no contemporaneous evidence regarding any limitations on
23 its use of the HAC Report, the circumstances of Congress's creation or transfer of the Report, or
24 congressional intent to retain control over the Report after it "release[d]" it to NSA for the

---

[14] The fact that "Congress has never publicly released the resulting HAC report" is also not dispositive, (see NSA Mot. at 12 (citing DeMillio Decl. ¶¶ 25–27)), as it the proper inquiry under the D.C. Circuit's framework relates to congressional intent *during* the transfer *to* the agency—not in general to the public.

PLAINTIFF'S COMBINED OPPOSITION AND
CROSS-MOTION FOR SUMMARY JUDGMENT - 13
(No. 2:20-cv-1309 MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

agency's use. The Court should not permit NSA to simply disavow its control over documents by pointing solely to a terse stamp—which is undermined by all the evidence demonstrating that Congress actually did release the Report to NSA for the agency's use. No court has ever held that an agency's burden is so minimal, and if every document created by Congress could be shielded from disclosure under FOIA by virtue of that type of stamp and nothing more, there would be little reason for a multiple factor test. Such a rule would not only run counter to FOIA's purpose, it would completely upend the burden placed on agencies by allowing them to hold and hide documents they have controlled and used for over half a century. Therefore, based on the arguments and information set forth above, Ms. Kinnucan respectfully requests that the Court deny NSA's motion, grant Ms. Kinnucan's request to compel NSA's production of the HAC Report, and enter summary judgment in her favor.

DATED this 13th day of September, 2024.

DAVIS WRIGHT TREMAINE LLP

*I certify that this memorandum contains 5,353 words, in compliance with the Local Civil Rules.*

By s/ *Caesar Kalinowski IV*
Caesar Kalinowski IV, WSBA #52650
920 5th Avenue, Suite 3300
Seattle, WA 98104
Telephone: (206) 622-3150
E-mail: caesarkalinowski@dwt.com

Thomas R. Burke (*pro hac vice*)
50 California Street, Suite 2300
San Francisco, CA 94111
Telephone: (415) 276-6500
E-mail: thomasburke@dwt.com

Marietta Catsambas (*pro hac vice*)
1301 K Street NW, Suite 500
Washington, D.C. 20005
Telephone: (202) 973-4200
E-mail: mariettacatsambas@dwt.com

*Attorneys for Plaintiff Michelle J. Kinnucan*

PLAINTIFF'S COMBINED OPPOSITION AND
CROSS-MOTION FOR SUMMARY JUDGMENT - 14
(No. 2:20-cv-1309 MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

DATED this 13th day of September, 2024.

By s/ *Caesar Kalinowski IV*
Caesar Kalinowski IV, WSBA #52650

CERTIFICATE OF SERVICE - 15