The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHELLE J. KINNUCAN,

        Plaintiff,

v.

NATIONAL SECURITY AGENCY, *et al.*,

        Defendants.

CASE NO. 2:20-cv-01309-MJP

NATIONAL SECURITY AGENCY'S COMBINED REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

NOTED FOR CONSIDERATION:
OCTOBER 11, 2024

NSA'S COMBINED REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT
No. 2:20-cv-01309-MJP

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## I. Introduction

For the reasons explained in NSA's motion for summary judgment, Dkt.85, this Court should hold that the congressional report Plaintiff Michelle Kinnucan seeks from the National Security Agency (NSA), "A Report to the Committee on Appropriations – U.S. House of Representatives on the Effectiveness of the Worldwide Communications Systems and Networks of the DoD, U.S.S. Liberty Incident," (HAC report) is not an agency record. The HAC report is a congressional record not subject to FOIA. The HAC report was prepared by congressional committee staff and is the product of congressional oversight of sensitive national security issues. Kinnucan concedes that Congress possesses constitutional and other authority to shield congressional records from public release, which here, the committee has exercised by never releasing its HAC report to the public. And Kinnucan acknowledges that she cannot compel the committee itself to release the HAC report. Nonetheless, Kinnucan maintains she should be able to compel the NSA to release a copy of the HAC report it currently holds. But here too, the committee exercised its prerogative to limit disclosure by adding a banner declaring, in all capital letters, "NOT FOR RELEASE UNLESS AND UNTIL AUTHORIZED BY COMMITTEE."

In her opposition, Dkt. 88, Kinnucan asks this Court to ignore the committee's unambiguous manifestation of its intent to control public release of the HAC report as "immaterial" and "meaningless." After having previously argued her case under a test that appropriately took constitutional considerations and Congress' oversight role into account, Kinnucan reverses course. Kinnucan now demands a test that ignores Congress' deliberate carve out from FOIA, ignores Congress' constitutional authority to shield its records from public disclosure and its intent to exercise that authority, and ignores Congress' oversight role with federal agencies. Kinnucan's test would turn on whether a record was "purely personal," which

NSA'S COMBINED REPLY IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S
CROSS-MOTION FOR SUMMARY JUDGMENT
No. 2:20-cv-01309-MJP - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  would likely never apply to congressional oversight record. Neither FOIA, nor the cases upon
2  which Kinnucan relies, dictate this outcome.

3  Kinnucan further claims that the language "NOT FOR RELEASE UNLESS AND UNTIL
4  AUTHORIZED BY COMMITTEE," does not evidence the committee's intent to reserve for the
5  Appropriations Committee alone the authority to decide when the report should be publicly
6  released. She speculates that the committee actually intended to impose no limits on NSA and gave
7  NSA the authority to make a public release of the HAC report at its discretion. The record does
8  not support this conclusion.

## II. Argument

### A. This Court Appropriately Took Constitutional Considerations into Account When First Analyzing Whether the NSA Controlled a Congressional Report by Asking: Did Congress Manifest a Clear Intent to Control the HAC Report? It Should Do So Again.

"[C]onsistent with the Ninth Circuit's guidance to take a fact-driven approach to determining whether an agency controls a particular record" in *Rojas v. FAA*, this Court appropriately took constitutional considerations into account when first analyzing whether NSA controlled the HAC report. *See* Dkt. 40 at 8. This Court looked to the "the constitutional considerations at play when an agency is in possession of a congressional record," including "Congress's oversight role and authority to keep certain records secret." *Id.* at 7. It followed the lead of the D.C. Circuit, and now the Second Circuit too, which hold that, "when an agency possesses a document that it has obtained from Congress, the answer to the question whether the document is an agency record subject to disclosure under FOIA turns on whether Congress manifested a clear intent to control the document." *ACLU v. CIA*, 823 F.3d 655, 662-63 (D.C. Cir. 2016) (quotation omitted); *Cox v. DOJ*, 111 F.4th 198, 201 (2d Cir. 2024) ("To determine whether an agency exercises control over documents obtained from [Congress], we ask whether [Congress] has manifested a clear intent to control the documents, such that the agency is not free to use and

NSA'S COMBINED REPLY IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S
CROSS-MOTION FOR SUMMARY JUDGMENT
No. 2:20-cv-01309-MJP - 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

dispose of the documents as it sees fit.") (quotation omitted). This Court should do so again because subjecting every congressional oversight document to FOIA if it is obtained by a federal agency "would force Congress either to surrender its constitutional prerogative of maintaining secrecy, or to suffer an impairment of its oversight role." *ACLU*, 823 F.3d at 663 (quotation omitted).

Kinnucan, having previously argued and lost her case under this test, now argues for a different one. She now contends that the Supreme Court in *DOJ v. Tax Analysts*, and the Ninth Circuit in *Rojas*, "mandate[]" that this Court draw the line between congressional documents and agency records by asking "whether the HAC report was (1) obtained; and (2) controlled by NSA as part of its official conduct, as opposed to purely personal reasons." Dkt. 88 at 6. Kinnucan presents "control" as a false choice between using a document for agency purposes or using it for purely personal reasons. Consequently, implicit in Kinnucan's demand for this test is an assertion that Congress cannot continue to control a congressional oversight document, or limit its further distribution, if Congress shares that document with an agency for review.[1] Neither *Tax Analysts* nor *Rojas* mandate this result and the only Courts of Appeals to have considered the issue hold that the definition of control is not so limited. Kinnucan's opposition presents no reason for this Court to reverse course and create a split of authority for congressional records.

To start, neither *Tax Analysts* nor *Rojas* addressed situations, like that here, where documents were created by a government entity exempt from FOIA and that continues to assert

---

[1] Kinnucan perhaps makes her view on this point explicit when she argues "because NSA has not shown that it obtained and retained control of the Report for anything other than official purposes, it has failed to meet its burden to prove that the HAC Report is not an agency record," and further argues that if Congress can transfer a document "to an agency for the agency's official use" while reserving for itself the right to control further dissemination, "it would prevent the public from accessing an enormous amount of information and insulate all records not created by an agency from disclosure." Dkt. 88 at 10, n.12. But "Congress has undoubted authority to keep its records secret, authority rooted in the Constitution, longstanding practice, and current congressional rules," and has exempted itself from FOIA. *Goland v. CIA*, 607 F.2d 339, 346 (D.C. Cir. 1978) (footnotes omitted). To the extent that Kinnucan seeks broader access to congressional records, she seeks a legislative change, or more.

NSA'S COMBINED REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT
No. 2:20-cv-01309-MJP - 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

control over public release of the documents. *Tax Analysts* involved a request for copies of "publicly available" district court opinions in the possession of the Department of Justice's Tax Division. *DOJ v. Tax Analysts*, 492 U.S. 136, 149 (1989). In *Tax Analysts*, the Supreme Court identified two prerequisites that "must be satisfied for requested materials to qualify as 'agency records.'" *Id.* at 144. "First, an agency must either create or obtain the requested materials as a prerequisite to its becoming an agency record within the meaning of the FOIA." *Id.* (quotation omitted). "Second, the agency must be in control of the requested materials at the time the FOIA request is made." *Id.* at 145. When considering whether the agency had control over the publicly available district court decisions, the Court explained that control turned on whether the documents "c[a]me into the agency's possession in the legitimate conduct of its official duties." *Id.* It rejected arguments that control depended on the agency's "power to alter the content of the materials it receives" or whether a document's creator intended for the document "to be relied upon in agency decisionmaking." *Id.* at 147-48.

In *Rojas*, the Ninth Circuit addressed the second element of the *Tax Analysts* test in the context of a request for documents created by agency employees during the course of their employment with the agency. *Rojas v. FAA*, 941 F.3d 392, 408-10 (9th Cir. 2019). The Ninth Circuit "reject[ed] a categorial rule that any document created by an agency employee and stored on an agency server is in the agency's control" because "the question whether an agency is in 'control' of requested documents requires a more complex analysis." *Id.* at 407. The Ninth Circuit instructed that "a range of evidence" may be considered "to determine whether specified records are in the agency's possession in connection with agency-related business, or instead involve personal matters not related to the agency's 'transaction of public business,'" *Id.* at 409 (quoting

NSA'S COMBINED REPLY IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S
CROSS-MOTION FOR SUMMARY JUDGMENT
No. 2:20-cv-01309-MJP - 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

*Tax Analysts*, 42 U.S. at 145). It remanded so the district court could consider whether 202 withheld emails were personal in nature or reflected agency business. *Id.* at 410.

Neither *Tax Analysts* nor *Rojas* instruct that constitutional considerations disappear when interpreting FOIA. *Tax Analysts* did not consider a situation where a government entity exempt from FOIA continued to assert its authority to control over public release. *See Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944) ("words of [Supreme Court] opinions are to be read in the light of the facts of the case under discussion. . . . General expressions transposed to other facts are often misleading."). Accordingly, both the D.C. and Second Circuit have recognized that *Tax Analysts* provides limited guidance in such situations when analyzing control. For example, in *United We Stand v. IRS*, a case involving congressional documents, the D.C. Circuit noted that it had "no doubt that IRS communications with the Joint Committee constitute legitimate conduct of the IRS's official duties" but "this case is not so simple" as *Tax Analysts* would suggest because "the connection between Congress and the requested records implicates considerations not at issue in *Tax Analysts*." *United We Stand v. IRS*, 359 F.3d 595, 599 (D.C. Cir. 2004). Likewise, in *Doyle v. DHS*, a case involving a FOIA request to the Secret Service for visitor logs for the White House and President's residence, the Second Circuit explained that "*Tax Analysts* does not resolve this appeal" because "special considerations control when the Executive Branch's interests in maintaining the autonomy of its office. . . are implicated," including the "President's constitutional prerogative of maintaining secrecy as it relates to the confidentiality of his conversations and correspondence," and "*Tax Analysts* does not suggest that those considerations disappear when we interpret FOIA." *Doyle v. DHS*, 959 F.3d 72, 76-77 (2d Cir. 2020) (quotation omitted).

Instead, special policy considerations, like those at issue, here "counsel in favor of according due deference to Congress' affirmatively expressed intent to control its own

NSA'S COMBINED REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT
No. 2:20-cv-01309-MJP - 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  documents." *Jud. Watch, Inc. v. Secret Serv.*, 726 F.3d 208, 221 (D.C. Cir. 2013) (quotation
2  omitted). As both the D.C. and Second Circuit recognize, if Congress has retained control of a
3  document in this manner, "that means the agency is not free to use and dispose of the documents
4  as it sees fit." *Id.* at 223; *Cox*, 111 F.4th at 201 (explaining that the court "ask[s] whether the non-
5  covered entity has manifested a clear intent to control the documents, such that the agency is not
6  free to use and dispose of the documents as it sees fit.") *see also United We Stand America*, 359
7  F.3d at 600 (if "Congress has manifested its own intent to retain control, then the agency—by
8  definition—cannot lawfully 'control' the documents."). Thus, "when an agency possesses a
9  document that it has obtained from Congress, the answer to the question whether the document is
10 an agency record subject to disclosure under FOIA turns on whether Congress manifested a clear
11 intent to control the document." *ACLU*, 823 F.3d at 662-63 (quotation omitted).

12     Nor does the reasoning in *Rojas* preclude adoption of the congressional intent-based
13 control test here. The Ninth Circuit in *Rojas* found inquiry into the "intent of the document's
14 creator to retain or relinquish control over the records" to be "in tension with the [Supreme] Court's
15 conclusion that 'the intent of the creator of a document' is not relevant to a determination of
16 whether the document is an agency record." *Rojas*, 941 F.3d at 409. But "general expressions, in
17 every opinion, are to be taken in connection with the case in which those expressions are used."
18 *Arkansas Game & Fish Comm'n v. United States*, 568 U.S. 23, 35 (2012). In *Tax Analysts*, it was
19 not necessary or appropriate to inquire into the district courts' intent for how their opinions would
20 be use because the courts voluntarily released those documents to the public without any sort of
21 restriction.[2]

22

---

[2] The non-binding order from the Eastern District of Texas on which Kinnucan also relies, *Huddleston v. FBI*, No. 4:20-CV-00447, 2023 WL 8235243 (E.D. Tex. Nov. 28, 2023) concerns information on an employee's personal laptop, says nothing about agency control of congressional oversight documents, and does not inform the issues here.

NSA'S COMBINED REPLY IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S
CROSS-MOTION FOR SUMMARY JUDGMENT
No. 2:20-cv-01309-MJP - 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Here, in contrast, a congressional committee reserved to itself authority to control the disposition of its report, and failing to "accor[d] due deference to Congress' affirmatively expressed intent to control its own documents" would raise "separation-of-powers concerns." *Jud. Watch, Inc.*, 726 F.3d at 221, 225-26; *see also Doyle*, 959 F.3d 72 at 77-78 (separation of powers concerns where plaintiff sought to compel the Secret Service to produce visitor logs where the White House "manifested a clear intent to control the documents"). Because *Tax Analysts* did not involve such concerns, consideration of congressional intent here would create no tension with that case.

Finally, as noted above, the necessary implication of Kinnucan's demand for a test that turns on whether a document is "purely personal" or reflects agency business is that Congress cannot share a congressional oversight document with an agency without surrendering it to public release under FOIA. In other words, Kinnucan maintains that Congress cannot provide a copy of its analysis to an agency for the agency's use in reviewing agency action while reserving to Congress authority to control public release. Kinnucan cites no authority for this proposition, and it is squarely at odds with both the reasoning and results in *ACLU* and *Cox*, among other cases. In *ACLU* and *Cox*, for example, both the D.C. and Second Circuits concluded that the Senate Select Committee on Intelligence (SSCI) had the authority to share with multiple federal agencies a report the SSCI generated concerning the CIA's Detention and Interrogation Program while reserving to the SSCI the authority to control public access to the report. *See ACLU*, 823 F.3d at 665-68; *Cox*, 111 F.4th at 209-13. Kinnucan's test for congressional records, if adopted, would require a different result in this jurisdiction because the SSCI report was not "purely personal."

**B. The Committee Manifested Clear Intent to Control the HAC Report and Kinnucan's Arguments Fail to Show Otherwise or Show that the Committee's Subsequent Acts Vitiated the Committee's Intent to Retain Control Over Release of the HAC Report.**

NSA'S COMBINED REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT
No. 2:20-cv-01309-MJP - 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

As set forth in NSA's motion, Dkt. 85 at 13-16, summary judgment is warranted to NSA because "the record shows that the Committee manifested a clear intent to control the report at the time of its creation and that the Committee's subsequent acts did not vitiate that intent. The report therefore constitutes a congressional record not subject to FOIA disclosure requirements." *Cox*, 111 F.4th at 201.

The HAC report was prepared by congressional committee staff as a part of congressional oversight concerning sensitive national security issues. *See* William D. Gerhard & Henry W. Millington, National Security Agency/Central Security Service, *Attack on a Sigint Collector, the U.S.S. Liberty*, in *Special Series Crisis Collection vol. 1* (1981), at 59-60 available at https://www.nsa.gov/portals/75/documents/news-features/declassified-documents/uss-liberty/chronology-events/attack-sigint.pdf (last visited September 25, 2024); Department of Defense Appropriations for 1969: Hearings Before a Subcommittee of the H. Comm. on Appropriations, 90th Cong. 357-58 (Apr. 8, 1968). On the copy of the report held by NSA, the committee clearly and unambiguously expressed its intent to control dissemination with language that warns "NOT FOR RELEASE UNLESS AND UNTIL AUTHORIZED BY COMMITTEE." Declaration of Adam DeMillio, Dkt. 86 (DeMillio Decl.) ¶ 24. This language appears multiple times, on the cover page of each volume of the HAC report, and on memorandum pages dated December 29, 1967, and February 15, 1968, respectively. *Id*.

To NSA's knowledge, Congress has never publicly released the HAC report. *See* DeMillio Decl., ¶¶ 25-27; *see also* 1968 Hearing at 396. Instead, on at least three occasions, in 2009, 2020, and 2024, when asked by NSA, the committee declined to relinquish its control of the HAC report so that NSA could process it under FOIA. In other words, the committee's subsequent acts did not

NSA'S COMBINED REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT
No. 2:20-cv-01309-MJP - 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  vitiate the committee's earlier clear manifestation of its intent to reserve for itself the authority to
2  control release of the HAC report.

3        Kinnucan makes a number of arguments that the committee's "NOT FOR RELEASE
4  UNLESS AND UNTIL AUTHORIZED BY COMMITTEE," instruction does not evidence intent
5  to maintain control, or that the committee subsequently acted to vitiate its earlier expressed intent.
6  They all fall short. For instance, throughout her opposition, Kinnucan repeats an argument that
7  NSA lawfully obtained the HAC report directly from Congress at its request, citing an NSA
8  internal routing slip. *See* Dkt. 88 at 1, 2, 6, 8, 9, 13 (citing Ex. A to DeMillio Declaration). This
9  argument does not advance her position. For one, Kinnucan presumes much more factual
10  information than appears on the face of the internal routing slip or is described in the DeMillio
11  Declaration. As described in the DeMillio Declaration, NSA understands that "[t]he routing slip
12  and memorandum are internal NSA records." DeMillio Decl. ¶¶ 30. But whether the HAC report
13  was lawfully obtained by the NSA from Congress, or was "purloined" as described in an associated
14  memorandum, the result is the same. *See* DeMillio Decl. Ex. A at 8. Congress may share
15  congressional oversight documents with an agency while preserving for itself the authority to
16  control further distribution. *See ACLU*, 823 F.3d at 665-68; *Cox*, 111 F.4th at 209-13. Here,
17  however NSA obtained the HAC report, it was obtained with the banner indicating that committee
18  intended to reserve for itself authority over release. *See* DeMillio Decl. ¶ 24.

19        Relatedly, Kinnucan argues that the HAC report's banner restricting release without
20  committee approval could not properly evidence congressional intent to control the document
21  because "Congress actually did release the Report to NSA for the agency's use." Dkt. 88 at 14; *see*
22  *also id*. at 8-9, 13. This argument fails for multiple reasons. The manifest purpose of the banner is
23  to preserve the committee's ability to decide who can and cannot access the report. The idea that
24

NSA'S COMBINED REPLY IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S
CROSS-MOTION FOR SUMMARY JUDGMENT
No. 2:20-cv-01309-MJP - 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   the committee would forever surrender this power by sharing the report with a single recipient is
2   specious. It is also speculation refuted by the committee's subsequent decisions not to release the
3   HAC report for FOIA processing. *See* DeMillio Decl. ¶¶ 25-26. As for NSA's use of the HAC
4   report, the fact that the banner restricts only distribution and does not forbid all uses of the HAC
5   report does not undermine the committee's assertion of control. In *ACLU*, for example, Congress
6   "undoubtedly [gave] the Executive Branch some discretion to use the [SSCI report] for internal
7   purposes." *ACLU*, 823 F.3d at 667. So too in *Goland*, the CIA remained free to use the hearing
8   transcript for "internal reference purposes." *Goland*, 607 F.2d at 347. These courts held that even
9   though agencies used these documents for various purposes, the documents were not agency
10  records under FOIA. What mattered was that the document had not "passed from the control of
11  Congress and become property subject to the free disposition of the agency with which the
12  document resides." *Id*. Accordingly, even if NSA can internally review and briefly discuss the
13  HAC report (the existence of which is not a secret) in historical analyses of the U.S.S. *Liberty*
14  attack, NSA cannot dispose of the report as it sees fit. And for that reason, the HAC report is not
15  an agency record.

16      Kinnucan also argues that this Court was wrong when it previously considered the HAC
17  report's "connection to Congress's oversight role," and analogized this case to *Goland*. Dkt. 88 at
18  12-13. Her arguments miss the mark. To the extent that Kinnucan contends that congressional
19  oversight of federal agencies is limited to "agency spending" and not agency "operations," she is
20  mistaken. *See* Dkt. 88 at 12. As the title of the HAC report makes clear, the committee was
21  investigating the effectiveness of the Department of Defense's communications systems and
22  networks, which implicates oversight of agency operations in its name. And if the committee then
23  elected to share the results of this investigation with NSA, as Kinnucan contends, such an action
24

would further implicate Congress' "oversight authority over the various federal agencies" and its interest in "exchanging documents with those agencies to facilitate their proper functioning." *Goland*, 607 F.2d at 346.

In trying to distinguish *Goland,* Kinnucan focuses on specific factual details, rather than their relevance to the decision. Dkt. 88 at 12. For example, the reason why it mattered in that case that the congressional committee met in executive session, swore the stenographer to secrecy, and stamped the hearing transcript "Secret" is that these were means by which Congress expressed its intent to control over access to information captured in the transcript. Here, the Appropriations Committee expressed the same intent by adding a banner to the HAC report reserving to the committee the exclusive power to decide when and how the report shall be released. In both cases, the result is that agency "is not free to dispose of the [document] as it wills." *Goland*, 607 F.2d at 347.

Finally, Kinnucan makes several critiques of the "terse" language "NOT FOR RELEASE UNLESS AND UNTIL AUTHORIZED BY COMMITTEE," but none carry the day. For example, while Kinnucan now appears to concede that this language was included with the HAC report prior to when the NSA obtained it, she faults NSA for not also identifying restrictive language communicated at the time of transfer. Dkt. 88 at 11. Initially, the fact that the language was on the HAC report when NSA obtained it may be understood to be a communication NSA received at the time it was obtained. But even just focusing on the earlier point at which the language was added, "Congress may manifest an intent to retain control over documents *either* when the documents are created *or* when the documents are transmitted to an agency." *ACLU*, 823 F.3d at 664. And it is of no consequence that NSA's internal routing slip and memorandum did not reference the banner's restriction. *Cf. Cox*, 111 F.4th at 211 ("There is no requirement that the Committee's subsequent

NSA'S COMBINED REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT
No. 2:20-cv-01309-MJP - 11

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

[transmittal] letters reference the June 2, 2009, letter for the Committee to maintain control over the report."). Likewise, there is no requirement that in order to maintain control, the committee must include language seeking the return of documents. *See* Dkt. 88 at 8. Indeed, as the cases from the D.C. and Second Circuits show, courts do not require that Congress manifest its intent to control documents in through only specific words or actions, but rather, Congress can manifest its intent to control in a number of different ways.

### C. Alternatively, the HAC Report is Not an Agency Record Under the Approach in *Rojas* for Employee-Created Records.

While this Court need not ultimately reach this issue, should it not follow the approach of the D.C. and Second Circuits for congressional records, in the alternative, the HAC report also is not an agency record under the approach used in *Rojas* for employee-created records. In *Rojas*, the Ninth Circuit explained that "the question whether an agency is in 'control' of requested documents requires a . . . complex analysis," for which "a court may consider a range of evidence," including "evidence relating to the agency's use of documents." *Rojas*, 941 F.3d at 407, 409. The most probative evidence here is the banner placed on the report. NSA could not control the report in any meaningful sense of the word if it had to seek the committee's approval before releasing the document to the public. Also relevant is the fact that the committee has not granted that approval when the agency asked on multiple occasions whether it could process the HAC report under FOIA. Moreover, NSA followed the committee's direction. It did not process the HAC report under FOIA, thereby further demonstrating that NSA's use is consistent with the committee's instruction "NOT FOR RELEASE UNLESS AND UNTIL AUTHORIZED BY COMMITTEE," and the conclusion that NSA does not control the report.

NSA'S COMBINED REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT
No. 2:20-cv-01309-MJP - 12

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

### III.  Conclusion

This Court should hold that the HAC report is a congressional record and not an agency record subject to FOIA for all the reasons explained in NSA's motion for summary judgment and this reply. It should therefore grant NSA's motion for summary judgment and dismiss this action.

Dated this 27th day of September, 2024.

                                                    Respectfully submitted,

                                                    TESSA M. GORMAN
                                                    United States Attorney

                                                    *s/ Katie D. Fairchild*
                                                    KATIE D. FAIRCHILD, WSBA #47712
                                                    Assistant United States Attorney
                                                    United States Attorney's Office
                                                    700 Stewart Street, Suite 5220
                                                    Seattle, Washington 98101-1271
                                                    Phone: 206-553-4358
                                                    Fax: 206-553-4067
                                                    Email: katie.fairchild@usdoj.gov

                                                    I certify that this memorandum contains 4,087 words, in compliance with the Local Rules.

NSA'S COMBINED REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT
No. 2:20-cv-01309-MJP - 13

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970